1 | Darren J. Quinn (149679)
Alexander E. Papaefthimiou (236930)
2 | LAW OFFICES OF DARREN J. QUINN
12702 Via Cortina, Suite 105
3 | Del Mar, CA 92014
Tel: (858) 509-9401
4 |
5 | William F. Woods (87189)
750 State St #310
San Diego, CA, 92101
6 | Tel: (610) 742-5000

7 | *Attorneys for Plaintiff COLLEGESOURCE, INC.*

8 |

FILED

08 OCT 27 PH 3: 54

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

9 |                    **UNITED STATES DISTRICT COURT**

10 |                   **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COLLEGESOURCE, INC., a California corporation, | CASE N **08 CV 1987 H CAB** |
| Plaintiff, | **COMPLAINT** |
| v. | 1.  U.S. Computer Fraud and Abuse Act [18 U.S.C. §1030(g)] |
| ACADEMYONE, INC., a Pennsylvania corporation, | 2.  California Computer Crimes [Cal. Pen. Code §502(e)] |
| Defendant. | 3.  Breach of Contract |
| | 4.  Misappropriation |
| | 5.  California Statutory Unfair Competition [Cal. Bus. Prof. Code §§17200 *et. seq.*] |
| | 6.  Unjust Enrichment |
| | **JURY TRIAL DEMANDED** |

COMPLAINT

ORIGINAL

Plaintiff COLLEGESOURCE, INC. ("CollegeSource"), a California corporation, by way of complaint against defendant ACADEMYONE, INC. ("AcademyOne"), a Pennsylvania corporation, alleges the following on information and belief:

## JURISDICTION AND VENUE

1.     This Complaint arises under the United States Computer Fraud and Abuse Act (18 U.S.C. §1030), the penal code of the State of California (Cal. Pen. Code §502), the unfair competition laws of the State of California (Cal. Bus. & Prof. Code §§17200, *et seq*), the contract law of the State of California and the common law of misappropriation and unjust enrichment of the State of California.

2.     This Court has federal question jurisdiction over the first cause of action herein (18 U.S.C. §1030) pursuant to 28 U.S.C. §1331.  This Court has supplemental jurisdiction over the remaining causes of action herein pursuant to 28 U.S.C. §1367(a).  This Court has diversity jurisdiction over all causes of action herein pursuant to 28 U.S.C. §1332(a)(1).  The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

3.     Venue is proper in this district under 28 U.S.C. §§1391(b) and (c).  This Court has personal jurisdiction over AcademyOne and venue is proper in this district because, *inter alia*, (a) AcademyOne or its agents are soliciting and doing business in this district, (b) a substantial part of AcademyOne's wrongful acts or omissions giving rise to CollegeSource's claims occurred in this district, (c) the contracts at issue in this action were entered into and breached in this district, (d) AcademyOne directed its intentional and wrongful conduct towards this district and a known resident of this district, (e) the harm caused by AcademyOne's wrongful acts or omissions occurred in this district and AcademyOne knew that said harm would occur in this district, and (f) this action requires the application of California law.

## THE PARTIES

4.     Plaintiff COLLEGESOURCE, INC. ("CollegeSource") is a California corporation with principal place of business in San Diego, California.  CollegeSource is successor in interest to the CAREER GUIDANCE FOUNDATION, a Delaware corporation ("CGF").  CGF operated

COMPLAINT

-1-

1   as an IRC § 501 (c) (3) non- profit organization.  CollegeSource acquired the assets of CGF in

2   2004.  CollegeSource provides the public with information and data services related to college

3   and university catalogs and in particular, curriculums, course descriptions, and student transfers.

4   CGF's founding purpose was to support career guidance and planning in the educational system

5   by providing a complete collection of college catalogs on/in the best dissemination media.

6          5.      Defendant ACADEMYONE, INC. ("AcademyOne") is a Pennsylvania

7   corporation.  On information and belief, AcademyOne's principal place of business is in West

8   Chester, Pennsylvania.

## BACKGROUND

### The Beginning

11          6.      CGF was founded in 1971.  CGF's typical clients were high schools, students,

12   parents, counselors, universities, registrars, public libraries, military bases, ships-on-the-sea and

13   other government offices.

14          7.      At all times, CGF was a non-profit organization and generally charged its clients

15   nothing, or only enough money to cover its expenses.  Funding for CGF came from Mr. Harry G.

16   Cooper ("Cooper").  Over its thirty-three (33) year existence, CGF's shortfall funding came soley

17   from Cooper or loans guaranteed by Cooper.

18          8.      CGF's initial action was to place college catalogs on microfiche.  Each page of

19   microfiche could hold 495 pages.

