Darren J. Quinn (149679)
Alexander E. Papaefthimiou (236930)
LAW OFFICES OF DARREN J. QUINN
12702 Via Cortina, Suite 105
Del Mar, CA 92014
Tel: (858) 509-9401

William F. Woods (87189)
750 State St #310
San Diego, CA, 92101
Tel: (610) 742-5000

*Attorneys for Plaintiff COLLEGESOURCE, INC.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLEGESOURCE, INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> ACADEMYONE, INC., a Pennsylvania corporation, <br><br> Defendant. | CASE NO. **3:08-cv-01987-H-CAB** <br><br> **FIRST AMENDED COMPLAINT** <br><br> 1.  U.S. Computer Fraud and Abuse Act [18 U.S.C. §1030(g)] <br><br> 2.  California Computer Crimes [Cal. Pen. Code §502(e)] <br><br> 3.  Breach of Contract <br><br> 4.  Misappropriation <br><br> 5.  Unjust Enrichment <br><br> 6.  Infringement of Registered Mark [15 U.S.C. §1114] <br><br> 7.  Lanham Act Unfair Competition [15 U.S.C. §1125(a)] <br><br> 8.  California Statutory Unfair Competition [Cal. Bus. Prof. Code §§17200 *et. seq.*] |

**JURY TRIAL DEMANDED**

FIRST AMENDED COMPLAINT

1    Plaintiff COLLEGESOURCE, INC. ("CollegeSource"), a California corporation, by way

2    of complaint against defendant ACADEMYONE, INC. ("AcademyOne"), a Pennsylvania

3    corporation, alleges the following on information and belief:

4                        **JURISDICTION AND VENUE**

5    1.    This Complaint arises under the United States Computer Fraud and Abuse Act (18

6    U.S.C. §1030), the trademark and unfair competition laws of the United States (15 U.S.C. §1051,

7    *et seq*) the penal code of the State of California (Cal. Pen. Code §502), the unfair competition

8    laws of the State of California (Cal. Bus. & Prof. Code §§17200, *et seq*), the contract law of the

9    State of California and the common law of misappropriation and unjust enrichment of the State

10   of California.

11   2.    This Court has federal question jurisdiction over the first cause of action herein

12   (18 U.S.C. §1030) pursuant to 28 U.S.C. §1331.  This Court has federal question jurisdiction

13   over the sixth (15 U.S.C. §1114) and seventh (15 U.S.C. §1125(a)) causes of action herein

14   pursuant to 15 U.S.C. §1121.  This Court has supplemental jurisdiction over the remaining

15   causes of action herein pursuant to 28 U.S.C. §1367(a).  This Court has diversity jurisdiction

16   over all causes of action herein pursuant to 28 U.S.C. §1332(a)(1).  The amount in controversy

17   exceeds, exclusive of interest and costs, the sum of $75,000.00.

18   3.    Venue is proper in this district under 28 U.S.C. §§1391(b) and (c).  This Court has

19   personal jurisdiction over AcademyOne and venue is proper in this district because, *inter alia*, (a)

20   AcademyOne or its agents are soliciting and doing business in this district, (b) a substantial part

21   of AcademyOne's wrongful acts or omissions giving rise to CollegeSource's claims occurred in

22   this district, (c) the contracts at issue in this action were entered into and breached in this district,

23   (d) AcademyOne directed its intentional and wrongful conduct towards this district and a known

24   resident of this district, (e) the harm caused by AcademyOne's wrongful acts or omissions

25   occurred in this district and AcademyOne knew that said harm would occur in this district, and

26   (f) this action requires the application of California law.  Further, AcademyOne's acts of

27   infringement of a registered trademark and Lanham Act unfair competition alleged herein (sixth

28   **FIRST AMENDED COMPLAINT**

-1-

1    and seventh causes of action) occurred, in part, and were discovered, after this action had been

2    commenced and AcademyOne had been informed that CollegeSource is a California corporation

3    with principal place of business in this District.

4                                          **THE PARTIES**

5            4.      Plaintiff COLLEGESOURCE, INC. ("CollegeSource") is a California corporation

6    with principal place of business in San Diego, California.  CollegeSource is successor in interest

7    to the CAREER GUIDANCE FOUNDATION, a Delaware corporation ("CGF").  CGF operated

8    as an IRC § 501 (c) (3)  non- profit organization.  CollegeSource acquired all of the tangible and

9    intangible assets of CGF in 2004, including, but not limited to, all of CGF's trademarks,

10   trademark registrations and goodwill.  CollegeSource provides the public with information and

11   data services related to college and university catalogs and in particular, curriculums, course

12   descriptions, and college transfers.  CGF's founding purpose was to support career guidance and

13   planning in the educational system by providing a complete collection of college catalogs on/in

14   the best dissemination media.

15           5.      Defendant ACADEMYONE, INC. ("AcademyOne") is a Pennsylvania

16   corporation.  On information and belief, AcademyOne's principal place of business is in West

17   Chester, Pennsylvania.

18                                         **BACKGROUND**

19   **The Beginning**

20           6.      CGF was founded in 1971.  CGF's typical clients were high schools, students,

21   parents, counselors, universities, registrars, public libraries, military bases, ships-on-the-sea and

22   other government offices.

23           7.      At all times, CGF was a non-profit organization and generally charged its clients

24   nothing, or only enough money to cover its expenses.  Funding for CGF came from Mr. Harry G.

25   Cooper ("Cooper").  Over its thirty-three (33) year existence, CGF's shortfall funding came soley

26   from Cooper or loans guaranteed by Cooper.

27   //

28   **FIRST AMENDED COMPLAINT**

8.     CGF's initial action was to place college catalogs on microfiche.  Each page of microfiche could hold 495 pages.

9.     At the time CGF was founded, libraries and admissions offices were heavily burdened by the need to keep thousands of paper college catalogs in order to determine transfer equivalencies and provide admissions and transfer advice.  Libraries and college admissions offices frequently kept paper catalogs from each of the over 3,000 universities in the United States.  Complicating matters was that many universities had multiple catalogs for each of their several colleges (such as Engineering, Architecture, Nursing, Music, Law, Medicine, *etc*.).  Also, libraries and college admissions offices were required to keep catalogs for each year in which potential transfer students might have taken classes.  A typical years worth of paper catalogs would fill a bookshelf seven (7) feet tall and 23 feet long.  Most universities maintained 20 to 25 years worth of catalogs.

10.    CGF revolutionized the college catalog, the course information and the transfer industry by making information and data available on microfiche.  Using CGF's technology meant a library could now store one (1) year's worth of catalogs in a shoe-box.

