# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLEGESOURCE, INC., a California corporation,<br><br>                              Plaintiff,<br><br>     vs.<br><br>ACADEMYONE, INC., a Pennsylvania corporation,<br><br>                              Defendant. | CASE NO. 08-CV-1987 H (CAB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

On December 3, 2008, Defendant filed a motion to dismiss Plaintiff's complaint for lack of personal jurisdiction. (Doc. No. 8.) After receiving the parties' briefing, the Court heard oral argument on Defendant's motion to dismiss. The Court granted Plaintiff's motion for jurisdictional discovery and denied Defendant's motion to dismiss, granting leave to re-file after limited discovery. (Doc. No. 47.)

On July 28, 2009, Defendant filed a renewed motion to dismiss Plaintiff's First Amended Complaint for lack of personal jurisdiction. (Doc. No. 67.) On August 10, 2009, Plaintiff filed an opposition to Defendant's motion to dismiss. (Doc. No. 69.) On August 17, 2009, Defendant filed a reply in support of its renewed motion. (Doc. No. 78.) On August 21, 2009, the Court submitted Defendant's motion to dismiss. (Doc. No. 89.) The Court notes the parties' evidentiary objections and disregards evidence to the extent warranted. The Court takes judicial notice of such matters as are appropriate for judicial notice.

**Factual Background**

Plaintiff CollegeSource and Defendant AcademyOne are competitors. (FAC. ¶ 48.) Each company offers information and data services related to the college course equivalency and transcript reconciliation to facilitate transfer of students from one college to another. (Id.; Moldoff Decl. ISO Mot. to Dismiss ["Moldoff Decl."] ¶ 4.) CollegeSource has filed a First Amended Complaint against AcademyOne alleging eight causes of action for: (1) violation of the federal computer fraud and abuse act, 18 U.S.C. § 1030(g); (2) California computer crimes under Cal. Pen. Code § 502(e); (3) breach of contract; (4) misappropriation; (5) unjust enrichment; (6) trademark infringement; (7) Lanham Act unfair competition; and (8) violation of California unfair competition law under Cal. Bus. & Prof. Code § 17200 et seq. Defendant moves to dismiss the complaint on the grounds that this Court lacks personal jurisdiction over AcademyOne. The Complaint alleges that in 2005, Defendant AcademyOne approached Plaintiff CollegeSource in an attempt to acquire CollegeSource's digitized college course catalogs. (FAC ¶ 51-52.) After Plaintiff refused, agents of Defendant allegedly posed as legitimate users to gain access to CollegeSource's information, copied that information, and posted it on its own website. (Compl. ¶¶ 52-59.)

Defendant AcademyOne is a Pennsylvania corporation operating in Pennsylvania. (Moldoff Decl. ¶ 1.) Defendant has no officers, employees, offices, warehouses, or real property in California. (Moldoff Decl. ¶ 2.) Defendant holds no bank accounts in California and does not advertise in California. (Id.)

AcademyOne operates a website accessible to any internet user. Plaintiff has submitted a report showing that Defendant's website has received approximately 2.3 million hits (file download requests) from approximately 26,000 California visitors. (Clark Decl. in Opp. to Mot. to Dismiss ["Clark Decl."] ¶ 6, Ex. B.) Defendant argues that these numbers are misleading, since these hits may come from automatic programs tied to search engines based in California. (Landau Decl. ISO Mot. to Dismiss ["Landau Decl."] Ex. B at 6.) Additionally, Defendant argues that a site visit from a California IP address may not indicate a visit from a California user, since the IP address may come from an internet service provider. (Landau

Decl. Ex. A.) Defendant further explains that consumers must purchase a subscription to view and take advantage of its advanced systems. (Moldoff Decl. ¶ 5.) AcademyOne's subscribers are "typically academic institutions and state higher education agencies." (Id.) Defendant has no subscribers located in California and makes no profit from non-subscribers. (Id.) Though AcademyOne's website contains course catalog information for several California universities, Defendant avers that it obtained this information without assistance from any California school. (Moldoff Decl. ¶ 13.)

