Darren J. Quinn (149679)
Alexander E. Papaefthimiou (236930)
LAW OFFICES OF DARREN J. QUINN
12702 Via Cortina, Suite 105
Del Mar, CA 92014
Tel: (858) 509-9401

William F. Woods (87189)
750 State St #310
San Diego, CA, 92101
Tel: (610) 742-5000

*Attorneys for Plaintiff COLLEGESOURCE, INC.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLEGESOURCE, INC., a California corporation,<br><br>        Plaintiff,<br><br>v.<br><br>ACADEMYONE, INC., a Pennsylvania corporation,<br><br>        Defendant. | CASE NO. **3:08-cv-01987-H-CAB**<br><br>**SECOND AMENDED COMPLAINT** |

1.     Violation of U.S. Computer Fraud and Abuse Act [18 U.S.C. §1030(g)];

2.     Violation of California Computer Crimes Act [Cal. Pen. Code §502(e)];

3.     Breach of Contract;

4.     Misappropriation;

5.     Unjust Enrichment;

6.     Trademark Infringement under U.S. Lanham Act [15 U.S.C. §1114];

7.     Unfair Competition under U.S. Lanham Act [15 U.S.C. §1125(a)]

8.     False Advertising under U.S. Lanham Act [15 U.S.C. §1125(a)]

9.     Declaration of Trademark Invalidity [28 U.S.C. §2201; 15 U.S.C. §§1064, 1119]

10.     California Statutory Unfair Competition [Cal. Bus. Prof. Code §§17200 *et. seq.*]

**JURY TRIAL DEMANDED**

Plaintiff COLLEGESOURCE, INC., a California corporation, by way of complaint against defendant ACADEMYONE, INC., a Pennsylvania corporation, alleges as follows:

### JURISDICTION AND VENUE

1.      This Complaint arises under the United States Computer Fraud and Abuse Act (18 U.S.C. §1030), the trademark, unfair competition and false advertising laws of the United States (15 U.S.C. §1051, *et seq*), the declaratory judgment laws of the United States (28 U.S.C. §2201), the penal code of the State of California (Cal. Pen. Code §502), the unfair competition laws of the State of California (Cal. Bus. & Prof. Code §§17200, *et seq*), the contract law of the State of California, and the common law of the State of California.

2.      This Court has federal question jurisdiction over the first (18 U.S.C. §1030) and ninth (28 U.S.C. §2201) causes of action herein pursuant to 28 U.S.C. §1331.  This Court has federal question jurisdiction over the sixth (15 U.S.C. §1114), seventh (15 U.S.C. §1125(a)), eighth (15 U.S.C. §1125(a)), and ninth (15 U.S.C. §§1064 and 1119) causes of action herein pursuant to 15 U.S.C. §1121.  This Court has supplemental jurisdiction over the remaining causes of action herein pursuant to 28 U.S.C. §1367(a).  This Court has diversity jurisdiction over all causes of action herein pursuant to 28 U.S.C. §1332(a)(1).  The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

3.      This Court has personal jurisdiction over defendant and venue is proper in this district. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 99 U.S.P.Q.2D (BNA) 1672 (9th Cir. 2011) (finding that this Court has personal jurisdiction over defendant in this action).

### THE PARTIES

4.      Plaintiff COLLEGESOURCE, INC. (**"CollegeSource"**) is a California corporation with principal place of business in San Diego, California.  CollegeSource is successor in interest to the CAREER GUIDANCE FOUNDATION, a Delaware corporation (**"CGF"**), which was founded in 1971.  CollegeSource provides the public with information and data services related to college and university catalogs, curriculums, course descriptions, course equivalencies, course transferability, and college transfers.

5.      Defendant ACADEMYONE, INC. (**"AcademyOne"**) is a Pennsylvania corporation with its principal place of business at 601 Willowbrook Lane, West Chester, Pennsylvania 19382.  AcademyOne is a junior competitor of CollegeSource.

**BACKGROUND**

**Career Guidance Foundation & CollegeSource, Inc.**

6.      CGF was founded in 1971 to support career guidance and planning in the educational system by providing a complete collection of college catalogs in the best dissemination media then available.  CGF operated as an IRC §501(c)(3) non-profit organization, and generally did not charge its clients anything or only charged them enough to cover its expenses.  Funding for CGF came from Mr. Harry G. Cooper (**"Cooper"**).  Over its thirty-three (33) year existence, CGF's shortfall funding came solely from Cooper or loans guaranteed by Cooper.

7.      Before CGF was founded, libraries and admissions offices were heavily burdened by the need to keep thousands of paper college catalogs in order to provide information to matriculating college students, determine transfer equivalencies, and provide admissions and transfer advice.  Paper catalogs were required for each institution and each year in which potential transfer students might have taken classes.  A typical year's worth of paper catalogs would fill a bookshelf seven (7) feet tall and 23 feet long.  Most universities maintained 15 to 25 years' worth of catalogs.

8.      CGF revolutionized the college catalog, course information and transfer articulation industries by making information and data available on microfiche that could be stored in far less physical space.  On microfiche, a library could store one (1) year's worth of catalogs in a shoe-box.

9.      Considerable work was required to convert a catalog from paper format into microfiche.  First, the catalog had to be acquired from the educational institution with permission to make reproductions.  Then, each page of the catalog had to be precisely cut out with a razor.  Each catalog page was then positioned for microfiching along with four hundred ninety-four

(494) other pages, to make four hundred ninety-five (495) pages per fiche.  Next, each fiche was made into a master copy.  The master copy was then duplicated.

10.     It is estimated that CGF saved the educational community over $40 million per year in storage and acquisition costs.

**CollegeSource's Digitized Information**

11.     With the advance in computer technology in the 1990's, CGF began digitizing catalogs and course information.  Digitized catalogs and information did not require nearly as much physical storage space as microfiche, let alone paper.  Electronically stored information also had the potential advantage of allowing word searches, copying and pasting - a very helpful feature in light of the size of some of the catalogs.  A year's worth of college catalogs could now fit on six (6) compact discs.

12.     In the early 1990's, colleges and most publishers were still publishing  in the traditional way, printed galley proofs.  Page-setting software, such as Quark Express, Pagemaker and ProPage, was years off.  Adobe Reader even farther away.

13.     Digitizing printed catalogs and course information presented additional hurdles that microfiching did not.  While razoring the individual pages from each catalog was still required, each page had to be converted into a digital format that allowed a computer to read the individual letters and words on the page.  This process is known as Optical Character Recognition (**"OCR"**).  CGF devoted significant research and development costs working with software companies, such as Microsoft, Adobe and OmniPage, to develop more efficient OCR techniques.

14.     OCR'd documents are useless without a way to "view" them, just as Internet documents are a meaningless stream of characters (HTML Language) without a "viewer," such as Internet Explorer or Netscape.  CGF wrote the specifications for Microsoft's very first "viewer" of OCR'd documents, which was called Multi-Media Viewer.  Eventually, Adobe's "Portable Document Format" (.PDF) became the dominant format.

15.     Trivial acts of character recognition to the human eye can frustrate even the most

sophisticated scanner and can make the OCR process difficult, error prone and time consuming. For example, a scanner may misread the type and size of font, confuse characters (such as "g" with "9," "l" with "1," and "c" with "e"), read false highlights from reflective paper, read information from the opposite side of overly transparent paper, and erroneously interpret stray marks or smudges as characters or parts of characters.

16.     Despite the advent of more efficient OCR techniques, quality control on CGF's digitized catalogs and course information was crucial.  Even a one-percent (1%) error rate would result in ten (10) errors and unsearchable words on a one-thousand (1,000) character page, and thousands of unsearchable words per catalog.

17.     Plaintiff's targeted error rate after detailed quality control is 0.005%.  Thus, despite plaintiff's efforts, random errors, or "scanos," remain.

18.     The vast majority of CollegeSource's  digitized catalogs and course information are the result of scanning and the OCR process.

19.     While current whole catalogs are valuable, older "legacy" catalogs are valuable as well, due to the need to determine equivalencies for students that are seeking to apply credits from older course-work.  For example, a student returning from years of absence (such a veteran returning from deployment) may seek to apply his or her prior course-work from one institution towards a degree credit  at another institution.

20.     Recently, some colleges have started to provide their catalogs and course descriptions in digital form. Nevertheless, in many cases, CollegeSource is required to convert all files from their native format to Adobe PDF format.  CollegeSource also must decide whether or not to include any pictures, replace them with blank boxes or degrade the pictures (for optimal downloading speed). CollegeSource also bookmarks/links the catalogs for better look-up efficiency in its final product.

21.     As universities and the general public became more familiar with digital searching on the Internet, college administrators and registrars began to request digitized sub-catalogs, such as course descriptions (and their related data) only.  Administrators desired digitized sub-catalogs

to assist them with transferring course credits, which is known as "course articulation." Such systems were well documented in the literature, though not yet computerized (See, *Improving Articulation and Transfer Relationships (new directions for community colleges )* by Frederick C. Kintzer (Paperback - Sept. 1982)). In 2004, CollegeSource began development of a digitized course articulation system.

22. Because of its previous time consuming and expensive efforts in creating and compiling the Digitized Information, CollegeSource was able to respond with alacrity to the emerging demand for an online database of course information only (name, credit hours, description, *etc.*). CollegeSource called its nacent digitized course articulation system the "Transfer Evaluation Service," or **"TES."**

23. Because of its previous time consuming and expensive efforts in creating a collection of digitized catalogs, CollegeSource was able to "cut and paste" course descriptions from its existing whole digital catalog database into its new TES database. Nevertheless, as with moving its collection of digitized catalogs from data CDs to the Internet, CollegeSource expended significant time and money to move information (including course descriptions, credits, name, prerequisites, etc.) in its collection of tens of thousands of digitized college catalogs into millions of records in its new TES database.