20          9.      At the time CGF was founded, libraries and admissions offices were heavily

21   burdened by the need to keep thousands of paper college catalogs in order to determine transfer

22   equivalencies and provide admissions and transfer advice.  Libraries and college admissions

23   offices frequently kept paper catalogs from each of the over 3,000 universities in the United

24   States.  Complicating matters was that many universities had multiple catalogs for each of their

25   several colleges (such as Engineering, Architecture, Nursing, Music, Law, Medicine, *etc.*).  Also,

26   libraries and college admissions offices were required to keep catalogs for each year in which

27   potential transfer students might have taken classes.  A typical years worth of paper catalogs

28   

COMPLAINT

1  would fill a bookshelf seven (7) feet tall and 23 feet long.  Most universities maintained 20 to 25

2  years worth of catalogs.

3      10.    CGF revolutionized the college catalog, the course information and the transfer

4  industry by making information and data available on microfiche.  Using CGF's technology

5  meant a library could now store one (1) year's worth of catalogs in a shoe-box.

6      11.    Considerable work was required to convert a catalog from paper format to

7  microfiche.  Below are some, but not all, of the required steps.  First, the catalog was acquired

8  from the educational institution with permission to make reproductions.  Then, each page of the

9  catalog was precisely cut out with a razor.  Each catalog page was then positioned for

10  microfiching along with four hundred ninety-four (494) other pages, to make four hundred

11  ninety-five (495) pages per fiche.  Next, each fiche was made into a master copy.  The master

12  copy was then duplicated.

13      12.    It is estimated that CGF saved the educational community over $40 Million  per

14  year in storage and acquisition costs.

15

16  **The Evolution of Technology in The 1990's**

17      13.    With the advance in computer technology, compact discs ("CDs") became a more

18  efficient means of storing and distributing catalogs and course information than microfiche.  CDs

19  containing digitized catalogs and course information also had the potential advantage of allowing

20  word searches - a very helpful feature in light of the size of some of the catalogs.  A year's worth

21  of college catalogs would fit on six (6) CDs.

22      14.    Digitizing printed catalogs and course information presented additional hurdles

23  that microfiching did not.  While razoring the individual pages from each catalog was still

24  required, each page had to be converted into a digital format that allowed a computer to read the

25  individual letters and words on the page.  This process is known as Optical Character

26  Recognition ("OCR").

27      15.    Trivial acts of character recognition to the human eye can frustrate even the most

28  COMPLAINT

sophisticated scanner and can make the OCR process difficult, error prone and time consuming. For example, a scanner may misread the type and size of font, confuse characters (such as "g" with "9," "1" with "1," and "c" with "e"), read false highlights from reflective paper, read information from the opposite side of overly transparent paper, and erroneously interpret stray marks or smudges as characters or parts of characters.

16.     In light of the various inherent problems with the OCR process, CGF devoted significant research and development costs working with software companies, such as Microsoft, Adobe and OmniPage, to develop more efficient OCR techniques.

17.     Despite the advent of more efficient OCR techniques, quality control on CGF's digitized catalogs and course information was crucial.  Even a one-percent (1%) error rate would result in ten (10) errors and unsearchable words on a one-thousand (1,000) character page, and thousands of unsearchable words per catalog.  CGF's targeted error rate after detailed  personal quality control was 0.005%.

18.     The vast majority of plaintiff's digitized catalogs and course information are the result of scanning and OCR-ing.  Older "legacy" catalogs are valuable because of the need to determine equivalencies for students that are seeking to apply credits from older course-work. For example, a veteran returning from years overseas may seek to apply his/her prior course-work from one institution towards a degree at another institution.

19.     Recently, some colleges have started to provide their catalogs and course descriptions in digital form. Nevertheless, CollegeSource is required to convert all files from their native format to Adobe PDF format.  CollegeSource must then decide whether or not to include any pictures, replace them with blank boxes or degrade the pictures (for optimal downloading speed). CollegeSource then bookmarks/links  the catalog for better look-up efficiency in its final product.

**CollegeSource's Websites, Digitized Information and Newest Technology**

20.     About five (5) years after CGF began digitizing college catalogs and course

1   descriptions for use on data CDs, it became clear that distribution over the Internet would soon

2   eclipse the need for further distribution *via* data CDs.

3       21.   As with microfiche and data CDs, CGF took the lead to move academia to utilize

4   the Internet in connection with their catalogs and course descriptions.

5       22.   At the time of CGF's transfer to CollegeSource, CGF had approximately 30,000

6   college catalogs available online.

7       23.   The increasing needs of university transfer offices led to their demands that they

8   not be required to search complete catalogs for "Course Descriptions" (thus ignoring/skipping-

9   over athletics, famous alumni, campus housing, scholarships, maps, healthcare *etc.*).

10       24.   Registrars wanted a new system whose only database was "Course Descriptions"

11   (name, credit hours, description etc.).  With such a database registrars hoped to streamline their

12   admissions, discharge and transfer duties.

13       25.   In response to these registrar requests, CollegeSource began developing its

14   "Transfer Evaluation Service" ("TES").