11.    Considerable work was required to convert a catalog from paper format to microfiche.  Below are some, but not all, of the required steps.  First, the catalog was acquired from the educational institution with permission to make reproductions.  Then, each page of the catalog was precisely cut out with a razor.  Each catalog page was then positioned for microfiching along with four hundred ninety-four (494) other pages, to make four hundred ninety-five (495) pages per fiche.  Next, each fiche was made into a master copy.  The master copy was then duplicated.

12.    It is estimated that CGF saved the educational community over $40 Million  per year in storage and acquisition costs.

**The Evolution of Technology in The 1990's**

13.    With the advance in computer technology, compact discs ("CDs") became a more efficient means of storing and distributing catalogs and course information than microfiche.  CDs

FIRST AMENDED COMPLAINT

containing digitized catalogs and course information also had the potential advantage of allowing word searches - a very helpful feature in light of the size of some of the catalogs.  A year's worth of college catalogs would fit on six (6) CDs.

14.     Digitizing printed catalogs and course information presented additional hurdles that microfiching did not.  While razoring the individual pages from each catalog was still required, each page had to be converted into a digital format that allowed a computer to read the individual letters and words on the page.  This process is known as Optical Character Recognition ("OCR").

15.     Trivial acts of character recognition to the human eye can frustrate even the most sophisticated scanner and can make the OCR process difficult, error prone and time consuming.  For example, a scanner may misread the type and size of font, confuse characters (such as "g" with "9," "l" with "1," and "c" with "e"), read false highlights from reflective paper, read information from the opposite side of overly transparent paper, and erroneously interpret stray marks or smudges as characters or parts of characters.

16.     In light of the various inherent problems with the OCR process, CGF devoted significant research and development costs working with software companies, such as Microsoft, Adobe and OmniPage, to develop more efficient OCR techniques.

17.     Despite the advent of more efficient OCR techniques, quality control on CGF's digitized catalogs and course information was crucial.  Even a one-percent (1%) error rate would result in ten (10) errors and unsearchable words on a one-thousand (1,000) character page, and thousands of unsearchable words per catalog.  CGF's targeted error rate after detailed  personal quality control was 0.005%.

18.     The vast majority of plaintiff's digitized catalogs and course information are the result of scanning and OCR-ing.  Older "legacy" catalogs are valuable because of the need to determine equivalencies for students that are seeking to apply credits from older course-work.  For example, a veteran returning from years overseas may seek to apply his/her prior course-work from one institution towards a degree at another institution.

FIRST AMENDED COMPLAINT

19.     Recently, some colleges have started to provide their catalogs and course descriptions in digital form. Nevertheless, CollegeSource is required to convert all files from their native format to Adobe PDF format.  CollegeSource must then decide whether or not to include any pictures, replace them with blank boxes or degrade the pictures (for optimal downloading speed). CollegeSource then bookmarks/links  the catalog for better look-up efficiency in its final product.

**CollegeSource's Websites, Digitized Information and Newest Technology**

20.     About five (5) years after CGF began digitizing college catalogs and course descriptions for use on data CDs, it became clear that distribution over the Internet would soon eclipse the need for further distribution *via* data CDs.

21.     As with microfiche and data CDs, CGF took the lead to move academia to utilize the Internet in connection with their catalogs and course descriptions.

22.     At the time of CGF's transfer to CollegeSource, CGF had approximately 30,000 college catalogs available online.

23.     The increasing needs of university transfer offices led to their demands that they not be required to search complete catalogs for "Course Descriptions" (thus ignoring/skipping-over athletics, famous alumni, campus housing, scholarships, maps, healthcare *etc.*).

24.     Registrars wanted a new system whose only database was "Course Descriptions" (name, credit hours, description etc.).  With such a database registrars hoped to streamline their admissions, discharge and transfer duties.

25.     In response to these registrar requests, CollegeSource began developing its "Transfer Evaluation Service" ("TES").

26.     Because of its previous, time consuming and expensive efforts in creating a collection of OCR'd catalogs, CollegeSource was able to begin "cutting and pasting" individual course descriptions from its "Catalog" database into its new TES database.  Just like moving its collection of OCR'd CD catalogs to the Internet, CollegeSource expended significant time and money to move its now over 44,000 digitized college catalog collection into over 37,000,000

FIRST AMENDED COMPLAINT

-5-

1   records (including course descriptions, credits, name, prerequisites, etc.) in its new TES database.

2   27.   CollegeSource also developed software to allow an evaluator to store a given

3   course equivalency in the TES database so as to assist and potentially eliminate the need for a

4   similar, future, comparison.  This capacity is referred to as "Equivalency" or "Course

5   Articulation" or "Transcript Reconciliation."

6   28.   CollegeSource still maintains and annually increases its "Catalog" database for

7   those students and non-registrars that simply wish to view the entire catalog.

8   29.   Without CGF/CollegeSource's efforts to create a collection of OCR'd catalogs to

9   mine for course descriptions any competitor of CollegeSource would have to go through the

10   same money, time and labor intensive OCR'ing that CGF/CollegeSource has been doing for the

11   past 16 years.

12   30.   CollegeSource has been able to mine its catalog database to populate its TES

13   database with over 36 Million individual course descriptions (names, credit hours etc.).

14   31.   The value to a registrar of a digitized course catalog database is in its

15   completeness –  the ability to go way back in years to find digitized course equivalencies, way

16   back to the time before colleges published their own catalogs in digital form, way back to the

17   time when the only digital source of course descriptions came from CGF/CollegeSource's

18   efforts.

19   32.   CollegeSource, as did its predecessor CGF, provides access to its digitized

20   catalogs for free, for personal use, to students, parents and teachers who may only have need for

21   one or two catalogs.  CollegeSource, as did its predecessor CGF, provides access to its digitized

22   complete catalog collection to libraries, registrars and government agencies at a minimal fee.

23   Regardless, all CGF/CollegeSource digitized catalogs are "use restricted" to subscribers and

24   private persons granted limited use.  Under no circumstances are the digitized catalogs to be

25   redistributed without permission from CollegeSource.

26   33.   Currently, CollegeSource makes college catalogs, course descriptions, and

27   equivalencies available to its customers online at www.collegesource.com,

28   FIRST AMENDED COMPLAINT

-6-

1   www.collegesource.org, and tes.collegesource.org (the "Websites").

2      34.    Information regarding over 3,000 institutions, including over 44,000 catalogs and

3   over 37,000,000 course descriptions, is currently available on CollegeSource's Websites.