In 2005 and 2006, four AcademyOne employees registered for demo memberships with Plaintiff CollegeSource in order to "assess potential business opportunities." (Moldoff Decl. ¶ 11; Macario Decl. in Opp. to Mot. to Dismiss ["Macario Decl."] ¶¶ 18-19.) These demo subscriptions allowed users to view CollegeSource material and download no more than three course catalog files. (Moldoff Decl. ¶ 11.) Defendant denies copying any material from Plaintiff's website. (Id.) During that same time period, AcademyOne contacted CollegeSource to explore the possibility of cooperation, but no business materialized from these conversations. (Karetnick Decl. ISO Mot. to Dismiss ["Karetnick Decl.] Ex. E.)

Defendant explains that it collected information for its database by hiring an independent contractor in China to visit the websites of thousands of colleges. (Moldoff Decl. ¶ 6, 7.) Defendant states that AcademyOne never saw Plaintiff's terms of use statement allegedly present on approximately 680 of these documents. (Id.; Macario Decl. ¶¶ 4-7.) Though CollegeSource's main page displays its terms of use, Defendant states that none of the file links accessed by Defendant directed it to a CollegeSource website. (FAC ¶ 39; Moldoff Decl. ¶¶ 6, 8.) AcademyOne avers that it had no knowledge that these documents originated with CollegeSource. (Moldoff Decl. ¶ 8.) Within hours of receiving a cease and desist letter from Plaintiff, AcademyOne removed all links to the allegedly misappropriated files. (Id. ¶ 9.)

Plaintiff also alleges that Defendant infringed its trademarks "Collegesource" and "Career Guidance Foundation" by purchasing these terms from internet search engines so that searches for these terms yield advertisements for Defendant's websites. (FAC ¶ 68.)

Defendant states that it did not select Plaintiff's marks as "Adwords." (Moldoff Decl. ¶ 20.) Instead, third party search engine providers used software to derive terms relating to Defendant's business. (Id.) Defendant owns a total of more than 500 "Adwords." (Supp. Quinn Decl. in Opp. to Mot. to Dismiss ["Supp. Quinn Decl."] Ex. Q.) Some of these terms incorporate the word "California" or the abbreviation "CA." (Id.)

In August 2008, AcademyOne's CEO visited California to attend a policy conference of state higher education executives and sponsor a speaker on energy conservation. (Moldoff Decl. ¶ 14.) AcademyOne states that no actual buyers of its products were in attendance at the conference and that no business resulted from the conference. (Id.) Plaintiff argues that the state entities at the convention were potential customers of CollegeSource and AcademyOne. (Crone Decl. in Opp. to Mot. to Dismiss ¶ 38.) Plaintiff states that AcademyOne ran a booth at the convention, distributed marketing materials at the opening event, and purchased an advertisement in the conference agenda booklet. (Id. ¶¶ 38, 39, 41, Ex. C.) The organization behind the conference holds several such conferences per year and AcademyOne has attended several in various locations across the country. (Moldoff Decl. ¶ 14.)

## Discussion

**I.    Motion to Dismiss for Lack of Personal Jurisdiction – Legal Standard**

Federal Rule of Civil Procedure 12 allows a defendant to file a motion to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The party seeking to invoke the court's jurisdiction "has the burden of establishing that jurisdiction exists." Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). To survive a motion to dismiss, a plaintiff must submit materials that "demonstrate facts which support a finding of jurisdiction." Id. "Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

"When no federal statute specifically defines the extent of personal jurisdiction," district courts will "look to the law of the state where [the court] sits." Menken v. Emm, 503 F.3d 1050, 1056 (9th Cir. 2007). California law provides that a court "may exercise jurisdiction on

1  any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ.
2  Proc. Code § 410.10.  Consistent with Constitutional due process, a court may exercise
3  personal jurisdiction over a defendant only if he has "certain minimum contacts" with the
4  forum state "such that the maintenance of the suit does not offend traditional notions of fair
5  play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal
6  quotes omitted).

7  There are two forms of personal jurisdiction – general jurisdiction and specific
8  jurisdiction. Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008).  General jurisdiction
9  turns on the defendant's contacts with the forum, while specific jurisdiction is based on the
10 relationship between the defendant's forum contacts and the plaintiff's claims. Menken, 503
11 F.3d at 1056-57.  The Court considers each type in turn.