24. CollegeSource also developed software to allow an evaluator to store a given course equivalency in the TES database. For example, an administrator could store "English 101" at the University of Michigan in 2001 as equivalent to "English 150" at the University of Tennissee in 2009. This capacity is referred to as "Equivalency," "Course Articulation" or "Transcript Reconciliation." It is particularly useful for state colleges being fed by county community colleges.

25. CollegeSource announced and delivered TES at the April 2006 AACRAO (American Association of College Registrars and Admissions Officers) conference is San Diego, California. AcademyOne introduced an arguably comparable product, which AcademyOne calls its "CEMS" (Course Equivalency Management System), over one year later, in June of 2007.

26.     Prior to CollegeSource's creation of its TES database, transfer administrators were frequently forced to keep their own private notes regarding credits and equivalencies that had been given to courses.  After TES, transfer administrators were able to see the credits other administrators had given to courses.

27.     CollegeSource's current products incorporating the Digitized Information can be categorized as follows: 1) digitized individual whole college catalogs distributed online, free for personal use, to students, parents, counselors and teachers; 2) a collection of digitized whole college catalogs from all universities distributed online, at a minimal fee, to libraries and similar entities for personal use; and 3) a collection of individual course descriptions (course number, credits, etc.) and their related data and equivalencies, dating back 16 years, distributed online, at a minimal fee, to registrars, admissions, and transfer personnel.

28.     When this action was filed in October, 2008, information regarding over 3,000 institutions, including over 44,000 catalogs and over 37,000,000 course descriptions was available on CollegeSource's Websites.  As of October, 2011, CollegeSource has accumulated over 61,000 digital whole catalogs, 45,200,000 digital course records (including course descriptions, credits, names and prerequisites), course equivalencies and data (the **"Digitized Information"**).  The Digitized Information includes, but is not limited to, CollegeSource's digitized *whole* catalogs, the digitized course descriptions therefrom, and the course data (including, but not limited to, prerequisites and credits).

29.     CollegeSource's comprehensive database of Digitized Information has significant commercial value to businesses in the college transfer and information industries.  The Digitized Information is the result of a substantial investment of both time and money by CollegeSource and its predecessor.  The investment of time and resources by CollegeSource and its predecessor to collect, convert, digitize and enhance the Digitized Information from just 1995 to 2010 is estimated to be in excess of $30,000,000.

**CollegeSource's Terms of Use**

30.     CollegeSource makes its Digitized Information available to authorized users

online at www.CollegeSource.com, www.CollegeSource.org, and TES.CollegeSource.org (the **"Websites"**).

31.    Each of CollegeSource's Websites contain terms of use in conspicuous locations, such that a visitor to the Websites is on notice of said terms and that the authorization to view and use CollegeSource's Digitized Information is restricted.  Such restrictions on the authorization to view and use the Digitized Information include one or more of the following:

This means you may NOT:
*      distribute digital catalog files to others,
*      "mirror" or include digital catalog files on an Internet (or Intranet) server,
*      link to CollegeSource digital catalog files from your website, or
*      modify or re-use digital catalog files without the express written consent of CollegeSource, Inc. and the appropriate school.

You may:
*      print copies of the information for your own personal use,
*      store the files on your own computer for personal use only, or
*      reference non PDF documents on this server from your own documents.

CollegeSource, Inc. reserves the right to revoke such authorization at any time, and any such use shall be discontinued immediately upon written notice from CollegeSource, Inc.

* * *

LIMITATIONS ON USE.

a. Only one individual may access a Service at the same time using the same user name or password, unless CollegeSource, Inc. agrees otherwise.

b. The text, graphics, images, video, design, course description data, PDF college catalogs, information, organization, compilation, look and feel, advertising and all other protectable intellectual property, and all improvements, suggestions, and derivations thereto and thereof (collectively, the "Content") available through the Services is CollegeSource, Inc.'s property and is protected by copyright and other intellectual property laws.   Unless you have CollegeSource, Inc.'s written consent, you may not sell, publish, broadcast, distribute, retransmit the information obtained through any Service, or otherwise provide access to the Content received through the Services to anyone, including, if applicable, your fellow students or employees, with the following two exceptions:

(i) You may distribute course description data from a Service in non-electronic form to a few individuals for your own personal, non-commercial use, without charge, provided you include all copyright and other proprietary rights notices in the same form in which the notices appear in the Service, original source attribution, and the phrase "Used with permission from CollegeSource, Inc."

(ii) You may use CollegeSource, Inc.'s "E-mail" service to e-mail

course description data from a Service to a few individuals for your own personal, non-commercial use, without charge. You are not permitted to use this service for the purpose of regularly providing other users with access to content from a Service.

c. You agree not to rearrange or modify the Content. You agree not to create abstracts from, scrape or display data from the Content for use on another web site or service. You agree not to post any of the Content from the Services to weblogs, newsgroups, mail lists or electronic bulletin boards, without CollegeSource, Inc.'s written consent. To request consent for this and other matters, please contact CollegeSource Customer Service.

d. CollegeSource, Inc has expended considerable time, effort, money and expertise to compile its data. CollegeSource, Inc. has implemented suitable precautions to detect unauthorized use of catalogs, course descriptions, lists etc. including seeding data to detect unlawful duplication, sale and re-use.

e. You agree not to use the Services for any unlawful or unauthorized purpose. CollegeSource, Inc. reserves the right to terminate or restrict your access to a Service if, in its opinion, your use of the Service does or may violate any laws, regulations or rulings, infringe upon another person's rights or violate the terms of this Agreement. Also, CollegeSource, Inc. may refuse to grant you a user name that impersonates someone else, is protected by trademark or other proprietary right law, or is vulgar or otherwise offensive.

32.    Abobe's embedded security code used by CollegeSource forces each of CollegeSource's digitized catalogs to be opened to CollegeSource's "splash page" (page 1).  The "splash page" of each digitized catalog identifies the catalog as coming from CollegeSource.

33.    CollegeSource's digitized catalogs also contain prominent terms of use, which occupy the full second page of each catalog, such that users of the digitized catalogs are on notice of said terms and are aware that any use of the digitized catalogs are subject to restrictions.  Such restrictions on the authorization to view and use the digitized catalogs are substantially similar to the following:

This means you may NOT:
*      distribute digital catalog files to others,
*      "mirror" or include digital catalog files on an Internet (or Intranet) server,
*      modify or re-use digital catalog files without the express written consent of CollegeSource ® and Career Guidance Foundation  and the appropriate school.

You may:
*      print copies of the information for your own personal use,
*      store the files on your own computer for personal use only, or
*      reference this material from your own documents.

CollegeSource ® and Career Guidance Foundation  reserves the right to revoke

such authorization at any time, and any such use shall be discontinued immediately upon written notice from CollegeSource ® and Career Guidance Foundation.

**AcademyOne Links To CollegeSource's Information On Its Competing Website**

34.     Defendant AcademyOne is a 35-year junior competitor of CollegeSource in the college transfer and information industry.  Like CollegeSource before it, AcademyOne offers information and data services on the Internet related to equivalencies, course articulations, transcript reconciliations and college transfer.

35.     When AcademyOne was just getting started in 2005 and 2006, AcademyOne's website (www.AcademyOne.com) linked to CollegeSource's www.CollegeSource.org website without authorization from CollegeSource.

36.     AcademyOne's website stated "Looking to Transfer?  Checkout these schools . . .read more."  The "read more" link pointed to information on CollegeSource's www.CollegeSource.org website without CollegeSource's authorization.

37.     AcademyOne's website also stated "32,000,000 course catalogs and counting . . .read more."  The "read more" link pointed to information on CollegeSource's www.CollegeSource.org website without CollegeSource's authorization.

38.     AcademyOne's website also stated "Did You Know . . .32,000,000 PDF files store course information around the web"  The "32,000,000 PDF files store course information around the web" link pointed to information on CollegeSource's www.CollegeSource.org website without CollegeSource's authorization.

39.     CollegeSource demanded that AcademyOne stop linking to information on its Websites.

**AcademyOne Attempts to License CollegeSource's Digitized Information**

40.     On information and belief, AcademyOne recognized that capturing the data required for its services from the data's original sources (including course catalogs) would require an investment of time and money similar to the years of time and millions of dollars

invested by CollegeSource.  AcademyOne recognized the value of creating a database of equivalencies, course articulations and/or transcript reconciliations from information that had already been digitized.  With access to CollegeSource's Digitized Information, AcademyOne would be able to "cut and paste" the course descriptions and data into AcademyOne's competing website's databases.   Access to CollegeSource's Digitized Information would allow AcademyOne to avoid acquisition, scanning/ OCR, and quality control costs.

41.     For over three (3) months, AcademyOne attempted to lawfully acquire the right to exploit  CollegeSource's library of Digitized Information.  AcademyOne's efforts included, but were not necessarily limited to:

        a.     Exploratory phone calls;

        b.     On October 4, 2005, AcademyOne Vice President Ed Johnson emailed CollegeSource sales representative Dave Hunt and requested the "cost to obtain ALL your catalogs in electronic form, ASAP."  Mr. Johnson contacted CollegeSource after having signed up for a free trial of CollegeSource's digitized college catalog service.

        c.     On December 20, 2005, AcademyOne's Peggi Munkittrick (Director of Marketing) emailed CollegeSource "to determine whether CollegeSource had the interest and/or ability to provide [AcademyOne] with an electronic file of courses that could be loaded into our course inventory."  Like Mr. Johnson, Ms. Munkittrick had already signed up for a free trial of CollegeSource's digitized college catalog service.

        d.     AcademyOne's Ms. Munkittrick again emailed CollegeSource on January 25, 2006 "...to determine whether a conversation is warranted to discuss how our companies might benefit from working together in an effort to create an online course inventory."