15       26.   Because of its previous, time consuming and expensive efforts in creating a

16   collection of OCR'd catalogs, CollegeSource was able to begin "cutting and pasting" individual

17   course descriptions from its "Catalog" database into its new TES database.  Just like moving its

18   collection of OCR'd CD catalogs to the Internet, CollegeSource expended significant time and

19   money to move its now over 44,000 digitized college catalog collection into over 37,000,000

20   records (including course descriptions, credits, name, prerequisites, etc.) in its new TES database.

21       27.   CollegeSource also developed software to allow an evaluator to store a given

22   course equivalency in the TES database so as to assist and potentially eliminate the need for a

23   similar, future, comparison.  This capacity is referred to as "Equivalency" or "Course

24   Articulation" or "Transcript Reconciliation."

25       28.   CollegeSource still maintains and annually increases its "Catalog" database for

26   those students and non-registrars that simply wish to view the entire catalog.

27       29.   Without CGF/CollegeSource's efforts to create a collection of OCR'd catalogs to

28   COMPLAINT

-5-

1   mine for course descriptions any competitor of CollegeSource would have to go through the

2   same money, time and labor intensive OCR'ing that CGF/CollegeSource has been doing for the

3   past 16 years.

4       30.    CollegeSource has been able to mine its catalog database to populate its TES

5   database with over 36 Million individual course descriptions (names, credit hours etc.).

6       31.    The value to a registrar of a digitized course catalog database is in its

7   completeness – the ability to go way back in years to find digitized course equivalencies, way

8   back to the time before colleges published their own catalogs in digital form, way back to the

9   time when the only digital source of course descriptions came from CGF/CollegeSource's

10  efforts.

11      32.    CollegeSource, as did its predecessor CGF, provides access to its digitized

12  catalogs for free, for personal use, to students, parents and teachers who may only have need for

13  one or two catalogs.  CollegeSource, as did its predecessor CGF, provides access to its digitized

14  complete catalog collection to libraries, registrars and government agencies at a minimal fee.

15  Regardless, all CGF/CollegeSource digitized catalogs are "use restricted" to subscribers and

16  private persons granted limited use.  Under no circumstances are the digitized catalogs to be

17  redistributed without permission from CollegeSource.

18      33.    Currently, CollegeSource makes college catalogs, course descriptions, and

19  equivalencies available to its customers online at www.collegesource.com,

20  www.collegesource.org, and tes.collegesource.org (the "Websites").

21      34.    Information regarding over 3,000 institutions, including over 44,000 catalogs and

22  over 37,000,000 course descriptions, is currently available on CollegeSource's Websites.

23      35.    CollegeSource's current products can be catagorized as follow: 1) digitized

24  individual college catalogs distributed online,  for free for personal use to students, parents,

25  counselors and teachers; 2) a collection of digitized college catalogs from all universities

26  distributed online, at a minimal fee, to libraries and similar entities; and 3) a collection of

27  individual course descriptions and their related data, dating back 16 years, distributed online, at a

28  COMPLAINT

1    minimal fee, to registrars, admissions, and transfer personnel.  The digitized college catalogs,

2    course descriptions, and equivalencies are hereinafter referred to as the "Digitized Information."

3         36.    CollegeSource's Digitized Information has significant commercial value.  It is in a

4    form useable in connection with the Internet and makes the work of researching college catalogs,

5    finding equivalencies, course articulations and transcript reconciliations faster, easier and cheaper

6    for students, guidance counselors and educational institutions.  This commercial value is

7    underscored by the immense investment of time and resources by CollegeSource and its

8    predecessor to collect, convert and digitize the Digitized Information, which is currently

9    estimated to be in excess of $10,000,000.

10        37.    While CollegeSource strives to make its Digitized Information 100% accurate

11   with respect to the original paper catalogs, random errors invariably make it past CollegeSource's

12   quality control checks.  These errors are primarily in syntax and formatting, such as the text

13   "catalog" in the original catalog being reflected as "cata**l**og" in CollegeSource's Digitized

14   Information.  When the same unique pattern of errors turn up in a competitor's data or product,

15   it can only be the result of unauthorized copying from CollegeSource's Digitized Information.

16        38.    In order for a competitor of CollegeSource to create a database with course

17   descriptions as comprehensive in time and scope as those in CollegeSource's Digitized

18   Information, without merely copying CollegeSource's Digitized Information, such competitor

19   would be required to perform the same costly, time consuming and intensive quality control

20   processes performed by CollegeSource and its predecessor.

21

22   **Terms of Use**

23        39.    Each of CollegeSource's Websites contain terms of use in conspicuous locations,

24   such that a visitor to the Websites is on notice of that the authorization to view and use the

25   CollegeSource's Digitized Information is restricted.  Such restrictions on the authorization to

26   view and use the Digitized Information include one or more of the following:

27        This means you may NOT:

28
COMPLAINT

-7-

       \*       distribute digital catalog files to others,
       \*       "mirror" or include digital catalog files on an Internet (or Intranet) server,
       \*       link to CollegeSource digital catalog files from your website, or
       \*       modify or re-use digital catalog files without the express written consent of CollegeSource, Inc. and the appropriate school.