4      35.    CollegeSource's current products can be catagorized as follow: 1) digitized

5   individual college catalogs distributed online,  for free for personal use to students, parents,

6   counselors and teachers; 2) a collection of digitized college catalogs from all universities

7   distributed online, at a minimal fee, to libraries and similar entities; and 3) a collection of

8   individual course descriptions and their related data, dating back 16 years, distributed online, at a

9   minimal fee, to registrars, admissions, and transfer personnel.  The digitized college catalogs,

10  course descriptions, and equivalencies are hereinafter referred to as the "Digitized Information."

11     36.    CollegeSource's Digitized Information has significant commercial value.  It is in a

12  form useable in connection with the Internet and makes the work of researching college catalogs,

13  finding equivalencies, course articulations and transcript reconciliations faster, easier and cheaper

14  for students, guidance counselors and educational institutions.  This commercial value is

15  underscored by the immense investment of time and resources by CollegeSource and its

16  predecessor to collect, convert and digitize the Digitized Information, which is currently

17  estimated to be in excess of $10,000,000.

18     37.    While CollegeSource strives to make its Digitized Information 100% accurate

19  with respect to the original paper catalogs, random errors invariably make it past CollegeSource's

20  quality control checks.  These errors are primarily in syntax and formatting, such as the text

21  "catalog" in the original catalog being reflected as "cata**1**og" in CollegeSource's Digitized

22  Information.   When the same unique pattern of errors turn up in a competitor's data or product,

23  it can only be the result of unauthorized copying from CollegeSource's Digitized Information.

24     38.    In order for a competitor of CollegeSource to create a database with course

25  descriptions as comprehensive in time and scope as those in CollegeSource's Digitized

26  Information, without merely copying CollegeSource's Digitized Information, such competitor

27  would be required to perform the same costly, time consuming and intensive quality control

28

**FIRST AMENDED COMPLAINT**

processes performed by CollegeSource and its predecessor.

**Terms of Use**

39.   Each of CollegeSource's Websites contain terms of use in conspicuous locations, such that a visitor to the Websites is on notice of that the authorization to view and use the CollegeSource's Digitized Information is restricted.  Such restrictions on the authorization to view and use the Digitized Information include one or more of the following:

This means you may NOT:
* distribute digital catalog files to others,
* "mirror" or include digital catalog files on an Internet (or Intranet) server,
* link to CollegeSource digital catalog files from your website, or
* modify or re-use digital catalog files without the express written consent of CollegeSource, Inc. and the appropriate school.

You may:
* print copies of the information for your own personal use,
* store the files on your own computer for personal use only, or
* reference non PDF documents on this server from your own documents.

CollegeSource, Inc. reserves the right to revoke such authorization at any time, and any such use shall be discontinued immediately upon written notice from CollegeSource, Inc.

* * *

LIMITATIONS ON USE.

a. Only one individual may access a Service at the same time using the same user name or password, unless CollegeSource, Inc. agrees otherwise.

b. The text, graphics, images, video, design, course description data, PDF college catalogs, information, organization, compilation, look and feel, advertising and all other protectable intellectual property, and all improvements, suggestions, and derivations thereto and thereof (collectively, the "Content") available through the Services is CollegeSource, Inc.'s property and is protected by copyright and other intellectual property laws.   Unless you have CollegeSource, Inc.'s written consent, you may not sell, publish, broadcast, distribute, retransmit the information obtained through any Service, or otherwise provide access to the Content received through the Services to anyone, including, if applicable, your fellow students or employees, with the following two exceptions:
  (i) You may distribute course description data from a Service in non-electronic form to a few individuals for your own personal, non-commercial use, without charge, provided you include all copyright and other proprietary rights notices in the same form in which the notices appear in the Service, original source attribution, and the phrase "Used with permission from CollegeSource, Inc."
    (ii) You may use CollegeSource, Inc.'s "E-mail" service to e-mail course description data from a Service to a few

individuals for your own personal, non-commercial use,
without charge. You are not permitted to use this service
for the purpose of regularly providing other users with
access to content from a Service.

c. You agree not to rearrange or modify the Content. You agree not to create
abstracts from, scrape or display data from the Content for use on another web site
or service. You agree not to post any of the Content from the Services to weblogs,
newsgroups, mail lists or electronic bulletin boards, without CollegeSource, Inc.'s
written consent. To request consent for this and other matters, please contact
CollegeSource Customer Service.

d. CollegeSource, Inc has expended considerable time, effort, money and
expertise to compile its data. CollegeSource, Inc. has implemented suitable
precautions to detect unauthorized use of catalogs, course descriptions, lists etc.
including seeding data to detect unlawful duplication, sale and re-use.

e. You agree not to use the Services for any unlawful or unauthorized purpose.
CollegeSource, Inc. reserves the right to terminate or restrict your access to a
Service if, in its opinion, your use of the Service does or may violate any laws,
regulations or rulings, infringe upon another person's rights or violate the terms of
this Agreement. Also, CollegeSource, Inc. may refuse to grant you a user name
that impersonates someone else, is protected by trademark or other proprietary
right law, or is vulgar or otherwise offensive.

40.   CollegeSource's digitized catalogs also contain prominent terms of use, which

occupy the full second page, such that users of the digitized catalogs are on notice of said terms

and are aware that any use of the digitized catalogs are subject to the same restrictions.  Such

restrictions on the authorization to view and use the digitized catalogs are substantially similar to

the following:

This means you may NOT:
*      distribute digital catalog files to others,
*      "mirror" or include digital catalog files on an Internet (or Intranet) server,
*      modify or re-use digital catalog files without the express written consent of
       CollegeSource ® and Career Guidance Foundation  and the appropriate
       school.

You may:
*      print copies of the information for your own personal use,
*      store the files on your own computer for personal use only, or
*      reference this material from your own documents.

CollegeSource ® and Career Guidance Foundation  reserves the right to revoke
such authorization at any time, and any such use shall be discontinued
immediately upon written notice from CollegeSource ® and Career Guidance
Foundation.

//

**FIRST AMENDED COMPLAINT**

**CollegeSource's Marks**

41.     CollegeSource owns all right, title and interest to United States Registration No. 2616166 for the word mark "COLLEGESOURCE," and said registered word mark, for use on: (1) "Educational services, namely providing an on-line computer database via global computer information networks in the field of college catalogs;" and (2) "Electronic database in the field of college catalogs, recorded on microfiche and CD-ROM."