12 **II.   General Jurisdiction**

13 "For general jurisdiction to exist over a nonresident defendant," the defendant must
14 engage in "continuous and systematic general business contacts that approximate physical
15 presence in the forum state." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801
16 (9th Cir. 2004).  "Longevity, continuity, volume, economic impact, physical presence, and
17 integration into the state's regulatory or economic markets are among the indicia of such a
18 presence." Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1172 (9th Cir. 2006).
19 "Factors to be taken into consideration are whether the defendant makes sales, solicits or
20 engages in business in the state, serves the state's markets, designates an agent for service of
21 process, holds a license, or is incorporated there." Bancroft & Masters, Inc. v. Augusta Nat'l
22 Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).  "This is an exacting standard, as it should be,
23 because a finding of general jurisdiction permits a defendant to be haled into court in the forum
24 state to answer for any of its activities anywhere in the world." Id.

25 Plaintiff argues for general jurisdiction over AcademyOne based on its website, which
26 is accessible to any internet user. Plaintiff relies on Cybersell, Inc. v. Cybersell, Inc., 130 F.3d
27 414 (9th Cir. 2005), for the proposition that a sufficiently commercial website may confer
28 personal jurisdiction.  Plaintiff stresses that Defendant's website has received approximately

1  2.3 million hits from approximately 26,000 California visitors. (Clark Decl ¶ 6, Ex. B.)
2  Relying on those figures, Plaintiff argues that Defendant is engaging in commercial activity
3  in California. However, <u>Cybersell</u> deals with specific jurisdiction, not general jurisdiction.
4  Moreover, to the extent <u>Cybersell</u> applies, Defendant has submitted evidence suggesting that
5  Plaintiff's numbers may be misleading because they do not account for automated traffic from
6  search engines and webcrawlers based in California. (Landau Decl. Ex. B at 6.) In <u>Cybersell</u>,
7  the Ninth Circuit pointed out that courts have given weight to evidence that internet activity
8  "was directed at, or bore fruit in, the forum state." 130 F.3d at 419. Here, Defendant has
9  sworn that its universally available website has not attracted paying customers in California.
10 (Moldoff Decl. ¶ 5.) Plaintiff has failed to produce affidavits or evidence that directly
11 contradict this statement.

12   Pursuant to the Court's order granting limited discovery, Plaintiff has obtained
13 Defendant's registered user list, which indicates that, out of approximately 7000 registered
14 users, approximately 300 are in California. (Karetnick Decl. Ex. F.; Supp. Quinn Decl. ¶ 6,
15 Ex. S.) Defendant stresses that it makes no money from these registered users and has no
16 paying customers in California. (Moldoff Decl. ¶ 5.) Plaintiff has not contradicted this
17 affidavit testimony with evidence. Plaintiff argues that Defendant's website is sufficiently
18 interactive – even for unregistered visitors – to render jurisdiction proper. However, Plaintiff
19 has cited no controlling authority supporting this argument. Defendant has no officers,
20 employees, offices, warehouses, real property, or bank accounts in California. (Moldoff Decl.
21 ¶ 2.) The registered user lists shows that Defendant does have some contact with California,
22 but there is insufficient evidence that Defendant "makes sales, solicits or engages in business
23 in the state, serves the state's markets, designates an agent for service of process, holds a
24 license, or is incorporated there." <u>Bancroft & Masters, Inc. v. Augusta Nat'l Inc.</u>, 223 F.3d
25 1082, 1086 (9th Cir. 2000). Even if Defendant "engag[ed] in commerce" with California
26 residents, this activity "is not in and of itself the kind of activity that approximates physical
27 presence within the state's borders." <u>Bancroft & Masters, Inc. v. Augusta Nat'l Inc.</u>, 223 F.3d
28 1082, 1086 (9th Cir. 2000).