42.     The general purpose of AcademyOne's phone calls and emails was to license access to, and commercial use of, CollegeSource's digitized college catalogs for the purpose of

extracting certain course description data (commonly called "data mining" or "scraping") for commercial use by AcademyOne.  AcademyOne also desired to distribute entire *whole* catalogs.

43.    CollegeSource declined AcademyOne's requests to license the Digitized Information.

**AcademyOne Posts CollegeSource's Digital Catalogs On Its Competing Website**

44.    AcademyOne knew, both through CollegeSource's response to AcademyOne's unauthorized linking to CollegeSource's website and through AcademyOne's failed attempt to license the Digitized Information, that AcademyOne was not authorized to make commercial use of CollegeSource's Digitized Information.

45.    On information and belief, AcademyOne entered into an Agreement with Bejing Zhongtian-Noah Sports Science Company, Ltd., a Chinese limited liability company (**"Noah"**) whereby Noah would access CollegeSource's Websites, without authorization or exceeding authorized access, to collect, copy and distribute CollegeSource's Digitized Information to AcademyOne for AcademyOne to use to compete with CollegeSource in interstate commerce.  The conduct of AcademyOne and Noah was without authorization and exceeded any authorized access to CollegeSource's Websites and Digitized Information.

46.    On information and belief, AcademyOne posed (or caused others to pose) as a legitimate user (student, parent,  faculty, guidance counselor, *etc.*) to gain access to CollegeSource's Digitized Information on CollegeSource's Websites.  AcademyOne then took CollegeSource's Digitized Information for the purpose of using it to compete with CollegeSource in interstate commerce.  AcademyOne did not inform CollegeSource that it intended to access CollegeSource's Websites for the purpose of misappropriating CollegeSource's Digitized Information and using it to compete against CollegeSource.  The conduct of AcademyOne was without authorization and exceeded any authorized access it may have had to CollegeSource's Websites and Digitized Information.

47.    In April of 2007, after CollegeSource terminated negotiations with AcademyOne for use of  its college catalog database, CollegeSource discovered AcademyOne offering

CollegeSource's digital catalogs for distribution on AcademyOne's CollegeTransfer.net website. Following a brief investigation, CollegeSource discovered approximately six hundred and eighty (680) of its digital whole catalogs being offered on AcademyOne's website.  Each of these 680 catalogs opened to CollegeSource's "splash" page and contained CollegeSource's terms of use on their entire second page.

48.     On April 20, 2007, CollegeSource delivered a letter to AcademyOne demanding that AcademyOne cease and desist its use of CollegeSource's Digitized Information.

49.     Following receipt of CollegeSource's April 20, 2007 letter, AcademyOne knew that it did not have authorization to use CollegeSource's Digitized Information for the purpose of competing with CollegeSource or other commercial purposes, or to violate the terms of use on CollegeSource's Websites and/or digital catalogs.

50.     On April 23, 2007, AcademyOne's President, David Moldoff, emailed CollegeSource and falsely represented that AcademyOne had "removed ALL course catalog PDF files as of this afternoon and [was] working to determine actually how many catalogs are in question have [sic] your copyright statement."  AcademyOne further falsely represented that it would "honor [CollegeSource's] request and remove the content."

51.     AcademyOne removed the links to the CollegeSource PDF files on its website, but the CollegeSource PDF files and data remained on its computers.

**CollegeSource Is Forced To Implement Additional Security Measures**

52.     After CollegeSource caught AcademyOne offering CollegeSource's digitized catalogs on AcademyOne's competing www.CollegeTransfer.net website, CollegeSource implemented additional security measures to prevent and detect the future unauthorized use of its Digitized Information.

53.     The Adobe Acrobat software CollegeSource uses allows CollegeSource to set certain security flags on its digital catalogs, such as "Password Protected", "NO Changes", "NO Copying" and "Always Open to the First (Splash) Page."  Initially, CollegeSource set a password, did not allow changes and required the catalog to always open to the first (Splash) page.

1    CollegeSource did not restrict copying so that students could fill out resumes.

2    54.    Without a password, no one could alter CollegeSource's digital catalogs.

3    However, password cracking software is capable of granting access to change CollegeSource's

4    security settings and delete CollegeSource's Splash Page and Terms of Use Page.

5    55.    Using Adobe Acrobat software, CollegeSource additionally placed a "digital

6    watermark" in its digital catalogs that is invisible to PDF viewers.

7    56.    Independent of placing "watermarks," CollegeSource also placed hidden text it

8    calls "salting" in its digital catalogs in the same color as the background to make it effectively

9    invisible.

10   57.    CollegeSource also made certain alternate spelling changes to certain text.

11   58.    CollegeSource later implemented additional digital rights managements through

12   the Adobe Acrobat software.

13   **AcademyOne Builds A Competing Database Out Of CollegeSource's Digitized Information**

14   59.    AcademyOne continued its unauthorized use of the Digitized Information after

15   CollegeSource's April 23, 2007 cease and desist letter.

16   60.    On information and belief, AcademyOne entered into an Agreement with Noah

17   whereby Noah would populate AcademyOne's online database with CollegeSource's Digitized

18   Information for AcademyOne to use to compete with CollegeSource in interstate commerce.

19   Noah charged AcademyOne a fee to take CollegeSource's Digitized Information and provide it to

20   AcademyOne.  The conduct of AcademyOne and Noah was without authorization and exceeded

21   any authorized access to CollegeSource's Websites and Digitized Information.

22   61.    AcademyOne used CollegeSource's Digitized Information to populate its

23   competing database of course descriptions and data, including, but not limited to, by paying

24   Noah and others to extract course descriptions from PDF files digitized by CollegeSource and

25   use them to populate AcademyOne's competing database.

26   62.    In 2008, CollegeSource filed this action after it discovered that AcademyOne had

27   populated its competing database using CollegeSource's Digitized Information.

28

**AcademyOne Continues Its Unauthorized Use Of CollegeSource's Digitized Information**

63.    Even after this action was filed, AcademyOne continued to use CollegeSource's Digitized Information.

64.    In July of 2010, course descriptions on AcademyOne's www.CourseAtlas.com and www.CollegeTransfer.net websites contained CollegeSource's "watermarks" and/or "salting" and/or "seeding" and or unique "scanos."

65.    CollegeSoure was forced to file a lawsuit in Pennsylvania in July, 2010 to seek preliminary relief pending resolution on appeal of a jurisdictional issue in this action.

66.    AcademyOne testified under oath that it, in response to litigation filed by CollegeSource in July of 2010, it searched for and found references to "CollegeSource" and/or "Career Guidance Foundation" in approximately six hundred (600) of AcademyOne's catalogs.

67.    AcademyOne testified under oath that, in September of 2010, it had approximately five hundred thousand (500,000) course descriptions in its database that were derived from digital catalogs that contained references to "CollegeSource" and/or "Career Guidance Foundation."

68.    AcademyOne testified under oath that it, in response to a motion for a preliminary injunction filed by CollegeSource in December of 2010, it searched for and found approximately one hundred (100) of CollegeSource's digital catalogs, and descriptions therefrom, on AcademyOne's websites and database.

69.    Tellingly, AcademyOne has refused to produce for inspection the electronic catalogs it used to populate its competing database.

70.    On information and belief, AcademyOne is continuing to use CollegeSource's Digitized Information, in violation of CollegeSource's terms of use, for commercial purposes and to compete with CollegeSource.

**CollegeSource's Marks**

71.    CollegeSource owns all right, title and interest to the "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION" names and marks for use on or in connection with

information and data services related to college and university catalogs, which now include, but are not limited to, information and data services related to curriculums, course descriptions, course equivalencies, and college transfers.

72.    CollegeSource owns all right, title and interest to United States Registration No. 2616166 for the word mark "COLLEGESOURCE," and said registered word mark, for use on: (1) "Educational services, namely providing an on-line computer database via global computer information networks in the field of college catalogs;" and (2) "Electronic database in the field of college catalogs, recorded on microfiche and CD-ROM."

73.    United States Registration No. 2616166 for "COLLEGESOURCE" issued on September 10, 2002.  Pursuant to 15 U.S.C. §1065, the "COLLEGESOURCE" mark, and CollegeSource's right to use said mark in commerce, have become incontestible.

74.    Since June of 1994, CollegeSource (or its predecessor CGF) has continuously used the "COLLEGESOURCE" name and mark in interstate commerce in connection with its information and data services related to college and university catalogs, which now include, but are not limited to, information and data services related to curriculums, course descriptions, course equivalencies, and college transfers.

75.    Since at least 1980, CollegeSource (or its predecessor CGF) has continuously used the "CAREER GUIDANCE FOUNDATION" name and mark in interstate commerce in connection with its information and data services related to college and university catalogs, which now include, but are not limited to, information and data services related to curriculums, course descriptions, course equivalencies, and college transfers.

76.    As a result of the continuous use of "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION," they have accumulated significant goodwill and acquired a secondary meaning in the mind of the public to identify a single source of the products and services offered in connection therewith.

77.    As a result of the continuous use of "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION," they have accumulated significant goodwill and acquired a

secondary meaning in the mind of the public to identify CollegeSource as the source of the products and services offered in connection therewith.

78.     As a result of the continuous use of "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION," they have accumulated significant goodwill and wide public recognition, including, but not limited to, recognition by which CollegeSource is known to the public, including, but not limited to, students, state educational departments, and educational institutions.