You may:
   \*       print copies of the information for your own personal use,
   \*       store the files on your own computer for personal use only, or
   \*       reference non PDF documents on this server from your own documents.

CollegeSource, Inc. reserves the right to revoke such authorization at any time, and any such use shall be discontinued immediately upon written notice from CollegeSource, Inc.

\* \* \*

LIMITATIONS ON USE.

a. Only one individual may access a Service at the same time using the same user name or password, unless CollegeSource, Inc. agrees otherwise.

b. The text, graphics, images, video, design, course description data, PDF college catalogs, information, organization, compilation, look and feel, advertising and all other protectable intellectual property, and all improvements, suggestions, and derivations thereto and thereof (collectively, the "Content") available through the Services is CollegeSource, Inc.'s property and is protected by copyright and other intellectual property laws.   Unless you have CollegeSource, Inc.'s written consent, you may not sell, publish, broadcast, distribute, retransmit the information obtained through any Service, or otherwise provide access to the Content received through the Services to anyone, including, if applicable, your fellow students or employees, with the following two exceptions:
      (i) You may distribute course description data from a Service in non-electronic form to a few individuals for your own personal, non-commercial use, without charge, provided you include all copyright and other proprietary rights notices in the same form in which the notices appear in the Service, original source attribution, and the phrase "Used with permission from CollegeSource, Inc."
              (ii) You may use CollegeSource, Inc.'s "E-mail" service to e-mail course description data from a Service to a few individuals for your own personal, non-commercial use, without charge. You are not permitted to use this service for the purpose of regularly providing other users with access to content from a Service.

c. You agree not to rearrange or modify the Content. You agree not to create abstracts from, scrape or display data from the Content for use on another web site or service. You agree not to post any of the Content from the Services to weblogs, newsgroups, mail lists or electronic bulletin boards, without CollegeSource, Inc.'s written consent. To request consent for this and other matters, please contact CollegeSource Customer Service.

COMPLAINT

d. CollegeSource, Inc has expended considerable time, effort, money and expertise to compile its data. CollegeSource, Inc. has implemented suitable precautions to detect unauthorized use of catalogs, course descriptions, lists etc. including seeding data to detect unlawful duplication, sale and re-use.

e. You agree not to use the Services for any unlawful or unauthorized purpose. CollegeSource, Inc. reserves the right to terminate or restrict your access to a Service if, in its opinion, your use of the Service does or may violate any laws, regulations or rulings, infringe upon another person's rights or violate the terms of this Agreement. Also, CollegeSource, Inc. may refuse to grant you a user name that impersonates someone else, is protected by trademark or other proprietary right law, or is vulgar or otherwise offensive.

40.     CollegeSource's digitized catalogs also contain prominent terms of use, which occupy the full second page, such that users of the digitized catalogs are on notice of said terms and are aware that any use of the digitized catalogs are subject to the same restrictions. Such restrictions on the authorization to view and use the digitized catalogs are substantially similar to the following:

This means you may NOT:
*    distribute digital catalog files to others,
*    "mirror" or include digital catalog files on an Internet (or Intranet) server,
*    modify or re-use digital catalog files without the express written consent of CollegeSource ® and Career Guidance Foundation  and the appropriate school.

You may:
*    print copies of the information for your own personal use,
*    store the files on your own computer for personal use only, or
*    reference this material from your own documents.

CollegeSource ® and Career Guidance Foundation  reserves the right to revoke such authorization at any time, and any such use shall be discontinued immediately upon written notice from CollegeSource ® and Career Guidance Foundation.

## AcademyOne's Wrongful Acts

41.     AcademyOne is a competitor of CollegeSource.  Like CollegeSource, AcademyOne offers information and data services related to equivalencies, course articulations and/or transcript reconciliations.

42.     AcademyOne offers its information and services on the Internet at www.academyone.com, www.collegetransfer.net, and www.courseatlas.com.

COMPLAINT

43.     AcademyOne recognized the value of creating a database of equivalencies, course articulations and/or transcript reconciliations from information that had already been digitized.

44.     Accordingly, AcademyOne approached CollegeSource regarding acquiring and/or using CollegeSource's Digitized Information.

45.     CollegeSource declined AcademyOne's proposal to acquire and/or use CollegeSource's Digitized Information.

46.     On information and belief, on multiple occasions, AcademyOne posed (or caused others to pose) as a legitimate user (student, faculty, guidance counselor, *etc.*) to gain access to CollegeSource's Digitized Information on its Websites.  AcademyOne did not inform CollegeSource that it intended to access CollegeSource's Websites for the purpose of taking CollegeSource's Digitized Information.

47.     On information and belief, AcademyOne had actual knowledge of the terms of use on CollegeSource's Websites and digitized catalogs.