42.     United States Registration No. 2616166 for "COLLEGESOURCE" issued on September 10, 2002.  Pursuant to 15 U.S.C. §1065, the "COLLEGESOURCE" mark, and CollegeSource's right to use said mark in commerce, have become incontestible.

43.     Since June of 1994, CollegeSource (or its predecessor CGF) has continuously used the "COLLEGESOURCE" name and mark in interstate commerce in connection with its information and data services related to college and university catalogs, which now include, but are not limited to, information and data services related to curriculums, course descriptions, and college transfers.

44.     Since at least 1980, CollegeSource (or its predecessor CGF) has continuously used the "CAREER GUIDANCE FOUNDATION" name and mark in interstate commerce in connection with its information and data services related to college and university catalogs, which now include, but are not limited to, information and data services related to curriculums, course descriptions, and college transfers.

45.     As a result of the continuous use of "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION," they have accumulated significant goodwill and acquired a secondary meaning in the mind of the public to identify a single source of the products and services offered in connection therewith.

46.     As a result of the continuous use of "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION," they have accumulated significant goodwill and acquired a secondary meaning in the mind of the public to identify CollegeSource as the source of the products and services offered in connection therewith.

FIRST AMENDED COMPLAINT

47.     As a result of the continuous use of "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION," they have accumulated significant goodwill and wide public recognition, including but not limited to recognition by which CollegeSource is known to the public, including but not limited to students, state educational departments, and educational institutions.  As a result, "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION" have become, and are, valuable and irreplaceable assets of CollegeSource.

**AcademyOne's Wrongful Acts**

48.     AcademyOne is a competitor of CollegeSource.  Like CollegeSource, AcademyOne offers information and data services related to equivalencies, course articulations, transcript reconciliations and/or college transfer.

49.     AcademyOne offers its information and services on the Internet at www.academyone.com, www.collegetransfer.net, and www.courseatlas.com.

50.     AcademyOne recognized the value of creating a database of equivalencies, course articulations and/or transcript reconciliations from information that had already been digitized.

51.      Accordingly, AcademyOne approached CollegeSource regarding acquiring and/or using CollegeSource's Digitized Information.

52.     CollegeSource declined AcademyOne's proposal to acquire and/or use CollegeSource's Digitized Information.

53.     On information and belief, on multiple occasions, AcademyOne posed (or caused others to pose) as a legitimate user (student, faculty, guidance counselor, *etc*.) to gain access to CollegeSource's Digitized Information on its Websites.  AcademyOne did not inform CollegeSource that it intended to access CollegeSource's Websites for the purpose of taking CollegeSource's Digitized Information.

54.     On information and belief, AcademyOne had actual knowledge of the terms of use on CollegeSource's Websites and digitized catalogs.

55.     On information and belief, AcademyOne accepted the benefit of using CollegeSource's Websites and Digitized Information with knowledge of the terms of use on

**FIRST AMENDED COMPLAINT**

-11-

CollegeSource's Websites and digitized catalogs, and thereby assented to such restrictions of use.

56.     After AcademyOne obtained access to CollegeSource's Websites, AcademyOne copied CollegeSource's Digitized Information, including, but not limited to, CollegeSource's digitized catalogs, to AcademyOne's computer(s) and various databases therein.

57.     Catalogs and information on AcademyOne's websites have been copied from CollegeSource's Digitized Information.  That catalogs and information on AcademyOne's websites were obtained from CollegeSource's Digitized Information is shown by, *inter alia*, the presence of the same random errors on AcademyOne's websites and information that appear in CollegeSource's Digitized Information.

58.     Course descriptions currently available on AcademyOne's online course catalog database were copied from CollegeSource's Digitized Information.

59.     After AcademyOne obtained CollegeSource's Digitized Information, AcademyOne posted CollegeSource's Digitized Information for viewing on AcademyOne's websites.  AcademyOne also distributed CollegeSource's Digitized Information to the users of AcademyOne's websites.

60.     CollegeSource caught AcademyOne using and distributing CollegeSource's Digitized Information, in the form of CollegeSource's digitized catalogs, on AcademyOne's websites.

61.     AcademyOne admitted that it was in possession of CollegeSource's Digitized Information and promised to remove CollegeSource's Digitized Information from all of its computers.

62.     In fact, AcademyOne only removed CollegeSource's Digitized Information from its online webserver while keeping such information on its computers.

63.     On information and belief, AcademyOne has intentionally failed to remove CollegeSource's Digitized Information from all of its computers.  AcademyOne, in representing that it would remove all of CollegeSource's digital information from its computers, did so only to delay CollegeSource in filing a lawsuit and perfect its plan to cover-up its further

misappropriation of CollegeSource's digitized information.

64.     On information and belief, AcademyOne has profited from its use and appropriation of CollegeSource's Digitized Information.

65.     AcademyOne has saved considerable effort and expense through its misappropriation of CollegeSource's Digitized Information.

66.     AcademyOne has used CollegeSource's Digitized Information to compete against CollegeSource.

67.     As a result of AcademyOne's unauthorized taking of CollegeSource's Digitized Information, AcademyOne's acquisition and conversion costs are negligible, and AcademyOne does not have to amortize the equivalent of CollegeSource's acquisition and conversion costs in any competitive bid against CollegeSource.  This puts CollegeSource at a significant competitive disadvantage and allows AcademyOne to compete unfairly with CollegeSource.

68.     AcademyOne has also misappropriated the goodwill of, and infringed, CollegeSource's "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION" names and marks, both registered and unregistered, by purchasing the terms (generally called AdWords) "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION" from Internet search engines, including, but not limited to, Google, as terms that, when typed into said search engines, trigger the appearance of advertisements, higher rankings and links to AcademyOne's www.collegetransfer.net website.  Such conduct was performed without CollegeSource's knowledge or consent.

69.     On information and belief, AcademyOne purchased the terms "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION" from Internet search engines, as set forth above, because of the goodwill in CollegeSource's names and marks and because Internet searchers associate said names and marks with CollegeSource.

70.     On information and belief, as a result of AcademyOne's misappropriation of the goodwill of CollegeSource's "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION" name and marks, both registered and unregistered, and infringement thereof,

**FIRST AMENDED COMPLAINT**

-13-

AcademyOne has diverted Internet users that were searching for CollegeSource's goods and services to those of AcademyOne and has profited therefrom.

71.     On information and belief, CollegeSource has been damaged by AcademyOne's use, appropriation and/or infringement of CollegeSource's Digitized Information, names, and marks, including, but not limited to, the loss of business and profits.  On information and belief, the loss to CollegeSource exceeds the sum of $10,000,000.