Similarly, Defendant's telephone phone records during the relevant period show that, from August 2006 through March 2009, Defendant placed thousands of long distance calls, a relatively small number of which were to California numbers. Plaintiff points out that, over these years, Defendant placed 35 calls to California colleges, 9 calls to the Central Valley High Education Consortium, 8 calls to California search engines Google and Yahoo, 6 calls to a California radio station, and isolated calls to a California newspaper, hotel, and educational consulting organizations. (McWilliams Decl. in Opp. to Mot. to Dismiss ["McWilliams Decl."] ¶¶ 4-11.) These calls do not constitute continuous and systematic contact, however. There is no evidence that these conducts constituted "doing business in California" as opposed to merely "doing business with California." Bancroft, 223 F.3d at 1086. The latter does not support general jurisdiction. Id.; see also Helicopteros Nacionales de Colombia, S.A. v. Hall, 446 U.S. 408, 418 (1984) (finding no general jurisdiction in Texas over helicopter transportation company that purchased 80 percent of its helicopters, spare parts, and accessories from Texas sources over a four year period).

In sum, the evidence before the Court does not sufficiently show that Defendant has engaged in "continuous and systematic general business contacts that approximate physical presence in the forum state." Schwarzenegger, 374 F.3d at 801. Defendant's contacts with California have not achieved the necessary "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." Tuazon, 433 F.3d at 1172. Accordingly, the Court concludes that Plaintiff has failed to demonstrate facts showing that general jurisdiction over AcademyOne is consistent with due process.

**III.    Specific Jurisdiction**

To determine whether the Court may exercise specific jurisdiction based on the relationship between Plaintiff's claims and the forum, the Court applies the three-prong test promulgated by the Ninth Circuit. For specific jurisdiction to be proper: "(1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and

protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice." Schwarzenegger, 374 F.3d at 801-02. If any of these requirements is not satisfied, jurisdiction in the forum violates the defendant's due process rights. Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).

When a plaintiff's claims involve breach of contract, the first prong of the specific jurisdiction test requires that the defendant "must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." Roth v. Garcia Marquez, 942 F.2d 617, 621 (9th Cir. 1991). Through this conduct, the defendant must invoke "the benefits and protections of [the forum state's] laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Here, Plaintiff argues for specific jurisdiction based on California visits to Defendant's website. However, absent any evidence that these visits resulted in the transaction of business, Defendant's website does not confer specific jurisdiction. In Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997), the Ninth Circuit considered an argument for specific jurisdiction based on the plaintiff's operation of a website. The Cybersell court found no personal jurisdiction based partly on the fact that the defendant conducted no commercial activity over the internet in the forum state and did not deliberately direct its merchandising efforts toward residents of the forum state. Id. at 419. Additionally, there was no evidence that any part of the defendant's business was sought or achieved in the forum state. Id. The court pointed out that the defendant made no sales in the forum state, earned no income from the forum state, and no money changed hands on the internet from or through the forum state. Id.

Similarly, in this case, Plaintiff has produced no evidence of any commercial transactions between Defendant and a resident of California. Instead, Defendant swears that it has no subscribers in California and makes no profit from non-subscribers. (Moldoff Decl. ¶¶ 5.) Because AcademyOne does not engage in commercial transactions with residents of California, the Court concludes that the operation of its website does not constitute purposeful availment.

Plaintiff further argues that a valid contract existed between CollegeSource and AcademyOne based on CollegeSource's terms of use posted on its website and within its electronic files. However, even assuming the existence of such a contract, Plaintiff has failed to show purposeful availment. "A contract alone does not automatically establish the requisite minimum contacts necessary for the exercise of personal jurisdiction. Gray & Co. v. Firstenberg Mach. Co., Inc., 913 F.2d 758, 760 (9th Cir. 1990). Instead, courts must assess "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Id. Here, the purported contract between the parties would require only that Defendant not misappropriate Plaintiff's information. The agreement would not be specific to California or any locality. Accordingly, such a contract would not show purposeful availment and could not confer jurisdiction over AcademyOne.