79.     As a result of the goodwill, secondary meaning, and public recognition of "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION," they have become, and are, valuable and irreplaceable assets of CollegeSource.

**Harm to CollegeSource**

80.     AcademyOne's conduct has caused loss to CollegeSource in an amount aggregating at least $5,000 in a one-year period.  The reasonable costs incurred by CollegeSource include, but are not limited to, the cost of responding to the offense and attempting to restore CollegeSource's data, program, system or information to its condition prior to the offense and implementing additional security and tracking features.  Over $5,000 was paid to computer expert Michael Bandemer alone.

81.     Prior to the offense, CollegeSource's data, program, system or information was available solely through authorized access to its California servers.  As a result of the offense, the integrity or availability of CollegeSource's data, program, system or information has been impaired, such that some of CollegeSource's Digitized Information is now on AcademyOne's servers and out of CollegeSource's control.

82.     On information and belief, AcademyOne is attempting to distribute, transmit, transport and/or sell CollegeSource's Digitized Information through one or more non-profit organizations to attempt to have the Digitized Information enter into the public domain and thus provide itself with a defense in this action.

83.     AcademyOne used College's Digitized Information, without authorization, to

compete with CollegeSource, increase its market share, and increase its revenues, all to CollegeSource's damage.  CollegeSource has also been damaged by this impairment to the integrity and availability of its data, program, system or information by incurring reasonable costs (including attorney fees) to restore CollegeSource's data, program, system or information to its condition prior to the offense.   CollegeSource has incurred reasonable costs to protect itself from similar offenses in the future.

84.     As a result of AcademyOne's unauthorized taking of CollegeSource's Digitized Information, AcademyOne's acquisition and conversion costs are negligible, and AcademyOne does not have to amortize the equivalent of CollegeSource's acquisition and conversion costs in any competitive bid against CollegeSource.  This puts CollegeSource at a significant competitive disadvantage and allows AcademyOne to compete unfairly with CollegeSource.

85.     CollegeSource has been damaged by AcademyOne's unauthorized taking and use of CollegeSource's Digitized Information through AcademyOne's use of CollegeSource's Digitized Information to compete against CollegeSource in the marketplace.  On information and belief, all of the business AcademyOne has generated through its use of CollegeSource's Digitized Information would otherwise have gone to CollegeSource.  This includes, but is not limited to, a contract with the South Carolina Department of Higher Education with an estimated value of $2,688,333.00.

86.     Through its unauthorized and wrongful taking and use of CollegeSource's Digitized Information, AcademyOne has avoided the substantial time, money and effort in building the relationships with colleges, collecting data, and creating enhanced catalogs (including, but not limited to, scanning/OCR and quality control costs) that CollegeSource was required to expend.

87.     Through its unauthorized and wrongful taking and use of CollegeSource's Digitized Information, AcademyOne has avoided paying a license fee to CollegeSource for use of the Digitized Information.

# FIRST CAUSE OF ACTION
(U.S. Computer Fraud And Abuse Act)
[18 U.S.C. §1030(g)]

88.     CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 87 of this Complaint as though fully set forth in this cause of action.

89.     Each of CollegeSource's Websites, and the Digitized Information thereon, are stored on computers in the State of California that are used in or affecting interstate or foreign commerce or communication.  CollegeSource's Websites have subscribers/customers in multiple states throughout the United States as well as other countries.  CollegeSource even has military bases and ships-on-the-sea as customers.  CollegeSource's computers constitute a "protected computer" within the meaning of 18 U.S.C. §1030(e)(2)(B).

90.     CollegeSource reasonably expected that the users of its Websites and Digitized Information would abide by CollegeSource's terms of use disclosed on its Websites and digital catalogs.

91.     The Digitized Information rightfully belongs to CollegeSource.  AcademyOne was not authorized, either implicitly or explicitly, to access CollegeSource's Digitized Information for the purpose of competing with CollegeSource or other commercial purposes, or to violate the terms of use on CollegeSource's Websites and/or digital catalogs.

92.     AcademyOne's taking and use of the Digitized Information exceeded any authorization provided by CollegeSource.

93.     Any authorization AcademyOne had to access the Websites and Digitized Information terminated when AcademyOne used CollegeSource's Digitized Information in an unauthorized way.

94.     AcademyOne knew or should have known of the terms of use on CollegeSource's Websites and digitized catalogs. On information and belief, AcademyOne had actual knowledge of the terms of use on CollegeSource's Websites and digital catalogs.

95.     On information and belief, AcademyOne accepted the benefit of using CollegeSource's Websites and Digitized Information with knowledge of the terms of use on

CollegeSource's Websites and digital catalogs, and thereby assented to such restrictions of use.

96.     AcademyOne knew, or should have known, that CollegeSource would not have granted AcademyOne access to CollegeSource's Websites and/or Digitized Information if AcademyOne would have informed CollegeSource that AcademyOne intended to use its access to CollegeSource's Websites for the purpose of competing with CollegeSource or other commercial purposes, or to violate the terms of use on CollegeSource's Websites and/or digital catalogs.

97.     On information and belief, AcademyOne has violated 18 U.S.C. §1030(a)(2)(C) by intentionally accessing CollegeSource's protected computer without authorization or exceeding authorized access, and thereby obtaining information from CollegeSource's protected computer.

98.     On information and belief, AcademyOne has violated 18 U.S.C. §1030(a)(4) by knowingly and with intent to defraud, accessing CollegeSource's protected computer without authorization, or exceeding authorized access, and by means of such conduct furthering the intended fraud and obtaining anything of value.  The object of the fraud and the thing obtained was CollegeSource's Digitized Information.

99.     On information and belief, AcademyOne has violated 18 U.S.C. §1030(a)(5)(B) by intentionally accessing CollegeSource's protected computer without authorization, and as a result of such conduct, recklessly causing damage.

100.    On information and belief, AcademyOne has violated 18 U.S.C. §1030(a)(5)(C) by intentionally accessing CollegeSource's protected computer without authorization, and as a result of such conduct, causing damage and loss.

101.    Pursuant to 18 U.S.C. §1030(g), CollegeSource is entitled to bring a civil action for AcademyOne's violations of 18 U.S.C. §1030.

102.    WHEREFORE, CollegeSource is entitled to and seeks:

a.     Compensatory damages in an amount to be proven at trial, pursuant to 18 U.S.C. §1030(g);

b.     Injunctive and other equitable relief, including, but not limited to, preliminary and permanent injunctions, forfeiture or seizure of CollegeSource's Digitized Information, and a constructive trust over any property which constitutes or is derived from CollegeSource's Digitized Information, pursuant to 18 U.S.C. §1030(g);

c.     Costs of the action; and

d.     Such other and further relief as this Court deems appropriate.

### SECOND CAUSE OF ACTION
(California Computer Crimes)
[Cal. Pen. Code §502(e)]

103.     CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 102 of this Complaint as though fully set forth in this cause of action.

104.     AcademyOne knowingly accessed CollegeSource's Websites to collect, copy, and/or use CollegeSource's Digitized Information in a manner not authorized by CollegeSource.

105.     AcademyOne has violated Cal. Pen. Code §502(c)(1) by knowingly accessing and without permission using any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

106.     AcademyOne has violated Cal. Pen. Code §502(c)(2) by knowingly accessing and without permission taking, copying or making use of any data from a computer, computer system or computer network, or taking or copying any supporting documentation.

107.     AcademyOne's violations of Cal. Pen. Code §502, and the acts that constituted said violations, were knowing and willful, and were performed with oppression, fraud, and malice.

108.     Pursuant to Cal. Pen. Code §502(e), CollegeSource is entitled to bring a civil action for AcademyOne's violations of Cal. Pen. Code §502.

109.     WHEREFORE, CollegeSource is entitled to and seeks:

a.     Compensatory damages in an amount to be proven at trial, pursuant to Cal.

Pen. Code §502(e)(1);

b.      Punitive damages in an amount determined by this Court to be sufficient to punish and make an example out of AcademyOne, pursuant to Cal. Pen. Code §502(e)(4);

c.      Injunctive and other equitable relief, including, but not limited to, preliminary and permanent injunctions, forfeiture or seizure of CollegeSource's Digitized Information, and a constructive trust over any property which constitutes or is derived from CollegeSource's Digitized Information, pursuant to Cal. Pen. Code §502(e)(1);

d.      Forfeiture of any computer, computer system, computer network, or any software or data, owned by the AcademyOne, that is used during the commission of any violation of Cal. Pen. Code §502(c) or any computer, owned by the AcademyOne, which is used as a repository for the storage of software or data illegally obtained in violation of Cal. Pen. Code §502(c).

e.      Reasonable attorney fees, pursuant to Cal. Pen. Code §502(e)(2);

f.      Costs of the action; and

g.      Such other and further relief as this Court deems appropriate.

## THIRD CAUSE OF ACTION
(Breach Of Contract)

110.    CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 109 of this Complaint as though fully set forth in this cause of action.

111.    AcademyOne was on notice of CollegeSource's terms of use on CollegeSource's Websites and digital catalogs (the **"Terms of Use"**).

112.    The Terms of Use were conspicuously posted on CollegeSource's Websites and digital catalogs.

113.    AcademyOne knew or should have known of CollegeSource's Terms of Use.

114.    On information and belief, AcademyOne had actual knowledge of CollegeSource's Terms of Use.

115.   By using CollegeSource's Websites and digital catalogs, AcademyOne agreed to CollegeSource's Terms of Use.

116.   The Terms of Use on CollegeSource's Websites and digital catalogs constituted a valid and enforceable contract between CollegeSource and AcademyOne.

117.   Through the conduct set forth above, AcademyOne has breached the Terms of Use on CollegeSource's Websites and digitized catalogs.