48.     On information and belief, AcademyOne accepted the benefit of using CollegeSource's Websites and Digitized Information with knowledge of the terms of use on CollegeSource's Websites and digitized catalogs, and thereby assented to such restrictions of use.

49.     After AcademyOne obtained access to CollegeSource's Websites, AcademyOne copied CollegeSource's Digitized Information, including, but not limited to, CollegeSource's digitized catalogs, to AcademyOne's computer(s) and various databases therein.

50.     Catalogs and information on AcademyOne's websites have been copied from CollegeSource's Digitized Information.  That catalogs and information on AcademyOne's websites were obtained from CollegeSource's Digitized Information is shown by, *inter alia*, the presence of the same random errors on AcademyOne's websites and information that appear in CollegeSource's Digitized Information.

51.     Course descriptions currently available on AcademyOne's online course catalog database were copied from CollegeSource's Digitized Information.

COMPLAINT

52.    After AcademyOne obtained CollegeSource's Digitized Information, AcademyOne posted CollegeSource's Digitized Information for viewing on AcademyOne's websites. AcademyOne also distributed CollegeSource's Digitized Information to the users of AcademyOne's websites.

53.    CollegeSource caught AcademyOne using and distributing CollegeSource's Digitized Information, in the form of CollegeSource's digitized catalogs, on AcademyOne's websites.

54.    AcademyOne admitted that it was in possession of CollegeSource's Digitized Information and promised to remove CollegeSource's Digitized Information from all of its computers.

55.    In fact, AcademyOne only removed CollegeSource's Digitized Information from its online webserver while keeping such information on its computers.

56.    On information and belief, AcademyOne has intentionally failed to remove CollegeSource's Digitized Information from all of its computers. AcademyOne, in representing that it would remove all of CollegeSource's digital information from its computers, did so only to delay CollegeSource in filing a lawsuit and perfect its plan to cover-up its further misappropriation of CollegeSource's digitized information.

57.    On information and belief, AcademyOne has profited from its use and appropriation of CollegeSource's Digitized Information.

58.    AcademyOne has saved considerable effort and expense through its misappropriation of CollegeSource's Digitized Information.

59.    AcademyOne has used CollegeSource's Digitized Information to compete against CollegeSource.

60.    As a result of AcademyOne's unauthorized taking of CollegeSource's Digitized Information, AcademyOne's acquisition and conversion costs are negligible, and AcademyOne does not have to amortize the equivalent of CollegeSource's acquisition and conversion costs in

COMPLAINT

1  any competitive bid against CollegeSource.  This puts CollegeSource at a significant competitive

2  disadvantage and allows AcademyOne to compete unfairly with CollegeSource.

3       61.    On information and belief, CollegeSource has been damaged by AcademyOne's

4  use and appropriation of CollegeSource's Digitized Information, including, but not limited to, the

5  loss of business and profits.  On information and belief, the loss to CollegeSource from

6  AcademyOne's unauthorized use of CollegeSource's Digitized Information exceeds the sum of

7  $10,000,000.

8

9  **FIRST CAUSE OF ACTION**
(U.S. Computer Fraud And Abuse Act)

10  [18 U.S.C. §1030(g)]

11       62.    CollegeSource incorporates by reference the allegations set forth in paragraphs 1

12  through 61 of this Complaint as though fully set forth in this cause of action.

13       63.    Each of CollegeSource's Websites, and the Digitized Information thereon, are

14  stored on computers in the State of California that are used in or affecting interstate or foreign

15  commerce or communication.  CollegeSource's Websites have subscribers/customers in multiple

16  states throughout the United States as well as other countries.  CollegeSource even has military

17  bases and ships-on-the-sea as customers.  CollegeSource's computers constitute a "protected

18  computer" within the meaning of 18 U.S.C. §1030(e)(2)(B).

19       64.    AcademyOne was not authorized, either implicitly or explicitly, to access

20  CollegeSource's Digitized Information for the purpose of competing with CollegeSource or other

21  commercial purposes, or to violate the terms of use on CollegeSource's Websites and/or digital

22  catalogs.

23       65.    AcademyOne's use of the Digitized Information exceeded authorization provided

24  to use the Digitized Information.

25       66.    Any authorization AcademyOne had to access the Websites and Digitized

26  Information terminated when AcademyOne used CollegeSource's Digitized Information in an

27  unauthorized way.

28  COMPLAINT

67.     CollegeSource reasonably expected that the users of its Websites and Digitized Information would abide by CollegeSource's terms of use disclosed on the Websites and digitized catalogs.

68.     AcademyOne knew, or should have known, that CollegeSource would not have granted AcademyOne access to CollegeSource's Websites and/or Digitized Information if AcademyOne would have informed CollegeSource that AcademyOne intended to use its access to CollegeSource's Websites for the purpose of competing with CollegeSource or other commercial purposes, or to violate the terms of use on CollegeSource's Websites and/or digital catalogs.