**FIRST CAUSE OF ACTION**
(U.S. Computer Fraud And Abuse Act)
[18 U.S.C. §1030(g)]

72.     CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 71 of this Complaint as though fully set forth in this cause of action.

73.     Each of CollegeSource's Websites, and the Digitized Information thereon, are stored on computers in the State of California that are used in or affecting interstate or foreign commerce or communication.  CollegeSource's Websites have subscribers/customers in multiple states throughout the United States as well as other countries.  CollegeSource even has military bases and ships-on-the-sea as customers.  CollegeSource's computers constitute a "protected computer" within the meaning of 18 U.S.C. §1030(e)(2)(B).

74.     AcademyOne was not authorized, either implicitly or explicitly, to access CollegeSource's Digitized Information for the purpose of competing with CollegeSource or other commercial purposes, or to violate the terms of use on CollegeSource's Websites and/or digital catalogs.

75.     AcademyOne's use of the Digitized Information exceeded authorization provided to use the Digitized Information.

76.     Any authorization AcademyOne had to access the Websites and Digitized Information terminated when AcademyOne used CollegeSource's Digitized Information in an unauthorized way.

77.     CollegeSource reasonably expected that the users of its Websites and Digitized Information would abide by CollegeSource's terms of use disclosed on the Websites and

**FIRST AMENDED COMPLAINT**

digitized catalogs.

78.     AcademyOne knew, or should have known, that CollegeSource would not have granted AcademyOne access to CollegeSource's Websites and/or Digitized Information if AcademyOne would have informed CollegeSource that AcademyOne intended to use its access to CollegeSource's Websites for the purpose of competing with CollegeSource or other commercial purposes, or to violate the terms of use on CollegeSource's Websites and/or digital catalogs.

79.     Academy One knew as of the time it requested to obtain or use CollegeSource's Digitized Information and was then denied that CollegeSource would not grant AcademyOne commercial use of its Digitized Information.

80.     AcademyOne knew when CollegeSource caught AcademyOne publishing CollegeSource's Digitized Information and demanded its removal that AcademyOne had no authorization to use such information.

81.     On information and belief, AcademyOne has violated 18 U.S.C. §1030(a)(2)(C) by intentionally accessing a computer without authorization or exceeding authorized access, and thereby obtaining information from CollegeSource's computer.

82.     On information and belief, AcademyOne has violated 18 U.S.C. §1030(a)(4) by knowingly and with intent to defraud, accessing CollegeSource's computer without authorization, or exceeding authorized access, and by means of such conduct furthering the intended fraud and obtaining anything of value.

83.     On information and belief, AcademyOne knowingly and with an intent to defraud gave false information to access the Digitized Information on CollegeSource's Websites, disregarded CollegeSource's terms of use, and obtained Digitized Information from CollegeSource - which is of great value.

84.     On information and belief, AcademyOne's conduct has caused loss to CollegeSource in an amount aggregating at least $5,000.00 in a one-year period.

//

**FIRST AMENDED COMPLAINT**

85.     Pursuant to 18 U.S.C. §1030(g), CollegeSource is entitled to bring a civil action for AcademyOne's violations of 18 U.S.C. §1030.

86.     WHEREFORE, CollegeSource is entitled to and seeks:

a.      Compensatory damages in an amount to be proven at trial, but believed to be in excess of $75,000, pursuant to 18 U.S.C. §1030(g);

b.      Injunctive and other equitable relief, including, but not limited to, preliminary and permanent injunctions, forfeiture or seizure of CollegeSource's Digitized Information, and a constructive trust over any property which constitutes or is derived from CollegeSource's Digitized Information, pursuant to 18 U.S.C. §1030(g);

c.      Costs of the action; and

d.      Such other and further relief as this Court deems appropriate.

**SECOND CAUSE OF ACTION**
(California Computer Crimes)
[Cal. Pen. Code §502(e)]

87.     CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 86 of this Complaint as though fully set forth in this cause of action.

88.     Pursuant to Cal. Pen. Code §502(j), AcademyOne is deemed to have personally accessed CollegeSource's computers, computer system or computer network in the Southern District of California.

89.     AcademyOne knowingly accessed CollegeSource's Websites to collect, copy, and/or use CollegeSource's Digitized Information in a manner not authorized by CollegeSource.

90.     AcademyOne has violated Cal. Pen. Code §502(c)(1) by knowingly accessing and without permission using any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

91.     AcademyOne has violated Cal. Pen. Code §502(c)(2) by knowingly accessing and without permission taking, copying or making use of any data from a computer, computer system

FIRST AMENDED COMPLAINT

or computer network, or taking or copying any supporting documentation.

92.     AcademyOne's violations of Cal. Pen. Code §502, and the acts that constituted said violations, were knowing and willful, and were performed with oppression, fraud, and malice.

93.     Pursuant to Cal. Pen. Code §502(e), CollegeSource is entitled to bring a civil action for AcademyOne's violations of Cal. Pen. Code §502.

94.     WHEREFORE, CollegeSource is entitled to and seeks:

a.     Compensatory damages in an amount to be proven at trial, but believed to be in excess of $75,000, pursuant to Cal. Pen. Code §502(e)(1);

b.     Punitive damages in an amount determined by this Court to be sufficient to punish and make an example out of AcademyOne, pursuant to Cal. Pen. Code §502(e)(4);

c.     Injunctive and other equitable relief, including, but not limited to, preliminary and permanent injunctions, forfeiture or seizure of CollegeSource's Digitized Information, and a constructive trust over any property which constitutes or is derived from CollegeSource's Digitized Information, pursuant to Cal. Pen. Code §502(e)(1);

d.     Forfeiture of any computer, computer system, computer network, or any software or data, owned by the AcademyOne, that is used during the commission of any violation of Cal. Pen. Code §502(c) or any computer, owned by the AcademyOne, which is used as a repository for the storage of software or data illegally obtained in violation of Cal. Pen. Code §502(c).

e.     Reasonable attorney fees, pursuant to Cal. Pen. Code §502(e)(2);

f.     Costs of the action; and

g.     Such other and further relief as this Court deems appropriate.

//

//

**FIRST AMENDED COMPLAINT**

-17-

### THIRD CAUSE OF ACTION
(Breach Of Contract)

95.     CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 94 of this Complaint as though fully set forth in this cause of action.