Several of Plaintiff's causes of action sound in tort. When dealing with tort claims, courts look for the defendant's "purposeful direction of a foreign act having an effect in the forum state." Roth, 942 F.2d at 621. For this inquiry, courts use the "effects test" set forth in Calder v. Jones, 465 U.S. 783 (1984). This test imposes three requirements: "the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007). Here, Plaintiff alleges intentional misappropriation of information, but provides no evidence that Defendant knew its activity was directed toward California. Defendant explains that it collected information for its database by hiring a contractor to visit the websites of thousands of colleges. (Moldoff Decl. ¶ 6-8.) The college's course descriptions were downloaded without being opened, such that AcademyOne never saw Plaintiff's terms of use statement allegedly present on approximately 680 of these documents. (Id.; Macario Decl. ¶¶ 4-7.) Though CollegeSource's main page displays its terms of use, Defendant states that none of the file links accessed by Defendant directed it to CollegeSource's website. (FAC. ¶ 39; Moldoff Decl. ¶ 8.) AcademyOne avers that it had no knowledge that these documents originated with CollegeSource. (Moldoff Decl. ¶ 8.)

/ / /

1    Because Plaintiff has produced no evidence that AcademyOne knew its actions involved
2 California, Plaintiff has failed to show that Defendant's acts were "expressly aimed at the
3 forum state" and cause harm that the defendant knew was "likely to be suffered in the forum
4 state." Menken, 503 F.3d at 1058.

5    Plaintiff also seeks to establish specific jurisdiction based on Defendant's accessing
6 Plaintiff's website in 2005 and Defendant's visit to San Diego in 2008. Though these acts may
7 satisfy the purposeful direction prong of the three part test, they are insufficiently related to
8 Plaintiff's claims to confer specific jurisdiction. To satisfy this second prong, the Ninth Circuit
9 requires a plaintiff to show that he would not have suffered an injury "but for" the defendant's
10 forum-related conduct. Menken, 503 F.3d at 1058. Here, the demo subscriptions obtained by
11 Defendant in 2005 allowed users to view CollegeSource material and download no more than
12 three course catalog files. (Moldoff Decl. ¶ 11; Macario Decl. in Opp. to Mot. to Dismiss
13 ["Macario Decl."] ¶ 19.) According to Defendant's uncontroverted declarations, it could not
14 have obtained 680 files from Plaintiff's website in this manner. Accordingly, Plaintiff's claim
15 would still exist in the absence of Defendant's use of these trial memberships. Defendant's
16 California visit in August 2008 occurred long after it removed any links to Plaintiff's files.
17 (Moldoff Decl. ¶ 9.) Therefore, Plaintiff's cause of action would still exist were it not for this
18 trip. Menken, 503 F.3d at 1058.

19    Finally, Plaintiff argues for personal jurisdiction on the grounds that Defendant
20 purchased two of Plaintiff's trademarks from internet search engines, so that those engines
21 would display Defendant's advertisements when Plaintiff's word marks were searched.
22 However, the Ninth Circuit has held in a similar context that "simply registering someone
23 else's trademark as a domain name and posting a web site on the Internet is not sufficient to
24 subject a party domiciled in one state to jurisdiction in another." Panavision Int'l, L.P. v.
25 Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998). There must be "something more to
26 demonstrate that the defendant directed his activity toward the forum state." Id. In Panavision,
27 the court found that requirement was satisfied because the defendant engaged in a scheme to
28 extort a California company and knew the plaintiff would suffer harm in California. Id. Here,

1  there is no evidence of similar intent or knowledge. Defendant's uncontroverted affidavit
2  avers that its Adwords were selected by the search engines and were purchased before
3  Defendant knew Plaintiff was located in California. (Moldoff Decl. ¶ 20.) Accordingly, even
4  if Defendant intentionally infringed Plaintiff's marks, there is no showing that act was
5  "expressly aimed at the forum state" or that it caused "harm that the defendant knows is likely
6  to be suffered in the forum state." <u>Menken</u>, 503 F.3d at 1058. As a result, the Court does not
7  have specific jurisdiction over Defendant in connection with Plaintiff's Lanham Act claims.
8       The Court concludes that Plaintiff has not shown evidence of any activity by Defendant
9  that is purposefully directed at California and sufficiently related to Plaintiff's claims.
10 Accordingly, the Court concludes that specific jurisdiction does not exist in this case.

**Conclusion**

12      Accordingly, the Court grants Defendant's motion and dismisses Plaintiff's complaint
13 for lack of personal jurisdiction.
14 IT IS SO ORDERED.
15 DATED: August 24, 2009

                                                                _____
                                                                 MARILYN L. HUFF, District Judge
                                                                 UNITED STATES DISTRICT COURT