118.   CollegeSource has been damaged as a result of AcademyOne's breach of the Terms of Use in an amount to be proven at trial, which includes the loss of contracts and a reasonable royalty from AcademyOne.

119.   WHEREFORE, CollegeSource is entitled to and seeks:

    a.   Any and all damages sustained by CollegeSource from AcademyOne's breach of contract in an amount to be proven at trial;

    b.   Any and all profits of AcademyOne as a result of its breach of contract complained of herein;

    c.   The reasonable value of the Digitized Information taken by AcademyOne from CollegeSource;

    d.   The expenditures saved by AcademyOne as a result of its acts complained of herein, including, but not limited to, CollegeSource's costs to collect, compile and convert its Digitized Information;

    e.   Costs of the action;

    f.   Preliminary and permanent injunctive relief; and

    g.   Such other and further relief as this Court deems appropriate.

### FOURTH CAUSE OF ACTION
(Misappropriation)

120.   CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 119 of this Complaint as though fully set forth in this cause of action.

121.   CollegeSource has invested substantial time and money in the development of its Digitized Information.  CollegeSource's investment of time and money includes, but is not

limited to, the compilation, enhancement and/or digitization of thousands of college catalogs.

122.    AcademyOne has appropriated CollegeSource's Digitized Information at little or no cost.

123.    CollegeSource has been damaged as a result of AcademyOne's appropriation of CollegeSource's Digitized Information in an amount to be proven at trial.

124.    AcademyOne has benefitted as a result of its appropriation of CollegeSource's Digitized Information in an amount to be proven at trial.

125.    WHEREFORE, CollegeSource is entitled to and seeks:

    a.    Any and all damages sustained by CollegeSource and/or benefit retained by AcademyOne in an amount to be proven at trial;

    b.    Any and all profits of AcademyOne as a result of its acts of misappropriation complained of herein;

    c.    Appropriate equitable relief, including, but not limited to, preliminary and permanent injunctive relief;

    d.    The reasonable value of the Digitized Information taken by AcademyOne from CollegeSource;

    e.    The expenditures saved by AcademyOne as a result of its acts complained of herein, including, but not limited to, CollegeSource's costs to collect, compile and convert its Digitized Information;

    f.    Costs of the action; and

    g.    Such other and further relief as this Court deems appropriate.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

126.    CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 125 of this Complaint as though fully set forth in this cause of action.

127.    AcademyOne received a benefit from CollegeSource, and at CollegeSource's expense, through AcademyOne's unauthorized receipt and use of CollegeSource's Digitized Information.

128.     AcademyOne's appreciation of the benefit includes, *inter alia*, revenues and saved expenditures relating to the digitizing and compilation of CollegeSource's Digitized Information.

129.     AcademyOne accepted and retained the benefit under circumstances that render it inequitable for AcademyOne to retain the benefit without payment of value to CollegeSource.

130.     Under the circumstances set forth above, it would be unjust for AcademyOne to retain the benefit bestowed upon it by CollegeSource.

131.     WHEREFORE, CollegeSource is entitled to and seeks:

    a.     That AcademyOne make restitution for any and all benefits it unjustly received from CollegeSource;

    b.     Any and all profits of AcademyOne as a result of its acts complained of herein;

    c.     The reasonable value of the Digitized Information taken by AcademyOne from CollegeSource;

    d.     The expenditures saved by AcademyOne as a result of its acts complained of herein, including, but not limited to, CollegeSource's costs to collect, compile and convert its Digitized Information;

    e.     Costs of the action;

    f.     Equitable relief, including, but not limited to, preliminary and permanent injunctions restraining AcademyOne from its further exploitation of the Digitized Information; and

    g.     Such other and further relief as this Court deems appropriate.

**SIXTH CAUSE OF ACTION**
(Infringement of Registered Mark)
[15 U.S.C. §1114]

132.     CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 131 of this Complaint as though fully set forth in this cause of action.

133.     AcademyOne has used CollegeSource's registered "COLLEGESOURCE" mark in commerce in connection with the sale and advertising of AcademyOne's goods and services

1   by purchasing the term "COLLEGESOURCE" and/or "COLLEGE SOURCE" from Internet

2   search engines, including, but not limited to, Google, as a term that, when typed into said search

3   engines, triggers the appearance of advertisements and links to AcademyOne's

4   www.CollegeTransfer.net website.

5        134.   AcademyOne's advertisements or links generated as a result of an Internet user

6   searching for "COLLEGESOURCE" and/or "COLLEGE SOURCE" stated that they were for

7   college transfer.

8        135.   None of AcademyOne's advertisements or links generated as a result of an

9   Internet user searching for "COLLEGESOURCE" and/or "COLLEGE SOURCE" identified

10   themselves as belonging to AcademyOne.

11        136.   None of AcademyOne's advertisements or links generated as a result of an

12   Internet user searching for "COLLEGESOURCE" and/or "COLLEGE SOURCE" identified

13   themselves as not belonging to CollegeSource.

14        137.   The page of www.CollegeTransfer.net linked to by AcademyOne's links

15   generated as a result of an Internet user searching for "COLLEGESOURCE" and/or "COLLEGE

16   SOURCE," did not clearly identify itself as belonging to AcademyOne.

17        138.   The page of www.CollegeTransfer.net linked to by AcademyOne's links

18   generated as a result of an Internet user searching for "COLLEGESOURCE" and/or "COLLEGE

19   SOURCE," did not clearly identify itself as not belonging to CollegeSource.

20        139.   On information and belief, AcademyOne purchased the term

21   "COLLEGESOURCE" and/or "COLLEGE SOURCE," from Internet search engines, as set forth

22   above, because of the goodwill in CollegeSource's name and mark and because Internet

23   searchers associate said name and mark with CollegeSource.

24        140.   AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark,

25   as set forth above, was without CollegeSource's knowledge or consent.

26        141.   AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark,

27   as set forth above, is likely to cause confusion, cause mistake and/or deceive.

28

142.     AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, is likely to cause confusion, cause mistake and/or deceive in that Internet users, initially seeking CollegeSource's website(s), may believe that AcademyOne's advertisements and/or links are links to CollegeSource's website(s) or websites sponsored by or affiliated with CollegeSource, and/or that AcademyOne's advertisements, links and/or website are sponsored by or affiliated with CollegeSource.

143.     AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, is likely to cause initial interest confusion in that it capitalizes on the goodwill in CollegeSource's mark to create an initial interest in AcademyOne's www.CollegeTransfer.net website, products and/or services.

144.     AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, is likely to cause initial interest confusion in that it capitalizes on the goodwill in CollegeSource's mark to lead and divert Internet users to AcademyOne's www.CollegeTransfer.net website, on which AcademyOne offers products and/or services, that would otherwise have proceeded to CollegeSource's website(s).

145.     Through AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, AcademyOne improperly misappropriated and benefitted from CollegeSource's goodwill therein.

146.     On information and belief, AcademyOne, through its conduct set forth above, has willfully and in bad faith attempted to exploit the good will, secondary meaning and public recognition of CollegeSource's registered "COLLEGESOURCE" mark.

147.     AcademyOne, by its acts complained of herein, has infringed CollegeSource's rights in its registered "COLLEGESOURCE" mark.

148.     AcademyOne, by its acts complained of herein, has violated 15 U.S.C. §1114.

149.     On information and belief, AcademyOne's infringement of CollegeSource's rights in its registered "COLLEGESOURCE" mark and violation of 15 U.S.C. §1114 was deliberate, knowing, willful and in bad faith.

150.     AcademyOne's acts complained of herein have caused, and will continue to cause, harm and irreparable injury to CollegeSource and its business.

151.     CollegeSource is entitled to and seeks to recover all remedies available to it pursuant to 15 U.S.C §1117, including, without limitation:

        a.        AcademyOne's profits;

        b.        Any and all damages sustained by CollegeSource;

        c.        Treble damages or profits;

        d.        Preliminary and permanent injunctive relief;

        e.        Costs of the action; and

        f.        Reasonable attorney fees per statute.

**SEVENTH CAUSE OF ACTION**
(Lanham Act Unfair Competition)
[15 U.S.C. §1125(a)]

152.     CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 151 of this Complaint as though fully set forth in this cause of action.

153.     By virtue of the continuous use of the name and mark "CAREER GUIDANCE FOUNDATION" in commerce, and the goodwill, consumer recognition and secondary meaning resulting therefrom, CollegeSource has acquired a valuable and protected mark in "CAREER GUIDANCE FOUNDATION."  Such consumer recognition and secondary meaning came into existence before any of the acts of infringement of "CAREER GUIDANCE FOUNDATION" alleged herein.

154.     By virtue of the continuous use of the name and mark "COLLEGESOURCE" in commerce, and the goodwill, consumer recognition and secondary meaning resulting therefrom, CollegeSource has acquired a valuable and protected mark in "COLLEGESOURCE."  Such consumer recognition and secondary meaning came into existence before any of the acts of infringement of "COLLEGESOURCE" alleged herein.  CollegeSource's rights in and to "COLLEGESOURCE" as a result of its use in commerce, as set forth above, are in addition to its rights in its registered "COLLEGESOURCE" mark.

155.    AcademyOne has used CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks in commerce in connection with the sale and advertising of AcademyOne's goods and services by purchasing the terms "CAREER GUIDANCE FOUNDATION," "COLLEGESOURCE" and "COLLEGE SOURCE" from Internet search engines, including, but not limited to, Google, as terms that, when typed into said search engines, trigger the appearance of advertisements, higher rankings and links to AcademyOne's www.CollegeTransfer.net website.