69.     Academy One knew as of the time it requested to obtain or use CollegeSource's Digitized Information and was then denied that CollegeSource would not grant AcademyOne commercial use of its Digitized Information.

70.     AcademyOne knew when CollegeSource caught AcademyOne publishing CollegeSource's Digitized Information and demanded its removal that AcademyOne had no authorization to use such information.

71.     On information and belief, AcademyOne has violated 18 U.S.C. §1030(a)(2)(C) by intentionally accessing a computer without authorization or exceeding authorized access, and thereby obtaining information from CollegeSource's computer.

72.     On information and belief, AcademyOne has violated 18 U.S.C. §1030(a)(4) by knowingly and with intent to defraud, accessing CollegeSource's computer without authorization, or exceeding authorized access, and by means of such conduct furthering the intended fraud and obtaining anything of value.

73.     On information and belief, AcademyOne knowingly and with an intent to defraud gave false information to access the Digitized Information on CollegeSource's Websites, disregarded CollegeSource's terms of use, and obtained Digitized Information from CollegeSource - which is of great value.

74.     On information and belief, AcademyOne's conduct has caused loss to

COMPLAINT

CollegeSource in an amount aggregating at least $5,000.00 in a one-year period.

75.    Pursuant to 18 U.S.C. §1030(g), CollegeSource is entitled to bring a civil action for AcademyOne's violations of 18 U.S.C. §1030.

76.    WHEREFORE, CollegeSource is entitled to and seeks:

a.    Compensatory damages in an amount to be proven at trial, but believed to be in excess of $75,000, pursuant to 18 U.S.C. §1030(g);

b.    Injunctive and other equitable relief, including, but not limited to, preliminary and permanent injunctions, forfeiture or seizure of CollegeSource's Digitized Information, and a constructive trust over any property which constitutes or is derived from CollegeSource's Digitized Information, pursuant to 18 U.S.C. §1030(g);

c.    Costs of the action; and

d.    Such other and further relief as this Court deems appropriate.

**SECOND CAUSE OF ACTION**
(California Computer Crimes)
[Cal. Pen. Code §502(e)]

77.    CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 76 of this Complaint as though fully set forth in this cause of action.

78.    Pursuant to Cal. Pen. Code §502(j), AcademyOne is deemed to have personally accessed CollegeSource's computers, computer system or computer network in the Southern District of California.

79.    AcademyOne knowingly accessed CollegeSource's Websites to collect, copy, and/or use CollegeSource's Digitized Information in a manner not authorized by CollegeSource.

80.    AcademyOne has violated Cal. Pen. Code §502(c)(1) by knowingly accessing and without permission using any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

81.    AcademyOne has violated Cal. Pen. Code §502(c)(2) by knowingly accessing and

COMPLAINT

without permission taking, copying or making use of any data from a computer, computer system or computer network, or taking or copying any supporting documentation.

82.    AcademyOne's violations of Cal. Pen. Code §502, and the acts that constituted said violations, were knowing and willful, and were performed with oppression, fraud, and malice.

83.    Pursuant to Cal. Pen. Code §502(e), CollegeSource is entitled to bring a civil action for AcademyOne's violations of Cal. Pen. Code §502.

84.    WHEREFORE, CollegeSource is entitled to and seeks:

    a.    Compensatory damages in an amount to be proven at trial, but believed to be in excess of $75,000, pursuant to Cal. Pen. Code §502(e)(1);

    b.    Punitive damages in an amount determined by this Court to be sufficient to punish and make an example out of AcademyOne, pursuant to Cal. Pen. Code §502(e)(4);

    c.    Injunctive and other equitable relief, including, but not limited to, preliminary and permanent injunctions, forfeiture or seizure of CollegeSource's Digitized Information, and a constructive trust over any property which constitutes or is derived from CollegeSource's Digitized Information, pursuant to Cal. Pen. Code §502(e)(1);

    d.    Forfeiture of any computer, computer system, computer network, or any software or data, owned by the AcademyOne, that is used during the commission of any violation of Cal. Pen. Code §502(c) or any computer, owned by the AcademyOne, which is used as a repository for the storage of software or data illegally obtained in violation of Cal. Pen. Code §502(c).

    e.    Reasonable attorney fees, pursuant to Cal. Pen. Code §502(e)(2);

    f.    Costs of the action; and

    g.    Such other and further relief as this Court deems appropriate.

COMPLAINT

-15-

### THIRD CAUSE OF ACTION
(Breach Of Contract)

85.    CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 84 of this Complaint as though fully set forth in this cause of action.

86.    By using CollegeSource's Websites and digitized catalogs, AcademyOne agreed to the terms of use thereof.

87.    The terms of use on CollegeSource's Websites and digitized catalogs constituted a valid and enforceable contract between CollegeSource and AcademyOne.

88.    Through the conduct set forth above, AcademyOne has breached the terms of use on CollegeSource's Websites and digitized catalogs.