96.     By using CollegeSource's Websites and digitized catalogs, AcademyOne agreed to the terms of use thereof.

97.     The terms of use on CollegeSource's Websites and digitized catalogs constituted a valid and enforceable contract between CollegeSource and AcademyOne.

98.     Through the conduct set forth above, AcademyOne has breached the terms of use on CollegeSource's Websites and digitized catalogs.

99.     CollegeSource has been damaged as a result of AcademyOne's breach of the terms of use on CollegeSource's Websites and digitized catalogs in an amount to be proven at trial and believed to be in excess of $75,000.

100.    WHEREFORE, CollegeSource is entitled to and seeks:

a.      Any and all damages sustained by CollegeSource in an amount to be proven at trial, but believed to be in excess of $75,000;

b.      Any and all profits of AcademyOne as a result of its acts complained of herein;

c.      The reasonable value of the Digitized Information taken by AcademyOne from CollegeSource;

d.      The expenditures saved by AcademyOne as a result of its acts complained of herein, including, but not limited to, CollegeSource's costs to collect, compile and convert its Digitized Information;

e.      Costs of the action; and

f.      Such other and further relief as this Court deems appropriate.

//

//

**FIRST AMENDED COMPLAINT**

-18-

1

**FOURTH CAUSE OF ACTION**
(Misappropriation)

2

3

101.    CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 100 of this Complaint as though fully set forth in this cause of action.

4

5

102.    CollegeSource has invested substantial time and money in the development of its Digitized Information.  CollegeSource's investment of time and money includes, but is not limited to, the digitizing of thousands of college catalogs.

6

7

103.    AcademyOne has appropriated CollegeSource's Digitized Information at little or no cost.

8

9

104.    CollegeSource has been damaged as a result of AcademyOne's appropriation of CollegeSource's Digitized Information in an amount to be proven at trial and believed to be in excess of $75,000.

10

11

12

105.    AcademyOne has benefitted as a result of its appropriation of CollegeSource's Digitized Information in an amount to be proven at trial and believed to be in excess of $75,000.

13

14

106.    WHEREFORE, CollegeSource is entitled to and seeks:

15

a.      Any and all damages sustained by CollegeSource and/or benefit retained by AcademyOne in an amount to be proven at trial, but believed to be in excess of $75,000;

16

17

18

b.      Any and all profits of AcademyOne as a result of its acts complained of herein;

19

20

c.      The reasonable value of the Digitized Information taken by AcademyOne from CollegeSource;

21

22

d.      The expenditures saved by AcademyOne as a result of its acts complained of herein, including, but not limited to, CollegeSource's costs to collect, compile and convert its Digitized Information;

23

24

25

e.      Costs of the action; and

26

f.      Such other and further relief as this Court deems appropriate.

27

28

**FIRST AMENDED COMPLAINT**

1

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

2

3

107.    CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 106 of this Complaint as though fully set forth in this cause of action.

4

5

108.    AcademyOne received benefit from CollegeSource and at CollegeSource's expense through AcademyOne's unauthorized receipt and use of CollegeSource's Digitized Information.  AcademyOne's benefit includes, *inter alia*, revenues and saved expenditures relating to the digitizing and compilation of CollegeSource's Information.

6

7

8

9

109.    Under the circumstances set forth above, it would be unjust for AcademyOne to retain the benefit bestowed upon it by CollegeSource.

10

110.    WHEREFORE, CollegeSource is entitled to and seeks:

11

12

a.    That AcademyOne make restitution for any and all benefits it unjustly received from CollegeSource;

13

14

b.    Any and all profits of AcademyOne as a result of its acts complained of herein;

15

16

c.    The reasonable value of the Digitized Information taken by AcademyOne from CollegeSource;

17

18

19

d.    The expenditures saved by AcademyOne as a result of its acts complained of herein, including, but not limited to, CollegeSource's costs to collect, compile and convert its Digitized Information;

20

e.    Costs of the action; and

21

f.    Such other and further relief as this Court deems appropriate.

22

23

## SIXTH CAUSE OF ACTION
### (Infringement of Registered Mark)
#### [15 U.S.C. §1114]

24

25

111.    CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 110 of this Complaint as though fully set forth in this cause of action.

26

//

27

28

**FIRST AMENDED COMPLAINT**

-20-

112.    AcademyOne has used CollegeSource's registered "COLLEGESOURCE" mark in commerce in connection with the sale and advertising of AcademyOne's goods and services by purchasing the term "COLLEGESOURCE" from Internet search engines, including, but not limited to, Google, as a term that, when typed into said search engines, triggers the appearance of advertisements and links to AcademyOne's www.collegetransfer.net website.

113.    AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, was without CollegeSource's knowledge or consent.

114.    AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, is likely to cause confusion, cause mistake and/or deceive.

115.    AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, is likely to cause confusion, cause mistake and/or deceive in that Internet users, initially seeking CollegeSource's website(s), may believe that AcademyOne's advertisements and/or links are links to CollegeSource's website(s) or websites sponsored by or affiliated with CollegeSource, and/or that AcademyOne's advertisements, links and/or website are sponsored by or affiliated with CollegeSource.

116.    AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, is likely to cause initial interest confusion in that it capitalizes on the goodwill in CollegeSource's mark to create an initial interest in AcademyOne's www.collegetransfer.net website, products and/or services.

117.    AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, is likely to cause initial interest confusion in that it capitalizes on the goodwill in CollegeSource's mark to lead and divert Internet users to AcademyOne's www.collegetransfer.net website, on which AcademyOne offers products and/or services, that would otherwise have proceeded to CollegeSource's website(s).

118.    Through AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, AcademyOne improperly misappropriates and benefits from CollegeSource's goodwill therein.

FIRST AMENDED COMPLAINT

-21-

119.    On information and belief, AcademyOne, through its conduct set forth above, is willfully and in bad faith attempting to exploit the good will, secondary meaning and public recognition of CollegeSource's registered "COLLEGESOURCE" mark.

120.    AcademyOne, by its acts complained of herein, has infringed and is continuing to infringe CollegeSource's rights in its registered "COLLEGESOURCE" mark.

121.    AcademyOne, by its acts complained of herein, has violated 15 U.S.C. §1114.

122.    On information and belief, AcademyOne's infringement of CollegeSource's rights in its registered "COLLEGESOURCE" mark and violation of 15 U.S.C. §1114 was deliberate, knowing, willful and in bad faith.

123.    AcademyOne's acts complained of herein have caused, and will continue to cause, harm and irreparable injury to CollegeSource and its business.