156.    AcademyOne's advertisements or links generated as a result of an Internet user searching for "CAREER GUIDANCE FOUNDATION," "COLLEGESOURCE" or "COLLEGE SOURCE" stated that they were for college transfer.

157.    None of AcademyOne's advertisements or links generated as a result of an Internet user searching for "CAREER GUIDANCE FOUNDATION," "COLLEGESOURCE" or "COLLEGE SOURCE" identified themselves as belonging to AcademyOne.

158.    None of AcademyOne's advertisements or links generated as a result of an Internet user searching for "CAREER GUIDANCE FOUNDATION," "COLLEGESOURCE" or "COLLEGE SOURCE" identified themselves as not belonging to CollegeSource.

159.    The page of www.CollegeTransfer.net linked to by AcademyOne's links generated as a result of an Internet user searching for "CAREER GUIDANCE FOUNDATION," "COLLEGESOURCE" or "COLLEGE SOURCE," did not clearly identify itself as belonging to AcademyOne.

160.    The page of www.CollegeTransfer.net linked to by AcademyOne's links generated as a result of an Internet user searching for "CAREER GUIDANCE FOUNDATION," "COLLEGESOURCE" or "COLLEGE SOURCE," did not clearly identify itself as not belonging to CollegeSource.

161.    AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, was without CollegeSource's knowledge or consent.

162.   AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, constitutes a false designation of origin, false or misleading description of fact or a false or misleading representation of fact which:

a.   is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of AcademyOne with CollegeSource, or as to the origin, sponsorship, or approval of AcademyOne's goods, services, or commercial activities by CollegeSource, and

b.   misrepresents the nature, characteristics or qualities of AcademyOne's goods, services, or commercial activities.

163.   AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, is likely to cause confusion, cause mistake and/or deceive in that Internet users, initially seeking CollegeSource's website(s), may believe that AcademyOne's advertisements and/or links are links to CollegeSource's website(s) or websites sponsored by or affiliated with CollegeSource, and/or that AcademyOne's advertisements, links and/or website are sponsored by or affiliated with CollegeSource.

164.   AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, is likely to cause initial interest confusion in that it capitalizes on the goodwill in CollegeSource's marks to create an initial interest in AcademyOne's www.CollegeTransfer.net website, products and/or services.

165.   AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, is likely to cause initial interest confusion in that it capitalizes on the goodwill in CollegeSource's marks to lead and divert Internet users to AcademyOne's www.CollegeTransfer.net website, on which AcademyOne offers products and/or services, that would otherwise have proceeded to CollegeSource's website(s).

166.   Through AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, AcademyOne improperly misappropriated and benefitted from CollegeSource's goodwill therein.

1    167.    On information and belief, AcademyOne, through its conduct set forth above,

2    willfully and in bad faith attempted to exploit the good will, secondary meaning and public

3    recognition of CollegeSource's "CAREER GUIDANCE FOUNDATION" and

4    "COLLEGESOURCE" marks.

5    168.    AcademyOne, by its acts complained of herein, has infringed and is continuing to

6    infringe CollegeSource's rights in its "CAREER GUIDANCE FOUNDATION" and

7    "COLLEGESOURCE" marks.

8    169.    AcademyOne, by its acts complained of herein, has violated 15 U.S.C. §1125(a).

9    170.    On information and belief, AcademyOne's infringement of CollegeSource's rights

10   in its "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, and violation

11   of 15 U.S.C. §1125(a) was deliberate, knowing, willful and in bad faith.

12   171.    AcademyOne's acts complained of herein have caused, and will continue to cause,

13   harm and irreparable injury to CollegeSource and its business.

14   172.    CollegeSource is entitled to and seeks to recover all remedies available to it

15   pursuant to 15 U.S.C §1117, including, without limitation:

16       a.    AcademyOne's profits;

17       b.    Any and all damages sustained by CollegeSource;

18       c.    Treble damages or profits;

19       d.    Preliminary and permanent injunctive relief;

20       e.    Costs of the action; and

21       f.    Reasonable attorney fees per statute.

22   **EIGHTH CAUSE OF ACTION**
         (Lanham Act False Advertising)

23   [15 U.S.C. §1125(a)]

24   173.    CollegeSource incorporates by reference the allegations contained in paragraphs 1

25   through 172 of this Complaint as though set forth in this cause of action.

26   174.    AcademyOne has made false or misleading statements and omissions as to its

27   products and services.

28

False Representations Re: Accurate and Reliable Databases

175.   AcademyOne has falsely advertised that its databases are accurate and reliable. For instance, in a September 27, 2010 press release, AcademyOne states:

> It is unfair and inefficient to force students and staff to sift through paper based college catalogs, transfer agreements and outdated databases or force them to make multiple phone calls or appointments during business hours. CollegeTransfer.Net is a reliable, easy to navigate website, available on a 24/7 basis containing accurate, up-to-date transfer information.

176.   The foregoing statements in AcademyOne's September 27, 2010 press release are false and misleading, because, *inter alia*, some of the entries in AcademyOne databases are not accurate and up-to-date.

False Representations Re: Sole Owner

177.   On or around April 1, 2008, the South Carolina Department of Higher Education issued a "Request for Proposal," which solicited bids from companies for a "Course Articulation and Transfer System" (the **"RFP"**).

178.   Both AcademyOne and CollegeSource responded to the RFP.

179.   In AcademyOne's response to the RFP, it did not disclose that AcademyOne's website and database(s) offered in response to the RFP were populated with Digitized Information stolen from CollegeSource.

180.   To the contrary, AcademyOne falsely represented that "AcademyOne is the sole owner of...all databases and all...copyrights and other proprietary rights of any kind or nature whatsoever" related to AcademyOne's course articulation and transfer service offered in response to the RFP.

181.   AcademyOne's foregoing omission and representation in response to the RFP was false because AcademyOne had taken CollegeSource's Digitized Information and populated its database and website, upon which its course articulation and transfer service offered in response to the RFP relied, without CollegeSource's authorization.

182.   CollegeSource complained to the South Carolina Commission of Higher Education hearing examiner that AcademyOne's bid offered information and data that had been

stolen from CollegeSource. AcademyOne, in furtherance of its fraud, denied the allegations.

183. On August 25, 2008, the South Carolina hearing examiner ruled that the issue presented a dispute between private parties to be redressed by the Courts. The South Carolina Hearing Examiner did not issue any finding regarding whether or not that AcademyOne's statement that "AcademyOne is the sole owner of...all databases and all...copyrights and other proprietary rights of any kind or nature whatsoever" related to AcademyOne's course articulation and transfer service offered in response to the RFP was true.

184. The South Carolina Department of Higher Education could not have awarded any contract to AcademyOne if AcademyOne has not stolen CollegeSource's Digitized Information, marketed it in connection with the RFP, and used it to perform its contract with the South Carolina Department of Higher Education.

185. AcademyOne's false or misleading statements and omissions in response to the RFP actually deceived, or at least had the tendency to deceive, its intended audience, which was the South Carolina Department of Higher Education.

186. Defendant AcademyOne's false or misleading statements and omissions in its response to the RFP were made knowingly and with the intent to deceive the South Carolina Department of Higher Education into believing that AcademyOne was the sole owner of the contents of its database and website offered in response to the RFP. At the very minimum, AcademyOne's misrepresentations or omissions were the result of a reckless disregard for the truth.

187. The deception caused by AcademyOne's false or misleading statements and omissions in response to the RFP was material, in that it was likely to influence purchasing decisions.

188. AcademyOne was awarded a contract with the South Carolina Department of Higher Education as a result of its response to the RFP and the false and misleading representations or omissions contained therein. The value of the contract was estimated at $2,688,333.00.

189.    On information and belief, the South Carolina Department of Higher Education would not have granted AcademyOne a contract in response to the RFP if AcademyOne had disclosed that its website and database(s) offered in response to the RFP were populated with Digitized Information stolen from CollegeSource.

190.    On information and belief, the South Carolina Department of Higher Education would not have granted AcademyOne a contract in response to the RFP if AcademyOne had not falsely represented that  "AcademyOne is the sole owner of...all databases and all...copyrights and other proprietary rights of any kind or nature whatsoever" related to AcademyOne's course articulation and transfer service offered in response to the RFP.

191.    AcademyOne's goods and services offered in response to the RFP traveled and were offered to consumers in interstate commerce via the Internet.

192.    CollegeSource was harmed by AcademyOne's false or misleading statements and omissions in response to the RFP.  AcademyOne was awarded a contract as a result of its false or misleading statements and omissions, which caused CollegeSource competitive harm.  On information and belief, CollegeSource would have been awarded a contract with the South Carolina Department of Higher Education if AcademyOne had not been.

193.    AcademyOne's false or misleading statements and omissions in response to the RFP constituted false advertising in violation of 15 U.S.C. §1125(a).

False Representations Re: CollegeSource Claims

194.    On or around July, 2010, AcademyOne wrote and sent letters to various colleges and universities that contained false advertising (the **"Letters"**).

195.    The Letters are cloaked in the rubric of a Freedom of Information request, but they exceed the language necessary to request information and include false advertising as identified herein.

196.    The Letters were commercial advertisements, made in interstate commerce, that promoted defendant AcademyOne's products and services, stating, identically or in substance: "AcademyOne's CollegeTransfer.Net enables students to compile an academic history

referencing course data and facilitates course comparability projects across institutions and their academic departments."

197. The Letters were commercial advertisements, made in interstate commerce, that promoted defendant AcademyOne's products and services, stating, identically or in substance: "CollegeTransfer.Net and CourseAtlas.com are sites where students can freely find what courses transfer in and out between institutions throughout the United States as more and more institutions are publishing their course level data with our service."