89.    CollegeSource has been damaged as a result of AcademyOne's breach of the terms of use on CollegeSource's Websites and digitized catalogs in an amount to be proven at trial and believed to be in excess of $75,000.

90.    WHEREFORE, CollegeSource is entitled to and seeks:

a.    Any and all damages sustained by CollegeSource in an amount to be proven at trial, but believed to be in excess of $75,000;

b.    Any and all profits of AcademyOne as a result of its acts complained of herein;

c.    The reasonable value of the Digitized Information taken by AcademyOne from CollegeSource;

d.    The expenditures saved by AcademyOne as a result of its acts complained of herein, including, but not limited to, CollegeSource's costs to collect, compile and convert its Digitized Information;

e.    Costs of the action; and

f.    Such other and further relief as this Court deems appropriate.

\\

COMPLAINT

## FOURTH CAUSE OF ACTION
(Misappropriation)

91.    CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 90 of this Complaint as though fully set forth in this cause of action.

92.    CollegeSource has invested substantial time and money in the development of its Digitized Information.  CollegeSource's investment of time and money includes, but is not limited to, the digitizing of thousands of college catalogs.

93.    AcademyOne has appropriated CollegeSource's Digitized Information at little or no cost.

94.    CollegeSource has been damaged as a result of AcademyOne's appropriation of CollegeSource's Digitized Information in an amount to be proven at trial and believed to be in excess of $75,000.

95.    AcademyOne has benefitted as a result of its appropriation of CollegeSource's Digitized Information in an amount to be proven at trial and believed to be in excess of $75,000.

96.    WHEREFORE, CollegeSource is entitled to and seeks:

a.    Any and all damages sustained by CollegeSource and/or benefit retained by AcademyOne in an amount to be proven at trial, but believed to be in excess of $75,000;

b.    Any and all profits of AcademyOne as a result of its acts complained of herein;

c.    The reasonable value of the Digitized Information taken by AcademyOne from CollegeSource;

d.    The expenditures saved by AcademyOne as a result of its acts complained of herein, including, but not limited to, CollegeSource's costs to collect, compile and convert its Digitized Information;

e.    Costs of the action; and

f.    Such other and further relief as this Court deems appropriate.

COMPLAINT

## FIFTH CAUSE OF ACTION
(Unjust Enrichment)

97.     CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 96 of this Complaint as though fully set forth in this cause of action.

98.     AcademyOne received benefit from CollegeSource and at CollegeSource's expense through AcademyOne's unauthorized receipt and use of CollegeSource's Digitized Information.  AcademyOne's benefit includes, *inter alia*, revenues and saved expenditures relating to the digitizing and compilation of CollegeSource's Information.

99.     Under the circumstances set forth above, it would be unjust for AcademyOne to retain the benefit bestowed upon it by CollegeSource.

100.    WHEREFORE, CollegeSource is entitled to and seeks:

a.      That AcademyOne make restitution for any and all benefits it unjustly received from CollegeSource;

b.      Any and all profits of AcademyOne as a result of its acts complained of herein;

c.      The reasonable value of the Digitized Information taken by AcademyOne from CollegeSource;

d.      The expenditures saved by AcademyOne as a result of its acts complained of herein, including, but not limited to, CollegeSource's costs to collect, compile and convert its Digitized Information;

e.      Costs of the action; and

f.      Such other and further relief as this Court deems appropriate.

## SIXTH CAUSE OF ACTION
(Unfair Competition)
[Cal. Bus. Prof. Code §§17200 *et. seq.*]

101.    CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 100 of this Complaint as though fully set forth in this cause of action.

COMPLAINT

-18-

102.   This cause of action is brought pursuant to Cal. Bus. & Prof. Code §17200, *et seq.*

103.   AcademyOne has committed and continues to commit an unlawful, unfair or fraudulent business act or practice within the meaning of Cal. Bus. & Prof.. Code §17200.

104.   WHEREFORE, CollegeSource is entitled to and seeks:

    a.   Such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by AcademyOne of any act or practice which constitutes unfair competition, pursuant to Cal. Bus. & Prof. Code §17203;

    b.   Restitution to CollegeSource of any money or property, real or personal, which may have been acquired by means of AcademyOne's unfair competition, pursuant to Cal. Bus. & Prof. Code §17203;

    c.   Preliminary and permanent injunctive relief;

    d.   Costs of the action; and

    e.   Such other and further relief as this Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, CollegeSource prays for judgment and relief on all causes of action, as more specifically detailed in each cause of action, against AcademyOne as follows:

1.   That CollegeSource recover from AcademyOne any and all damages sustained by CollegeSource, together with AcademyOne's profits, in an amount to be proven at trial and believed to be at least $75,000;

2.   That CollegeSource recover the expenditures saved by AcademyOne as a result of its acts complained of herein, including, but not limited to, CollegeSource's costs to collect, compile and convert its Digitized Information;