124.    CollegeSource has no adequate remedy at law because injury to its reputation and goodwill cannot be quantified, and such injury cannot be compensated by monetary amounts.

125.    Pursuant to 15 U.S.C. §1116, CollegeSource requests an injunction against AcademyOne to prevent the violation of 15 U.S.C. §1114 and directing AcademyOne to file with the Court and serve upon CollegeSource a report in writing under oath setting forth in detail the manner and form in which AcademyOne has complied with the injunction.

126.    CollegeSource is entitled to and seeks to recover all remedies available to it pursuant to 15 U.S.C §1117, including, without limitation:

            a.      AcademyOne's profits;

            b.      Any and all damages sustained by CollegeSource;

            c.      Treble damages or profits;

            d.      Costs of the action; and

            e.      Reasonable attorney fees per statute.

//

//

//

**FIRST AMENDED COMPLAINT**

## SEVENTH CAUSE OF ACTION
### (Lanham Act Unfair Competition)
[15 U.S.C. §1125(a)]

127.    CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 126 of this Complaint as though fully set forth in this cause of action.

128.    By virtue of the continuous use of the name and mark "CAREER GUIDANCE FOUNDATION" in commerce, and the goodwill, consumer recognition and secondary meaning resulting therefrom, CollegeSource has acquired a valuable and protected mark in "CAREER GUIDANCE FOUNDATION."  Such consumer recognition and secondary meaning came into existence before any of the acts of infringement of "CAREER GUIDANCE FOUNDATION" alleged herein.

129.    By virtue of the continuous use of the name and mark "COLLEGESOURCE" in commerce, and the goodwill, consumer recognition and secondary meaning resulting therefrom, CollegeSource has acquired a valuable and protected mark in "COLLEGESOURCE."  Such consumer recognition and secondary meaning came into existence before any of the acts of infringement of "COLLEGESOURCE" alleged herein.  CollegeSource's rights in and to "COLLEGESOURCE" as a result of its use in commerce, as set forth above, are in addition to its rights in its registered "COLLEGESOURCE" mark.

130.    AcademyOne has used CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks in commerce in connection with the sale and advertising of AcademyOne's goods and services by purchasing the terms (generally called AdWords) "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" from Internet search engines, including, but not limited to, Google, as terms that, when typed into said search engines, trigger the appearance of advertisements,  higher rankings  and links to AcademyOne's www.collegetransfer.net website.

131.    AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, was without CollegeSource's knowledge or consent.

**FIRST AMENDED COMPLAINT**

132.    AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, constitutes a false designation of origin, false or misleading description of fact or a false or misleading representation of fact which:

      a.    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of AcademyOne with CollegeSource, or as to the origin, sponsorship, or approval of AcademyOne's goods, services, or commercial activities by CollegeSource, and

      b.    misrepresents the nature, characteristics or qualities of AcademyOne's goods, services, or commercial activities.

133.    AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, is likely to cause confusion, cause mistake and/or deceive in that Internet users, initially seeking CollegeSource's website(s), may believe that AcademyOne's advertisements and/or links are links to CollegeSource's website(s) or websites sponsored by or affiliated with CollegeSource, and/or that AcademyOne's advertisements, links and/or website are sponsored by or affiliated with CollegeSource.

134.    AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, is likely to cause initial interest confusion in that it capitalizes on the goodwill in CollegeSource's marks to create an initial interest in AcademyOne's www.collegetransfer.net website, products and/or services.

135.    AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, is likely to cause initial interest confusion in that it capitalizes on the goodwill in CollegeSource's marks to lead and divert Internet users to AcademyOne's www.collegetransfer.net website, on which AcademyOne offers products and/or services, that would otherwise have proceeded to CollegeSource's website(s).

136.    Through AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, AcademyOne improperly misappropriates and benefits from CollegeSource's goodwill therein.

**FIRST AMENDED COMPLAINT**

-24-

137. On information and belief, AcademyOne, through its conduct set forth above, is willfully and in bad faith attempting to exploit the good will, secondary meaning and public recognition of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks.

138. AcademyOne, by its acts complained of herein, has infringed and is continuing to infringe CollegeSource's rights in its "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks.

139. AcademyOne, by its acts complained of herein, has violated 15 U.S.C. §1125(a).

140. On information and belief, AcademyOne's infringement of CollegeSource's rights in its "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, and violation of 15 U.S.C. §1125(a) was deliberate, knowing, willful and in bad faith.

141. AcademyOne's acts complained of herein have caused, and will continue to cause, harm and irreparable injury to CollegeSource and its business.

142. CollegeSource has no adequate remedy at law because injury to its reputation and goodwill cannot be quantified, and such injury cannot be compensated by monetary amounts.

143. Pursuant to 15 U.S.C. §1116, CollegeSource requests an injunction against AcademyOne to prevent the violation of 15 U.S.C. §1125(a) and directing AcademyOne to file with the Court and serve upon CollegeSource a report in writing under oath setting forth in detail the manner and form in which AcademyOne has complied with the injunction.

144. CollegeSource is entitled to and seeks to recover all remedies available to it pursuant to 15 U.S.C §1117, including, without limitation:

      a.      AcademyOne's profits;

      b.      Any and all damages sustained by CollegeSource;

      c.      Treble damages or profits;

      d.      Costs of the action; and

      e.      Reasonable attorney fees per statute.

//

**FIRST AMENDED COMPLAINT**

**EIGHTH CAUSE OF ACTION**
(Unfair Competition)
[Cal. Bus. Prof. Code §§17200 *et. seq.*]

145.   CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 144 of this Complaint as though fully set forth in this cause of action.

146.   This cause of action is brought pursuant to Cal. Bus. & Prof. Code §17200, *et seq.*

147.   AcademyOne has committed and continues to commit an unlawful, unfair or fraudulent business act or practice within the meaning of Cal. Bus. & Prof.. Code §17200.