198. In the Letters, AcademyOne made the false and misleading representation that CollegeSource had filed "copyright claims" in the Eastern District of Pennsylvania, case no. 10-cv-3542 (the **"CollegeSource Pennsylvania Action"**), "whereby CollegeSource is claiming ownership and control of your institution's digital catalog and the course descriptions contained within, whereby restricting the use of your academic content sourced from the digital catalog that was designed to support academic purposes by other institutions and prospective students." Said representation is false and misleading because, *inter alia*, CollegeSource has never filed any "copyright claims" against AcademyOne, let alone in the CollegeSource Pennsylvania Action.

199. In the Letters, AcademyOne made the false and misleading representation that: "CollegeSource's assertions attempt to preclude AcademyOne and other software providers from providing automated student transfer systems that may enable prior learning assessment, credit recommendation methods and articulation decisions using course content sourced from digital catalogs CollegeSource has tagged." Said representation is false and misleading because, *inter alia*, CollegeSource did not assert claims against "other software providers" and only sought to preclude AcademyOne's competing use of Digitized Information that CollegeSource digitized or that was taken from CollegeSource without CollegeSource's authorization.

200. In the Letters, AcademyOne made the false and misleading representation that: "CollegeSource claims control of the digital catalogs they collect, even if they reside on your website." Said representation is false and misleading because, *inter alia*, in the Pennsylvania Action, CollegeSource only sought to preclude the competing use of Digitized Information that

CollegeSource digitized or that was taken from CollegeSource's website without CollegeSource's authorization.

201.    The false and misleading statements in the Letters were not issued in the regular course of the proceedings between the parties in the CollegeSource Pennsylvania Action, were not pertinent and material to the redress or relief sought therein, and were not essential to the exploration of legal claims in said litigation.

202.    The false and misleading statements in the Letters were, on information and belief, actuated by malice or negligence and made for extra-judicial purposes.

203.    As a result of defendant AcademyOne's Letters, there was actual deception or at least a tendency to deceive their recipients.

204.    The deception caused by defendant AcademyOne's Letters is material in that it is likely to influence purchasing decisions.

205.    Both AcademyOne's products and services and CollegeSource's products and services discussed in the Letters are offered and travel in interstate commerce to consumers throughout the United States.

206.    The statements in defendant AcademyOne's Letters create a likelihood of injury to CollegeSource in terms of declining sales, loss of good will and damage to reputation.  For instance, shortly after the Letters were sent, the Central Ohio Technical College asked for CollegeSource to remove any catalog for its school from CollegeSource's websites.

207.    AcademyOne's false or misleading statements in the Letters constituted false advertising in violation of 15 U.S.C. §1125(a).

208.    As a result of defendant AcademyOne's false advertising, there was actual deception or at least a tendency to deceive colleges, administrators, and students.

209.    The deception caused by defendant AcademyOne's false advertising is material in that it is likely to influence persons to use and rely upon AcademyOne database entries that are not accurate and up-to-date.

210.    The false statements by defendant AcademyOne regarding its databases create a

1   likelihood of injury to CollegeSource in terms of declining sales, loss of good will and damage to

2   reputation.

3         211.   AcademyOne's false or misleading statements regarding its databases constitute

4   false advertising in violation of 15 U.S.C. §1125(a).

5         212.   CollegeSource is entitled to and seeks to recover all remedies available to it

6   pursuant to 15 U.S.C §1117, including, without limitation:

7             a.   AcademyOne's profits;

8             b.   Any and all damages sustained by CollegeSource;

9             c.   Treble damages or profits;

10             d.   Preliminary and permanent injunctive relief;

11             e.   Costs of the action; and

12             f.   Reasonable attorney fees per statute.

13   **NINTH CAUSE OF ACTION**
    (Declaration of Trademark Invalidity)
14   [28 U.S.C. §2201; 15 U.S.C. §§1064, 1119]

15         213.   CollegeSource incorporates by reference the allegations contained in paragraphs 1

16   through 212 of this Complaint as though set forth in this cause of action.

17         214.   On July 3, 2009, AcademyOne filed Application Serial No.77774054 with the

18   USPTO to register "CollegeTransfer.net" as a service mark (the **"Application"**).

19         215.   AcademyOne chose "CollegeTransfer.net" to correspond with the nature of its

20   products.

21         216.   AcademyOne chose "CollegeTransfer.net" to correspond with the nature of its

22   services.

23         217.   In the Application, AcademyOne falsely represented that it first used

24   "CollegeTransfer.net" in commerce "at least as early as 12/01/2005."

25         218.   AcademyOne's representation in the Application that it first used

26   "CollegeTransfer.net" "at least as early as 12/01/2005" was false and AcademyOne knew it to be

27   false.

28

219.   AcademyOne did not use CollegeTransfer.net in commerce until March of 2007.

220.   AcademyOne's representation in the Application that it first used "CollegeTransfer.net" in commerce "at least as early as 12/01/2005" was made with the willful intent to deceive the USPTO into issuing a service mark registration to AcademyOne with a first use date of 12/01/2005.

221.   AcademyOne's representation in the Application that it first used "CollegeTransfer.net" in commerce "at least as early as 12/01/2005" constitutes fraud on the USPTO.

222.   On July 8, 2009, the USPTO issued a "Notice of Pseudo Mark" for AcademyOne's Application, assigning "College Transfer" to AcademyOne's Application for registration of "CollegeTransfer.net."

223.   On September 29, 2009, the USPTO issued an "Office Action" rejecting AcademyOne's application.

224.   On December 21, 2009, the Eastern District of Pennsylvania granted CollegeSource's motion for summary judgment in a retaliatory action filed by AcademyOne, 08-cv-5707 (the **"AcademyOne Pennsylvania Action"**).  After considering the evidentiary submissions of the parties, the Court found, *inter alia*:

a.   "AcademyOne urges us to consider 'collegetransfer' as distinct from 'college [space] transfer' and, thus, more prone to misinterpretation. However, given that domain names never have spaces between otherwise distinct words, this argument is simply unpersuasive.";

b.   "AcademyOne cites no record evidence that could potentially support its assertion that there is no commonly understood meaning for the phrase 'college transfer,' e.g., evidence that the phrase 'college transfer' is used to refer to things other than transfer from one educational institution to another or evidence that individuals are genuinely confused as to the meaning of 'collegetransfer.'"; and

c.   "Nevertheless, what is crystal clear from the record is that

collegetransfer.net offers services to students transferring from one academic institution to another and to academic institutions that accept transfer students, and that the services concern the college transfer process."

225.   AcademyOne was aware of the Order in the AcademyOne Pennsylvania Action granting CollegeSource's motion for summary judgment.  Said Order was served on AcademyOne on or around December 21, 2009.

226.   On March 29, 2010, AcademyOne responded to the USPTO's September 29, 2009 Office Action and requested that its Application for registration of "CollegeTransfer.net" be moved to the Supplemental Register.

227.   AcademyOne's March 29, 2010 response failed to inform the USPTO of the Court's Order in the AcademyOne Pennsylvania Action granting CollegeSource's motion for summary judgment.  AcademyOne also failed to submit to the USPTO any of the evidence submitted by CollegeSource in connection with CollegeSource's successful motion for summary judgment.

228.   AcademyOne was under the duty to disclose to the USPTO the Court's Order granting CollegeSource's motion for summary judgment in the AcademyOne Pennsylvania Action.  AcademyOne was also under the duty to disclose to the USPTO the evidence submitted by CollegeSource in connection with CollegeSource's successful motion for summary judgment.

229.   AcademyOne intended for the USPTO to rely upon the foregoing omissions in its March 29, 2010 response and issue AcademyOne a service mark registration for "CollegeTransfer.net" to which AcademyOne was not entitled.

230.   In failing to inform the USPTO of the Court's Order in the AcademyOne Pennsylvania Action granting CollegeSource's motion for summary judgment and/or failing to submit to the USPTO any of the evidence submitted by CollegeSource in connection with CollegeSource's successful motion for summary judgment, AcademyOne intended to deceive the PTO into issuing AcademyOne a service mark registration for "CollegeTransfer.net" to which AcademyOne was not entitled.

231. AcademyOne's failure to inform the USPTO of the Court's Order in the AcademyOne Pennsylvania Action granting CollegeSource's motion for summary judgment and/or failure to submit to the USPTO any of the evidence submitted by CollegeSource in connection with CollegeSource's successful motion for summary judgment constitutes fraud on the USPTO.

232. On May 25, 2010, the USPTO granted the Application for the Supplemental Register and issued a trademark registration for "CollegeTransfer.net" thereon, Registration No. 3795258 (the **"Registration"**).

233. The Registration lists AcademyOne's first use of "CollegeTransfer.net" in commerce as December 1, 2005.

234. In issuing the Registration, the USPTO relied upon AcademyOne's false statements in the Application and March 29, 2010 response to the USPTO's Office Action.

235. The USPTO would not have issued the Registration to AcademyOne if AcademyOne had not misrepresented its date of first use of its supposed "CollegeTransfer.net" trademark to the USPTO.

236. The USPTO would not have issued the Registration to AcademyOne if AcademyOne had informed the USPTO of the Court's Order in the AcademyOne Pennsylvania Action granting CollegeSource's motion for summary judgment.

237. The USPTO would not have issued the Registration to AcademyOne if AcademyOne had submitted the evidence submitted by CollegeSource in connection with CollegeSource's successful motion for summary judgment to the USPTO.

238. AcademyOne is not entitled to the Registration because its claimed mark in "CollegeTransfer.net" is generic. "College Transfer" functions as the common descriptive name of a product class or genus.