3.   That CollegeSource recover the reasonable value of the Digitized Information taken by AcademyOne from CollegeSource;

4.   For all appropriate equitable relief including preliminary and permanent injunctive relief, constructive trust, seizure and forfeiture;

COMPLAINT

5.     That CollegeSource recover compensatory damages in an amount to be proven at trial, but believed to be in excess of $75,000, pursuant to 18 U.S.C. §1030(g);

6.     For injunctive and other equitable relief, including, but not limited to, preliminary and permanent injunctions, forfeiture or seizure of CollegeSource's Digitized Information, and a constructive trust over any property which constitutes or is derived from CollegeSource's Digitized Information pursuant to 18 U.S.C. §1030(g);

7.     That CollegeSource recover compensatory damages in an amount to be proven at trial, but believed to be in excess of $75,000, pursuant to Cal. Pen. Code §502(e)(1);

8.     That CollegeSource recover punitive damages in an amount determined by the Jury to be sufficient to punish and make an example out of AcademyOne, pursuant to Cal. Pen. Code §502(e)(4);

9.     For injunctive and other equitable relief, including, but not limited to, preliminary and permanent injunctions, forfeiture or seizure of CollegeSource's Digitized Information, and a constructive trust over any property which constitutes or is derived from CollegeSource's Digitized Information pursuant to Cal. Pen. Code §502(e)(1);

10.    For forfeiture of any computer, computer system, computer network, or any software or data, owned by the AcademyOne, that is used during the commission of any violation of Cal. Pen. Code §502(c) or any computer, owned by the AcademyOne, which is used as a repository for the storage of software or data illegally obtained in violation Cal. Pen. Code §502(c);

11.    That CollegeSource recover reasonable attorney fees, pursuant to Cal. Pen. Code §502(e)(2);

12.    For an order enjoining AcademyOne from continuing to engage, use, or employ any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code;

13.    For such orders or judgments, including the appointment of a receiver, as may be

COMPLAINT

necessary to prevent the use or employment by AcademyOne of any act or practice which constitutes unfair competition, pursuant to Cal. Bus. & Prof. Code §17203;

14.     For restitution to CollegeSource of any money or property, real or personal, which may have been acquired by means of AcademyOne's unfair competition, pursuant to Cal. Bus. & Prof. Code §17203;

15.     That CollegeSource recover its costs of this suit;

16.     That CollegeSource recover pre-judgment and post-judgment interest, as permitted by the Court or under statute;

17.     For a jury trial on all claims so triable;  and

18.     For such other and further relief as the Court may deem necessary or appropriate.

Dated: October 27, 2008

Respectfully submitted by,

LAW OFFICES OF DARREN J. QUINN
DARREN J. QUINN
ALEXANDER E. PAPAEFTHIMIOU

_____
Darren J. Quinn

12702 Via Cortina, Suite 105
Del Mar, CA 92014
Telephone: (858) 509-9401

WILLIAM F. WOODS

_____
William F. Woods

750 State St #310
San Diego, CA, 92101
Tel: (610) 742-5000

*Attorneys for Plaintiff COLLEGESOURCE, INC.*

COMPLAINT

-21-

## **DEMAND FOR A JURY TRIAL**

Plaintiff COLLEGE SOURCE, INC. demands a trial by jury on all causes of action so triable.

Dated: October 27, 2008

Respectfully submitted,

LAW OFFICES OF DARREN J. QUINN
DARREN J. QUINN
ALEXANDER E. PAPAEFTHIMIOU

_____
Darren J. Quinn

12702 Via Cortina, Suite 105
Del Mar, CA 92014
Telephone: (858) 509-9401

WILLIAM F. WOODS

_____
William F. Woods

750 State St #310
San Diego, CA, 92101
Tel: (610) 742-5000

*Attorneys for Plaintiff COLLEGESOURCE, INC.*

COMPLAINT

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

COLLEGESOURCE, Inc., a California Corporation

**DEFENDANTS**

ACADEMYONE, INC., a Pennsylvania Corporation

**(b)** County of Residence of First Listed Plaintiff   San Diego County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Darren J. Quinn, 12702 Via Cortina Suite 105, Del Mar, CA (858) 509-9401

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☒ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
[18 U.S.C. §1030]
Brief description of cause:
US Computer Fraud and Abuse Act

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**
(See instructions):

JUDGE

DOCKET NUMBER

DATE
10/27/2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 156473   AMOUNT $350-   10/27/08 BH   APPLYING IFP   JUDGE   MAG. JUDGE

ORIGINAL

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

## # 156473   — BH

## October 27, 2008
## 15:53:40

### Civ Fil Non-Pris
USAO #.: 08CV1987 CIVIL FILING
Judge..: MARILYN L HUFF
Amount.:                    $350.00 CK
Check#.: BC#2390


**Total—> $350.00**


FROM: COLLEGESOURCE V. ACADEMYONE
       CIVIL FILING