148.   WHEREFORE, CollegeSource is entitled to and seeks:

a.   Such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by AcademyOne of any act or practice which constitutes unfair competition, pursuant to Cal. Bus. & Prof. Code §17203;

b.   Restitution to CollegeSource of any money or property, real or personal, which may have been acquired by means of AcademyOne's unfair competition, pursuant to Cal. Bus. & Prof. Code §17203;

c.   Preliminary and permanent injunctive relief;

d.   Costs of the action; and

e.   Such other and further relief as this Court deems appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, CollegeSource prays for judgment and relief on all causes of action, as more specifically detailed in each cause of action, against AcademyOne as follows:

1.   That CollegeSource recover from AcademyOne any and all damages sustained by CollegeSource, together with AcademyOne's profits, in an amount to be proven at trial and believed to be at least $75,000;

2.   That CollegeSource recover from AcademyOne treble its damages from AcademyOne's acts of infringement, in an amount to be proven at trial pursuant to 15 U.S.C. §1117;

FIRST AMENDED COMPLAINT

3.      That CollegeSource recover the expenditures saved by AcademyOne as a result of its acts complained of herein, including, but not limited to, CollegeSource's costs to collect, compile and convert its Digitized Information;

4.      That CollegeSource recover the reasonable value of the Digitized Information taken by AcademyOne from CollegeSource;

5.      For all appropriate equitable relief including preliminary and permanent injunctive relief, constructive trust, seizure and forfeiture;

6.      That CollegeSource recover compensatory damages in an amount to be proven at trial, but believed to be in excess of $75,000, pursuant to 18 U.S.C. §1030(g);

7.      For injunctive and other equitable relief, including, but not limited to, preliminary and permanent injunctions, forfeiture or seizure of CollegeSource's Digitized Information, and a constructive trust over any property which constitutes or is derived from CollegeSource's Digitized Information pursuant to 18 U.S.C. §1030(g);

8.      That CollegeSource recover compensatory damages in an amount to be proven at trial, but believed to be in excess of $75,000, pursuant to Cal. Pen. Code §502(e)(1);

9.      That CollegeSource recover punitive damages in an amount determined by the Jury to be sufficient to punish and make an example out of AcademyOne, pursuant to Cal. Pen. Code §502(e)(4);

10.     For injunctive and other equitable relief, including, but not limited to, preliminary and permanent injunctions, forfeiture or seizure of CollegeSource's Digitized Information, and a constructive trust over any property which constitutes or is derived from CollegeSource's Digitized Information pursuant to Cal. Pen. Code §502(e)(1);

11.     For forfeiture of any computer, computer system, computer network, or any software or data, owned by the AcademyOne, that is used during the commission of any violation of Cal. Pen. Code §502(c) or any computer, owned by the AcademyOne, which is used as a repository for the storage of software or data illegally obtained in violation Cal. Pen. Code §502(c);

**FIRST AMENDED COMPLAINT**

12.      That CollegeSource recover reasonable attorney fees, pursuant to Cal. Pen. Code §502(e)(2) and 15 U.S.C. §1117;

13.      For an order enjoining Academy One from the further violation of 15 U.S.C. §1114 and 15 U.S.C. §1125(a) and directing AcademyOne to file with the Court and serve upon CollegeSource a report in writing under oath setting forth in detail the manner and form in which AcademyOne has complied with the injunction, pursuant to 15 U.S.C. §1116;

14.      For an order enjoining AcademyOne from continuing to engage, use, or employ any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code;

15.      For such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by AcademyOne of any act or practice which constitutes unfair competition, pursuant to Cal. Bus. & Prof. Code §17203;

16.      For restitution to CollegeSource of any money or property, real or personal, which may have been acquired by means of AcademyOne's unfair competition, pursuant to Cal. Bus. & Prof. Code §17203;

17.      That CollegeSource recover its costs of this suit;

18.      That CollegeSource recover pre-judgment and post-judgment interest, as permitted by the Court or under statute;

19.      For a jury trial on all claims so triable;  and

20.      For such other and further relief as the Court may deem necessary or appropriate, including, but not limited to, further relief under 15 U.S.C. §1117.

Dated: June 19, 2009

Respectfully submitted by,

LAW OFFICES OF DARREN J. QUINN
DARREN J. QUINN
ALEXANDER E. PAPAEFTHIMIOU

_____s/s Alexander E. Papaefthimiou_____
Alexander E. Papaethimiou

1
               12702 Via Cortina, Suite 105
               Del Mar, CA 92014
2
               Telephone: (858) 509-9401

3
               WILLIAM F. WOODS

4

                    s/s William F. Woods
5
                    William F. Woods

6
               750 State St #310
               San Diego, CA, 92101
7
               Tel: (610) 742-5000

8
               *Attorneys for Plaintiff COLLEGESOURCE, INC.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT**

1

**DEMAND FOR A JURY TRIAL**

2

        Plaintiff COLLEGE SOURCE, INC. demands a trial by jury on all causes of action and

3

issues so triable.

4

5

Dated: June 19, 2009

                         Respectfully submitted,

6

                         LAW OFFICES OF DARREN J. QUINN
                         DARREN J. QUINN

7

                         ALEXANDER E. PAPAEFTHIMIOU

8

                           s/s Alexander E. Papaefthimiou

9

                           Alexander E. Papaethimiou

10

                         12702 Via Cortina, Suite 105
                         Del Mar, CA 92014

11

                         Telephone: (858) 509-9401

12

                         WILLIAM F. WOODS

13

                           s/s William F. Woods

14

                           William F. Woods

15

                         750 State St #310
                         San Diego, CA, 92101

16

                         Tel: (610) 742-5000

17

                         *Attorneys for Plaintiff COLLEGESOURCE, INC.*

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT**

-30-

**PROOF OF SERVICE**

I am employed in the County of San Diego, State of California.  I am over the age of 18 and am not a party to the within action; my business address is: <u>12702 Via Cortina, Suite 105, Del Mar, CA, 92014.</u>

I served the foregoing documents described as:

- **FIRST AMENDED COMPLAINT**

The following are those who are currently on the list to receive e-mail notices for this case.

**John Peter Cooley**
jpcooley@duanemorris.com,meschulte@duanemorris.com

**Karen Shichman Crawford**
kscrawford@duanemorris.com,meschulte@duanemorris.com

**Aliza R. Karetnick**
akaretnick@duancemorris.com

**David Landau**
dlandau@duanemorris.com

**Alexander E Papaefthimiou**
alex@dqlaw.com,dq@dqlaw.com

**Darren James Quinn**
dq@dqlaw.com,dquinn@quinnattorney.com

**William Frederick Woods**
bill@wfwoods.com,payback@ureach.com

I served the foregoing documents upon the interested parties in this action that are not on the list to receive email notices for this case by placing

No manual recipients.

[]     **BY REGULAR MAIL** by depositing such envelope with postage thereon fully prepaid in the United States mail at Del Mar, California.

I declare under penalty of perjury that the foregoing is true and correct under the laws of the United States.

Dated: June 19, 2009 at Del Mar, California.

/s/ Alexander Papaefthimiou
Alexander Papaefthimiou

**FIRST AMENDED COMPLAINT**

-31-