239. AcademyOne is not entitled to a registration for "CollegeTransfer.net" with a first use date of 12/01/2005.

240. There is an actual and substantial controversy between CollegeSource and

AcademyOne regarding AcademyOne's purported rights in "CollegeTransfer.net."  This controversy is evidenced by, *inter alia*, AcademyOne's unsuccessful claim in the AcademyOne Pennsylvania Action that CollegeSource had infringed AcademyOne's purported rights in "CollegeTransfer.net."

241.   CollegeSource seeks the cancellation of the Registration, pursuant to 28 U.S.C. §2201, and 15 U.S.C. §§1064 and 1119, for reason of fraud on the USPTO.

242.   CollegeSource seeks the cancellation of the Registration, pursuant to 28 U.S.C. §2201, and 15 U.S.C. §§1064 and 1119, for reason that "CollegeTransfer.net" is generic.

243.   CollegeSource seeks the cancellation of the Registration, pursuant to 28 U.S.C. §2201, and 15 U.S.C. §§1064 and 1119, for reason that AcademyOne does not have any trademark rights or service mark rights in "CollegeTransfer.net."

**TENTH CAUSE OF ACTION**
(Unfair Competition)
[Cal. Bus. Prof. Code §§17200 *et. seq.*]

244.   CollegeSource incorporates by reference the allegations set forth in paragraphs 1 through 238 of this Complaint as though fully set forth in this cause of action.

245.   This cause of action is brought pursuant to Cal. Bus. & Prof. Code §17200, *et seq.*

246.   AcademyOne has committed and continues to commit an unlawful, unfair or fraudulent business act or practice within the meaning of Cal. Bus. & Prof.. Code §17200.

247.   WHEREFORE, CollegeSource is entitled to and seeks:

a.   Such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by AcademyOne of any act or practice which constitutes unfair competition, pursuant to Cal. Bus. & Prof. Code §17203;

b.   Restitution to CollegeSource of any money or property, real or personal, which may have been acquired by means of AcademyOne's unfair competition, pursuant to Cal. Bus. & Prof. Code §17203;

c.   Preliminary and permanent injunctive relief;

d.      Costs of the action; and

e.      Such other and further relief as this Court deems appropriate.

### PRAYER FOR RELIEF

WHEREFORE, CollegeSource prays for judgment and relief on all causes of action, as detailed in each cause of action and as follows:

1.      For any and all damages sustained by CollegeSource, together with AcademyOne's profits, in an amount to be proven at trial;

2.      For the reasonable value of the Digitized Information taken by AcademyOne from CollegeSource;

3.      For the expenditures saved by AcademyOne as a result of its acts complained of herein, including, but not limited to, CollegeSource's costs to collect, compile, convert, and enhance its Digtitized Information;

4.      For damages in an amount to be proven at trial pursuant to 18 U.S.C. §1030(g);

5.      For compensatory damages in an amount to be proven at trial pursuant to Cal. Pen. Code §502(e)(1);

6.      For punitive damages in an amount determined by the Jury to be sufficient to punish and make an example out of AcademyOne, pursuant to Cal. Pen. Code §502(e)(4);

7.      For any and all profits of AcademyOne as a result of its breach of contract complained of herein;

8.      For a reasonable license for AcademyOne's use of CollegeSource's Digitized Information;

9.      For AcademyOne's profits from its violations of 15 U.S.C. §1125(a) alleged herein, pursuant to 15 U.S.C. §1117;

10.     For any and all damages sustained by CollegeSource as a result of AcademyOne's violations of 15 U.S.C. §1125(a) alleged herein, pursuant to 15 U.S.C. §1117;

11.     For treble CollegeSource's damages and AcademyOne's profits resulting from AcademyOne's violations of 15 U.S.C. §1125(a) alleged herein, pursuant to 15 U.S.C. §1117;

12. For AcademyOne's profits from its violations of 15 U.S.C. §1114 alleged herein, pursuant to 15 U.S.C. §1117;

13. For any and all damages sustained by CollegeSource as a result of AcademyOne's violations of 15 U.S.C. §1114 alleged herein, pursuant to 15 U.S.C. §1117;

14. For treble CollegeSource's damages and AcademyOne's profits resulting from AcademyOne's violations of 15 U.S.C. §1114 alleged herein, pursuant to 15 U.S.C. §1117;

15. For restitution to CollegeSource of any money or property, real or personal, which may have been acquired by means of AcademyOne's unfair competition, pursuant to Cal. Bus. & Prof. Code §17203;

16. For injunctive and other equitable relief, including, but not limited to, preliminary and permanent injunctions, forfeiture or seizure of CollegeSource's Digitized Information, and a constructive trust over any property which constitutes or is derived from CollegeSource's Digitized Information, pursuant to 18 U.S.C. §1030(g) and Cal. Pen. Code §502(e)(1);

17. For forfeiture of any computer, computer system, computer network, or any software or data, owned by AcademyOne, that is used during the commission of any violation of Cal. Pen. Code §502(c) or any computer, owned by AcademyOne, which is used as a repository for the storage of software or data illegally obtained in violation Cal. Pen. Code §502(c);

18. For an order enjoining Academy One from the further violation of 15 U.S.C. §1114 and 15 U.S.C. §1125(a), and directing AcademyOne to file with the Court and serve upon CollegeSource a report in writing under oath setting forth in detail the manner and form in which AcademyOne has complied with the injunction, pursuant to 15 U.S.C. §1116;

19. For an order enjoining AcademyOne from continuing to engage, use, or employ any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code;

20. For such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by AcademyOne of any act or practice which

1     constitutes unfair competition, pursuant to Cal. Bus. & Prof. Code §17203;

2          21.     For all appropriate equitable relief, including preliminary and permanent

3     injunctive relief, constructive trust, seizure and forfeiture;

4          22.     For cancellation of USPTO Registration No. 3795258, pursuant to 28 U.S.C.

5     §2201, and 15 U.S.C. §§1064 and 1119, for reason of fraud on the USPTO;

6          23.     For cancellation of USPTO Registration No. 3795258, pursuant to 28 U.S.C.

7     §2201, and 15 U.S.C. §§1064 and 1119, for reason that "CollegeTransfer.net" is generic;

8          24.     For cancellation of USPTO Registration No. 3795258, pursuant to 28 U.S.C.

9     §2201, and 15 U.S.C. §§1064 and 1119, for reason that AcademyOne does not have trademark

10     rights or service mark right in "CollegeTransfer.net";

11          25.     For payment of CollegeSource' reasonable attorney fees, to the extent allowed by

12     law, including, but not limited to, Cal. Pen. Code §502(e)(2) and 15 U.S.C. §1117;

13          26.     For CollegeSource's costs of suit;

14          27.     For pre-judgment and post-judgment interest, as permitted by law;

15          28.     For a jury trial on all claims so triable;  and

16          29.     For such other and further relief as the Court may deem necessary or appropriate.

17     Dated: October 21, 2011

                                  Respectfully submitted by,

18

19                           LAW OFFICES OF DARREN J. QUINN
                            DARREN J. QUINN
                            ALEXANDER E. PAPAEFTHIMIOU

20                           12702 Via Cortina, Suite 105
                          Del Mar, CA 92014

21                           Telephone: (858) 509-9401

22                           WILLIAM F. WOODS

23                               s/s William F. Woods

24                             William F. Woods

25                           750 State St #310
                          San Diego, CA, 92101

26                           Tel: (610) 742-5000

27                           *Attorneys for Plaintiff COLLEGESOURCE, INC.*

28

1

## DEMAND FOR A JURY TRIAL

2       Plaintiff COLLEGESOURCE, INC. demands a trial by jury on all causes of action and

3   issues so triable.

4

Dated: October 21, 2011

5                                               Respectfully submitted,

6                                               LAW OFFICES OF DARREN J. QUINN
                                                DARREN J. QUINN
7                                               ALEXANDER E. PAPAEFTHIMIOU
                                                12702 Via Cortina, Suite 105
8                                               Del Mar, CA 92014
                                                Telephone: (858) 509-9401
9
                                                WILLIAM F. WOODS
10

11                                                ___/s/ William F. Woods_____
                                                     William F. Woods
12
                                                750 State St #310
13                                              San Diego, CA, 92101
                                                Tel: (610) 742-5000
14
                                                *Attorneys for Plaintiff COLLEGESOURCE, INC.*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2

I am employed in the County of San Diego, State of California.  I am over the age of 18 and am not a party to the within action; my business address is: <u>12702 Via Cortina, Suite 105, Del Mar,</u>

3

<u>CA, 92014</u>.

4

I served the foregoing documents described as:

5

- **SECOND AMENDED COMPLAINT**

6

The following are those who are currently on the list to receive e-mail notices for this case.

7

**John Peter Cooley**
jpcooley@duanemorris.com,meschulte@duanemorris.com

8

**Karen Shichman Crawford**
kscrawford@duanemorris.com,meschulte@duanemorris.com

9

**Aliza R. Karetnick**
akaretnick@duancemorris.com

10

**David Landau**
dlandau@duanemorris.com

11

12

**Alexander E Papaefthimiou**
alex@dqlaw.com,dq@dqlaw.com

13

**Darren James Quinn**
dq@dqlaw.com,dquinn@quinnattorney.com

14

15

**William Frederick Woods**
bill@wfwoods.com,payback@ureach.com

16

17

I served the foregoing documents upon the interested parties in this action that are not on the list to receive email notices for this case by placing

18

19

No manual recipients.

20

[]      **BY REGULAR MAIL** by depositing such envelope with postage thereon fully prepaid in the United States mail at Del Mar, California.

21

I declare under penalty of perjury that the foregoing is true and correct under the laws of the United States.

22

23

Dated: October 22, 2011 at Del Mar, California.

24

/s/ Darren J. Quinn
Darren J. Quinn

25

26

27

28