1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

COLLEGESOURCE, INC.,

CASE NO. 08CV1987-GPC(MDD)

11

Plaintiff,

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

12

vs.

13

ACADEMYONE, INC.,

[Dkt. No. 251.]

14

Defendant.

15
16

    Before the Court is Defendant's motion for summary judgment. (Dkt. No. 251.)

17

Plaintiff filed an opposition on August 21, 2015. (Dkt. No. 273.)  Defendant filed a

18

reply on August 28, 2015. (Dkt. No. 276.)  A hearing was held on September 17, 2015.

19

(Dkt. No. 282.)  Darren Quinn, Esq. and William Woods, Esq. appeared on behalf of

20

Plaintiffs, and David Landau, Esq. and Aliza Karetnick, Esq. appeared on behalf of

21

Defendants.   After a review of the briefs, supporting documentation, the applicable

22

law, and hearing oral argument, the Court GRANTS Defendant's motion for summary

23

judgment.

24

**Procedural Background**

25

    On  October  27,  2008,  Plaintiff  CollegeSource,  Inc.  ("Plaintiff"  or

26

"CollegeSource" or "CS") filed this action against Defendant AcademyOne, Inc.

27

("Defendant" or "AcademyOne" or "A1") alleging numerous causes of action based on

28

Defendant's alleged improper access and use of Plaintiff's databases.  On August 24,

2009, the Court granted Defendant's motion to dismiss for lack of personal jurisdiction.[1] (Dkt. No. 93.) On September 21, 2009, Plaintiff filed a notice of appeal of the district court's order granting motion to dismiss for lack of personal jurisdiction. (Dkt. No. 99.)

While this case was dismissed and on appeal with the Ninth Circuit, on July 20, 2010, CollegeSource filed a separate complaint against AcademyOne in the United States District Court for the Eastern District of Pennsylvania alleging similar causes of action. See CollegeSource, Inc. v. AcademyOne, Inc., Case No. 10-CV-3542 (E.D. Pa., filed July 20, 2010) ("the Pennsylvania Action"). In the Pennsylvania Action, CollegeSource asserted the following nine causes of action in its first amended complaint: (1) violation of U.S. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964; (2) violation of U.S. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964; (3) violation of U.S. Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (4) breach of contract; (5) unjust enrichment; (6) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; and (7) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (8) declaration of trademark invalidity due to fraud on U.S. Patent and Trademark Office; and (9) false advertising under the Lanham Act, 15 U.S.C. § 1125(a). (Dkt. No. 278, D's RJN, Ex. B.)

In this action, CollegeSource asserts the following ten causes of action in its second amended complaint: (1) violation of the U.S. Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g); (2) violation of California's Comprehensive Computer Data Access and Fraud Act ("CCDAFA"), Cal. Penal Code § 502(e); (3) breach of contract; (4) misappropriation; (5) unjust enrichment; (6) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (7) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (8) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (9) declaration of trademark invalidity, 28 U.S.C. § 2201; 15 U.S.C. §§ 1064, 1119; and

---

[1] District Judge Marilyn L. Huff ruled on the motion to dismiss prior to the case being transferred to the undersigned judge on October 4, 2012. (Dkt. No. 164.)

(10) violation of California's unfair competition statute, Cal. Bus. & Prof. Code §§ 17200 *et seq*. (Dkt. No. 115.)

The district court in the Pennsylvania Action dismissed the RICO claims in May 2011. (Dkt. No. 275, SUF No. 3.) AcademyOne then filed a motion for summary judgment on the remaining nine claims on February 27, 2012. (Pennsylvania Action, 10cv3542-MAM, Dkt. No. 164.) After full briefing, the Pennsylvania district court held a hearing on AcademyOne's motion on June 13, 2012. (Id., Dkt. No. 206.) On September 21, 2012, after the motion for summary judgment was fully briefed and after having heard oral argument, CollegeSource filed a motion for leave to supplement its opposition to Defendant's motion for summary judgment and conduct additional discovery based on newly uncovered evidence. (Id., Dkt. No. 222.) On September 27, 2012, the Pennsylvania district court denied Plaintiff's motion. (Id. Dkt. No. 225.) On October 25, 2012, the district court in the Pennsylvania Action granted Defendant AcademyOne's motion for summary judgment in its entirety. (Id., Dkt. No. 226; CollegeSource, Inc. v. AcademyOne, Inc., No. 10-3542, 2012 WL 5269213 (E.D. Pa. Oct. 25, 2012.) On November 2, 2012, CollegeSource filed a notice of appeal with the Third Circuit. (Pennsylvania Action, 10cv3542-MAM, Dkt. No. 228.)

Meanwhile, in this case, on October 15, 2012, CollegeSource filed an amended motion for partial summary judgment on the merits of its case.[2] (Dkt. No. 172.) On March 8, 2013, AcademyOne filed an opposition to Plaintiff's motion for summary judgment which included an expert report by its expert, Paul Lewis, dated March 8, 2013. (Dkt. No. 215, Landou Decl., Ex. A, Lewis' Rebuttal Expert Report (filed Under Seal).) On March 29, 2013, Plaintiff filed objections to Lewis' Report. (Dkt. No. 219.)

On November 28, 2012, AcademyOne filed a motion for summary judgment alleging claim and issue preclusion based on the district court's ruling granting its motion for summary judgment in the Pennsylvania Action. (Dkt. No. 186.) On March

---

[2] On September 26, 2011, the Ninth Circuit reversed the district court's decision and remanded the case to the district court. (Dkt. No. 110.)

11, 2013, CollegeSource filed a motion to stay and a motion to refer summary judgment related motion to Magistrate Judge Mitchell D. Dembin for report and recommendation. (Dkt. Nos. 204, 207.) On April 15, 2013, the Court granted Plaintiff's motion to stay the case pending a ruling by the Third Circuit. (Dkt. No. 230.) On April 16, 2013, the Court terminated all pending motions subject to reopening once the stay was lifted. (Dkt. No. 231.)

On February 5, 2015, the Third Circuit affirmed the district court's grant of summary judgment in favor of Defendant. CollegeSource, Inc. v. AcademyOne, Inc., 597 F. App'x 116 (3d Cir. 2015). On March 5, 2015, the Third Circuit denied Plaintiff's petition for rehearing by the panel and the court en banc. (Pennsylvania Action, 10cv3542, Dkt. No. 233.) On May 14, 2015, Plaintiff informed the Court it would not file a petition for certiorari with the United States Supreme Court. (Dkt. No. 245.)

On May 28, 2015, the Court granted the parties' joint motion to lift the stay and set a telephonic status conference. (Dkt. No. 247.) At the status hearing, the Court indicated it would first rule on Defendant's motion for summary judgment on claim preclusion based on the judgment in the Pennsylvania action before ruling on Plaintiff's motion for partial summary judgment concerning liability. (Dkt. No. 252 at 5.[3]) Subsequently, the Court set a briefing schedule on Defendant's motion for summary judgment based on claim preclusion. (Dkt. No. 249.)[4]

Defendant filed a motion for summary judgment on June 8, 2015. (Dkt. No.

---

[3]All page numbers are based on the CM/ECF pagination.

[4]At the hearing, Plaintiff raised a discovery issue, and the Court directed the parties to the Magistrate Judge. (Dkt. No. 252.) On June 16, 2015, the parties filed a joint motion for determination of a dispute regarding production of material considered by Defendant's expert Paul Lewis in his expert report, (Dkt. No. 215), submitted in opposition to Plaintiff's motion for partial summary judgment in March 2013. (Dkt. No. 253.) On June 22, 2015, the Magistrate Judge denied the joint motion for discovery dispute regarding materials considered by Defendant's expert. (Dkt. No. 254.) On August 12, 2015, the Court overruled Plaintiff's objections to the Magistrate Judge's order. (Dkt. No. 272.)

251.)  On August 21, 2015, Plaintiff filed an opposition.  (Dkt. No. 273.)  On August 28, 2015, Defendant filed a reply.  (Dkt. No. 276.)

## Factual Background

The facts are taken from the Third Circuit opinion in CollegeSource, Inc., 597 F. App'x at 120-21.

> CS touts itself as "the pioneer of the digital college course catalog and college transfer credit industry."  CS's main product is the "CollegeSource Online" database, which allows paying subscribers and trial users to search and inspect over 50,000 digital course catalogs and related documents culled by CS from the offerings of colleges across the country. CS has long undertaken efforts to prevent, or enable the detection of, duplication or use of its materials by potential competitors. For instance, throughout the period at issue here, CS embedded in its catalog files an unavoidable "splash page" alerting the user that the catalog originated from CS, and a full-page "Copyright and Disclaimer," which states that "CollegeSource digital catalogs are derivative works owned and copyrighted by CollegeSource, Inc. . . . Catalog content is owned and copyrighted by the appropriate school," The notice also declares that distribution and noncommercial use are prohibited.

> Users of CollegeSource Online must check a box that states, "By signing in above, I agree to be bound by the terms of the . . . Subscription Agreement."  The hyperlinked Subscription Agreement states: "This Subscriber Agreement and Terms of Use govern your use of CollegeSource Online, TES, and, unless other terms and conditions expressly govern, any other electronic services from CollegeSource, Inc. that may be made available from time to time . . . ."The agreement also states that commercial use of the data is prohibited.

> Along with CollegeSource Online, CS offers a service known as "CataLink," which allows colleges to store their catalog information on CS's servers and link to that information from their websites, rather than hosting the information themselves. Since CataLink's inception, 110 schools have paid to use that service. Course catalogs accessed via CataLink, like those accessed via CollegeSource Online, contain the aforementioned Copyright and Disclaimer.

> A1 was founded by Appellee David Moldoff in 2005 as a free online alternative to CS. In 2006, Moldoff approached CS to inquire whether A1 could purchase or license the contents of CS's database, but he was rebuffed. A1 then hired Beijing Zhongtian-Noah Sports Science Co., Ltd. (Noah), an independent Chinese subcontractor, to obtain course catalogs by downloading them directly from individual schools' websites. A1 also pursued an in-house effort to obtain course catalogs in the same way. By the time its database launched in early 2007, A1 had amassed course catalogs from roughly 4,000 schools, most of which originated from Noah's collection efforts.

> A week after the debut of A1's database, CS sent a cease-and-desist letter to A1 alleging over 700 instances of copyright infringement and

1
2
3
4
5
6
7

directing A1 to remove the infringing materials from its website. After a brief review, A1 discovered that CS's allegations were largely correct. In an email to CS's president, Moldoff explained that A1 had "removed ALL course catalog PDF files as of this afternoon and are working to determine actually how many catalogs are in question have [sic] your copyright statement." Moldoff also wrote that A1 would "honor [CS's] request and remove the content." A1 immediately disabled public access to the database and made efforts to remove materials that had originated with CS. This task proved technically challenging, and the record reflects that as late as 2010, A1 discovered additional documents on its servers that contained CS's Copyright and Disclaimer.

8    Id. at 120-21 (citations to the record omitted).

9                                    **Discussion**

10   **A.     Requests for Judicial Notice**

11          Under Federal Rule of Civil Procedure ("Rule") 201, "[t]he court may judicially

12   notice a fact that is subject to reasonable dispute because it (1) is generally known

13   within the court's territorial jurisdiction; or (2) can be accurately and readily

14   determined from sources whose accuracy cannot reasonably be questioned." Fed. R.

15   Civ. P. 201(b). The court may take judicial notice of "court filings and other matters

16   of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.

17   6 (9th Cir. 2006).

18          Here, AcademyOne filed requests for judicial notice in the motion for summary

19   judgment, (Dkt. No. 278), and its reply, (Dkt. No. 279). CollegeSource filed an

20   objection to the request for judicial notice filed as part of AcademyOne's reply because

21   it is "new evidence" presented in a reply to a motion for summary judgment. (Dkt. No.

22   281.) These documents are all publically filed documents in the prior Pennsylvania

23   action. It also objects to AcademyOne's incorporation by reference concerning

24   discussion and reference to documents filed concerning the history of the parties'

25   discovery issues in the Pennsylvania Action that was filed in opposition to

26   CollegeSource's Objection to Judge Dembin's order. (Dkt. Nos. 266,[5] 267.)

27

28          [5]CollegeSource argues that the Court, when ruling on the Magistrate Judge's ruling, denied Defendant's request for judicial notice and so it cannot now rely on these documents. The Court notes that it did not deny Defendant's request for judicial notice

1   CollegeSource does not dispute the accuracy of the documents, that were filed

2   in the Pennsylvania district court and Third Circuit, but makes arguments asserting that

3   these documents are "new evidence" raised in a reply or that the Court previously

4   denied a request for judicial notice.  However, in order for the Court to determine

5   whether issues were fully and fairly litigated, the Court should take judicial notice of

6   the record in the prior case.  See id. ("To determine what issues were actually litigated

7   in the . . . [prior case] we take judicial notice of Plaintiffs' briefs in those courts and the

8   transcripts. . . ."). Accordingly, the Court GRANTS Defendant's requests for judicial

9   notice filed in support of its motion for summary judgment and also its reply.

10   Plaintiff also objects to arguments raised in AcademyOne's reply concerning

11   "CollegeSource Had Full and Fair Opportunity to Litigate" as constituting a "new

12   issue" that Defendant failed to offer in its moving papers.[6] (Dkt. No. 276 at 6-10.) The

13   Court disagrees with CollegeSource's contention.  AcademyOne raised the issue of

14   "full and fair opportunity to litigate" in response to Plaintiff raising the issue in its

15   opposition.  Therefore, the Court overrules Plaintiff's objections as to the arguments

16   raised by AcademyOne concerning "full and fair opportunity to litigate."

17   **B.    Legal Standard on Motion for Summary Judgment**

18   Summary judgment is appropriate if the "pleadings, depositions, answers to

19   interrogatories, and admissions on file, together with the affidavits, if any, show that

20   there is no genuine issue as to any material fact and that the moving party is entitled

21   to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material when it

22   
_____

23   on the merits but only because it was not relevant in ruling on the discovery motion.

24   (Dkt. No. 272 at 10.)

25   [6]It appears that Plaintiff raises this as an issue because it argues that Defendant has the burden to demonstrate "full and fair opportunity to litigate."  If Defendant's argument on "full and fair opportunity to litigate" was excluded, it would not have met

26   its burden.  However, the United States Supreme Court stated that the party opposing res judicata "must be permitted to demonstrate, if he can, that he did not have a 'fair

27   opportunity procedurally, substantively and evidentially to pursue his claim the first time.'" Blonder-Tongue Labs., Inc. v. Univ. of Illinois Fdn., 402 U.S. 313, 333 (1971).

28   Therefore, the burden is on CollegeSource to demonstrate it did not have a "full and fair opportunity" to litigate in the prior Pennsylvania Action.

affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**C.    Whether AcademyOne was Required to Plead the Affirmative Defense of Res Judicata**

CollegeSource argues that AcademyOne waived its argument on res judicata because it failed to assert it as an affirmative defense by not asserting it in its answer and failing to file an amended answer subsequent to the Pennsylvania district court's order on summary judgment.  AcademyOne disagrees arguing that it could not have raised the preclusion defense in its answer filed on November 4, 2011 because the defense did not come to fruition until October 25, 2012 when the Pennsylvania court entered judgment.  Moreover, it argues that the affirmative defense of res judicata can be raised for the first time on summary judgment.

Rule 8 lists res judicata as an affirmative defense that is waived if not pled in the answer.  Fed. R. Civ. P. 8(c).  The purpose of Rule 8(c) is to give the opposing party notice and a chance to dispute its application.  Blonder-Tongue Labs., Inc. v. Univ. of Illinois Fdn., 402 U.S. 313, 350 (1971).  In Clements, the Ninth Circuit noted that the res judicata defense is waived if it is not raised in the pleadings and the defendant failed "to object to the prosecution of dual proceedings while both proceedings are pending . . . ."  Clements v. Airport Auth. of Washoe Cty., 69 F.3d 321, 328 (9th Cir. 1995).  In Clements, the Court held that the waiver should be applied to the defendants because the claim preclusion defense was not in their responsive pleadings, the defendants did not raise the issue in district court and in the brief originally filed in the Ninth Circuit, and was only raised in supplemental briefs filed three months after oral argument before the Ninth Circuit.  Id. at 328-29.

The Ninth Circuit has liberalized the requirement that defendants must assert affirmative defenses in the initial pleadings.  Magana v. Commnweath of the Northern Mariana Islands, 107 F.3d 1436, 1446 (9th Cir. 1997).  As long as the plaintiff is not prejudiced, res judicata may be raised for the first time on summary judgment.  Id.;

[08CV1987-GPC(MDD)]

Owens v. Kaiser Fdn. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001).

Here, in September 2011, AcademyOne raised a collateral estoppel argument in its opposition to CollegeSource's motion to dismiss, transfer or stay, and in support of its cross-motion to enjoin CollegeSource in the Pennsylvania Action. (Dkt. No. 279, D's Reply RJN, Ex. A at 47.)  Defendant raised the issue of preclusion in its reply to its cross-motion to enjoin CollegeSource filed on October 3, 2011. (Dkt. No. 279, D's Reply RJN, Ex. C at 121.)  In this case, Defendant raised the issue of collateral estoppel in its motion to transfer, and its reply filed in this Court on November 22, 2011 and December 12, 2011. (Dkt. No. 121-1 at 29; Dkt. No. 131 at 2-5.)  The issue was again raised in its ex parte application to extend stay filed on June 15, 2012. (Dkt. No. 149-1 at 4.)  On September 14, 2012, Defendant raised the preclusion issue in its motion to extend stay. (Dkt. No. 155-1 at 4.)  Moreover, in 2012, CollegeSource acknowledged the potential preclusive effect of a judgment in the Pennsylvania Action.  (Dkt. No. 279, D's Reply RJN, Ex. F ¶ 3; Ex. G ¶¶ 5, 8-9, Ex. H at 2-3.)  The preclusion issue was raised in both proceedings, and CollegeSource cannot argue that it was without notice concerning this affirmative defense.

Since Plaintiff was aware of the issues of claim and issue preclusion during the proceedings in both cases, raising the affirmative defense in its instant motion for summary judgment does not prejudice Plaintiff.  See Owens, 244 F.3d at 713.  The Court concludes that AcademyOne has not waived its affirmative defense of claim and issue preclusion.

**D.    Claim Preclusion and "Full and Fair Opportunity to Litigate"**

AcademyOne argues that claim preclusion bars CollegeSource from litigating the seven claims in this case that were also asserted and ruled on in the Pennsylvania Action.  Plaintiff does not deny that it asserted and did not succeed on the seven causes of action filed in the Pennsylvania Action.[7]  Instead, Plaintiff argues that claim and

---

[7]In fact, Plaintiff does not address or oppose Defendant's argument that the seven causes of action in the Pennsylvania action meet the requirements of claim preclusion, including an identity of claims.

issue preclusion do not apply because it did not have a full and fair opportunity to litigate in the Pennsylvania Action.

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980) (citation omitted). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Id. (citation omitted). "Res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Id. The Court applies the federal law of claim preclusion when considering the preclusive effect of a federal court judgment. First Pacific Bancorp., Inc. v. Helfer, 224 F.3d 1117, 1128 (9th Cir. 2000).

The Ninth Circuit prefers the use of the terms claim preclusion and issue preclusion. Robi v. Five Platters, Inc., 838 F.2d 318, 321-22 (9th Cir. 1988).

> The doctrine of "claim preclusion" bars the relitigation of a claim, even if the particular theories of recovery or defenses raised in the second proceeding were not actually litigated in the first action. Claim preclusion is also known as the doctrine of merger and bar, and is synonymous with "res judicata" when that expression is used in a narrow sense. The doctrine of "issue preclusion" bars the relitigation of all issues that were litigated in a prior proceeding, even if the second proceeding is an action on a claim different from the one asserted in the first action. Issue preclusion encompasses the doctrines of direct and collateral estoppel.

Shaw v. State of California, 788 F.2d 600, 605 (9th Cir. 1986).

Claim preclusion or res judicata requires "(1) an identity of claims, (2) a final judgment on the merits and (3) privity between parties." Turtle Island Restoration Network v. U.S. Dep't of State, 673 F.3d 914, 917 (9th Cir. 2012) (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.2d 1064, 1077 (9th Cir. 2003)). Under claim preclusion, a plaintiff is expected to "present in one suit all the claims for relief that he may have arising out of the same transaction or

occurrence." U.S. Indus., Inc. v. Blake Constr. Co., Inc., 765 F.2d 195, 205 (D.C. Cir. 1985) (citation omitted).  The burden is on the party asserting claim preclusion to demonstrate its application.  In re Associated Vintage Group, Inc., 283 B.R. 549, 562 (9th Cir. 2002).

Claim preclusion cannot be used as a bar "when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." Kremer v. Chemical Const. Corp., 456 U.S. 461, 480-81 & n.22 (1982); Shaw v. State of Cal. Dept. of Alcoholic Beverage Control, 788 F.2d 600, 606 (9th Cir. 1986) (citing Kremer, 456 U.S. at 482-83 & n. 22) ("The Supreme Court has held that neither claim nor issue preclusion can be applied by a federal court if there was not a full and fair opportunity to litigate in the state proceeding.").

While cases hold that the moving party has the burden to demonstrate the affirmative defense of claim preclusion, the Court in Blonder-Tongue Labs., Inc. stated that the plaintiff "must be permitted to demonstrate, if he can, that he did not have 'a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time'" Blonder-Tongue Labs., Inc., 402 U.S. at 333 (res judicata); Lewis v. Parker, 67 F. Supp. 3d 189, 201 (D.D.C. 2014) (quoting Blonder-Tongue) (as to issue preclusion). "The party opposing collateral estoppel has the burden of establishing the absence of a full and fair opportunity to litigate the issues in the prior suit." Hickerson v. City of New York, 997 F. Supp. 418, 423 (S.D.N.Y. 1998) (citing In re Sokol, 113 F.3d 303, 306 (2d Cir. 1997)).

In Blonder-Tongue, the Supreme Court announced factors to be considered in determining whether a party had a full and fair opportunity to litigate in the prior suit and include considerations of "choice of forum," incentive to litigate," " whether . . . the prior case was one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in suit," "whether without fault of his own the patentee was deprived of crucial evidence or witnesses in the first litigation," and whether the prior court purported to employ the applicable legal standard.

Blonder-Tongue, 402 U.S. at 333-34; see also Stevenson v. Sears, Roebuck & Co., 713 F.2d 705, 709 (Fed. Cir. 1983); Westenberg v. CNF Trans., Inc., No. CIV. 98-1514-AS, 1999 WL 571231, at *6 (D. Or. 1999).  The decision rests with the trial court's "sense of justice and equity."  Id. at 334.  Rejecting the plaintiff's argument that the district court had discretion to deny estoppel, the Fifth Circuit explained that "the only discretion left to the district court's 'sense of equity and justice' by Blonder-Tongue is in the determination of whether the plaintiff had a full and fair opportunity to litigate in the prior suit." Blumcraft of Pittsburgh v. Kawneer Co., Inc., 482 F.2d 542, 547 (5th Cir. 1973); Mississippi Chem. Corp. v. Swift Agric. Chems. Corp., 717 F.2d 1374, 1379 (Fed. Cir. 1983) ("The judge cannot permit relitigation because of equitable considerations.").  A determination of whether the plaintiff had a full and fair opportunity to litigate does not involve "reconsideration of the merits of the claim or issue." Epstein v. MCA, Inc., 179 F.3d 641, 649 (9th Cir. 1999).  "Blonder-Tongue predicated the application of collateral estoppel not on whether the prior finding of invalidity was 'correct' but rather on whether the plaintiff had 'a full and fair opportunity to litigate' in the prior suit asserted as a bar." Blumcraft of Pittsburgh, 482 F.2d at 546.

In its motion, instead of citing to the factors announced in Blonder-Tongue, Defendant cites to the standard announced in Kremer, that the prior judgment need only "satisfy the minimal procedural requirements of the Fourteenth Amendment's Due Process Clause."  Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481 (1982). "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." Kremer, 456 U.S. at 481 (citations omitted).  The Ninth Circuit has not distinguished between the "full and fair opportunity" standard outlined in Blonder-Tongue with the due process standard announced in Kremer.  Kremer involved a prior adjudication in state court based on the full faith and credit clause under 28 U.S.C. § 1738.  On the other hand, the Blonder-Tongue case dealt with a prior adjudication in federal court.  While the

Court in <u>Kremer</u> distinguished between previous actions litigated in state court and federal court, it did not limit or distinguish its holding from <u>Blonder-Tongue</u>. <u>Kremer</u>, 456 U.S. at 482; <u>see also</u> <u>Brown v. St. Louis Police Dept. of City of St. Louis</u>, 691 F.2d 393, 395 (8th Cir. 1982) (noting the distinction announced in <u>Kremer</u>).

Since this Court is reviewing a prior adjudication in federal court, the Court finds it appropriate to apply the standard announced in <u>Blonder-Tongue</u>. <u>See</u> <u>Moore v. Rees</u>, No. 06cv22-KKC, 2007 WL 2809844, at *10 n.3 (E.D. Ky. Sept. 25, 2007) (applying <u>Kremer</u>'s "due process" standard to a prior adjudication in state court and noting that the <u>Blonder-Tongue</u> standard has no bearing on the "full and fair opportunity" exception as applied to prior state court decisions).

In its opposition, Plaintiff argues it did not have an opportunity to fully and fairly litigate in the prior action because it was deprived of crucial evidence, the Pennsylvania court failed to grasp a technical subject matter, and failed to apply the purported applicable legal standard. Defendant argues that the issues in the prior litigation were fully and fairly litigated which included "six months of discovery; a two-day preliminary injunction hearing; motion practice on eight discovery motions, a motion to dismiss, a motion to strike affirmative defenses, and a motion to transfer; and substantial briefing and oral argument on summary judgment." (Dkt. No. 276 at 6-7.)

## 1.    Deprived of Crucial Evidence

Plaintiff argues it was deprived of "crucial evidence" in the Pennsylvania Action "without fault of [its] own." First, Plaintiff asserts it was deprived of "crucial evidence" in the prior litigation that AcademyOne hacked CollegeSource's servers through unauthorized usernames/passwords of CollegeSource customers to take CollegeSource's catalogs. Second, CollegeSource contends that it was deprived of "crucial evidence" in the Pennsylvania Action concerning the deletion of 88,000 files from AcademyOne's Apple Server prior to AcademyOne producing a copy of its Apple server files to CollegeSource in discovery. Third, CollegeSource asserts that it was deprived of "crucial evidence" of AcademyOne's expert's copy of the Apple server that

apparently contains some or all of the over 88,000 deleted files.  At the hearing, Plaintiff stated that the crucial evidence concerning the "newly discovered evidence" by Stan Novak, College Source's Director of Operations, is limited to the causes of action for breach of contract, the CFAA and unjust enrichment in the Pennsylvania Action.  In reply, AcademyOne argues that CollegeSource is seeking a redetermination of discovery issues that were addressed by both the Pennsylvania district court and the Third Circuit.

On September 21, 2012, Plaintiff filed a motion for leave to supplement its opposition to Defendant's motion for summary judgment and conduct additional discovery in the Pennsylvania Action. (Pennsylvania Action, Case No. 10cv3542, Dkt. No. 222.)  This motion was filed after the motion for summary judgment was fully briefed and oral arguments were held on June 13, 2012. (Id., Dkt. No. 206.)  The motion consisted of over 69 pages, including a 31 page brief.  As part of its motion for leave, it attached the supplemental brief in support of its opposition which contained supplemental arguments in opposition to Defendant's motion for summary judgment based on the recently discovered evidence.  (Id., Dkt. No. 222-4.)  In its motion, CollegeSource argued that Stan Novak, CollegeSource's Director of Operations, had recently, in August 2012, discovered, by chance, "newly discovered evidence" on its server logs that Defendant used the username/password of CollegeSource subscribers, Bellmore Memorial Library, and Santa Fe College, to access CollegeSource's catalogs. (Dkt. No. 278, D's RJN, Ex. I at 305.)  In addition, Plaintiff argued that Defendant deleted about 14,000 native files from its Apple server on February 14, 2011 and that 88,000 files from Defendant's Apple Server were not produced and/or deleted  prior to producing it to Defendant on July 26, 2011. (Id. at 300, 306.)  CollegeSource also sought to reopen discovery to follow up on the discovery of new evidence. (Id. at 322-23.)  On September 27, 2012, the district court in Pennsylvania denied Plaintiff's motion to supplement the record with newly discovered evidence and to reopen discovery. (Pennsylvania Action, Case No. 10cv3542, Dkt. No. 225.)  The court

explained that the "newly discovered evidence" concern Defendant's Apple Server and Plaintiff's server logs and that the evidence was mostly found on Plaintiff's own servers that were in its control throughout the lawsuit. (Dkt. No. 278, Ex. K at 349-50.) In addition, the search engine Plaintiff used to locate the "newly discovered evidence" was available free on the internet since 2000. (Id. at 350.) The district court concluded that Plaintiff had not offered any reason "why it could not have done years ago all of the research it now relies on." (Id.)

CollegeSource appealed the district judge's denial of its motion and argued that the "newly discovered evidence" consisted of:

> (1) A1 and Noah "hacked into [CS's] server logging in, without authorization, via [CS's] paying subscribers' usernames/passwords"; (2) A1 "accessed [CS's] Website Terms of Use multiple times"; and (3) A1 "deleted over 88,000 electronic files from its server prior to its production in discovery to [CS] including files with very provocative names."

CollegeSource, Inc., 597 F. App'x at 124. The Third Circuit noted that CollegeSource attributed its failure to discover evidence earlier due to misleading disclosures or obstruction of justice by AcademyOne. Id. at 124-25.

> But Novak concedes that he was able to discover the evidence, on his own, during a "spot check[ ]" of the data on August 2, 2012, while employing a search technique that was technologically feasible throughout A1's possession of the data. (App.4827.) Novak then uncovered the remainder of the evidence over the following three weeks, again using search tools and methods that were available earlier. And crucially, despite having no apparent training or expertise in computer forensics, Novak states that he made the dubious decision not to enlist the help of CollegeSource's "computer expert," Michael Bandemer, in the company's review of these materials, which included roughly 1.6 billion server log entries and hundreds of gigabytes of data.

Id. at 125. The Third Circuit stated that the evidence at issue came from CollegeSource's own servers, and digital copies of AcademyOne's servers which were produced in discovery in July 2011. Id. at 124. The court noted that CollegeSource had possession of these materials months and in some cases, years before the discovery deadlines. Id. The Third Circuit held that the district court did not abuse its discretion when it excluded the proferred evidence and declined to reopen discovery because

Plaintiff failed to show good cause, pursuant to Rule 16(b)(4), for its failure to discover the materials during discovery. Id. at 125.

The cases Plaintiff cites in support of its argument are instances where the plaintiff procured newly discovered evidence after judgment and such evidence would alter the ruling of the prior judgment. See Charter Oak Fire Ins. Co. v. Electrolux Home Prods., 882 F. Supp. 2d 396, 403, 405 (E.D.N.Y. 2012) (Plaintiff obtained new evidence through its own investigation and motion to compel after judgment in prior case and that new evidence, had it been available in prior proceeding, could have changed the results); Jones v. Hamic, 875 F. Supp. 2d 1334, 1349-50 (M.D. Ala. 2012) (plaintiff obtained evidence, that defendants failed to disclose through criminal discovery proceedings, that cleared plaintiff of any wrongdoing). In Charter Oak Fire Insurance Co., the court concluded that the plaintiff did not have a full and fair opportunity to litigate in the prior action because, "(1) crucial evidence supporting plaintiff's claim was not produced by the defendant in the [prior] case even though it was responsive to plaintiff's discovery requests; (2) plaintiff did not learn of the failure to produce the information until after the [prior] trial; and (3) the evidence, if it had been produced by the defendant in the [prior] case, could have altered the outcome of that trial." Charter Oak Fire Ins. Co., 882 F. Supp. 2d at 398. Here, the alleged "newly discovered evidence" was known to Plaintiff prior to the judgment in the Pennsylvania Action, and Plaintiff has not argued or demonstrated that the evidence could have altered the outcome in the prior case. Therefore, the cases cited by Plaintiff do not support its contention.

The Ninth Circuit has not addressed specifically when a party is deprived of "crucial evidence" under Blonder-Tongue, so the Court has looked to other circuits and district courts to extract principles on this issue. A party cannot argue it did not have a full and fair opportunity to litigate where there is no indication that such evidence was not in existence or not available through no fault of its own. Dana Corp. v. NOK, Inc., 882 F.2d 505, 508 (Fed. Cir. 1989) (evidence appears to have been within the

[08CV1987-GPC(MDD)]

plaintiff's control and readily available in prior action). In determining whether a party was afforded a full and fair opportunity to present his case, one of the factors courts look at is the "presence of new evidence." Khandhar v. Elfenbein, 943 F.2d 244, 249 (2d Cir. 1991). "If significant new evidence is uncovered subsequent to the proceeding said to result in an estoppel of the present action, then it cannot be found that a party was afforded a full and fair opportunity to present his case in the absence of that evidence." Id. Since the new evidence was not actually before the prior tribunal, there can be no preclusion. Id. "Newly discovered evidence may preclude application of the collateral estoppel doctrine if the party against whom collateral estoppel is asserted was deprived of crucial evidence in the prior litigation without fault of his own." In re Georgia Granite Co., Inc., 86 B.R. 733, 739 (N.D. GA. 1988) (newly discovered evidence was not "new" since the evidence in question was known to the party and was a matter of public record).

The Sixth Circuit has stated that denial of "full-scale discovery" to plaintiffs does not mean that they lacked a full and fair opportunity to litigate their claim. United States v. Sandoz Pharms. Corp., 894 F.2d 825, 828 (6th Cir. 1990) (involving offensive collateral estoppel where plaintiff sought to foreclose defendant from litigating an issue the defendant previously litigated unsuccessfully.)  In rejecting the defendant's argument that it did not have a full and fair opportunity because it was denied discovery, the court noted that defendant "failed to identify any undiscovered essential fact relevant to this issue, to show that the denial of its discovery request was unfair, or to show that discovery could have led to a different result in either jurisdiction." Id. at 828; see also Porter v. Shah, 606 F.3d 809, 814 (D.C. Cir. 2010) (plaintiff received a full and fair opportunity to litigate where he was not afforded discovery or an evidentiary hearing, but was permitted to, and did, submit extensive documentary evidence); Hickerson v. City of New York, 997 F. Supp. 418, 424 (S.D.N.Y. 1998) ("[T]he 'full and fair opportunity' requirement does not entitle a party to unlimited discovery.") The court in Porter noted that discovery rulings are within the trial court's

discretion and a party is not entitled to discovery as a matter of right. Porter, 606 F.3d at 814.

In Selectron, Inc. v. American Tel & Tel. Co., 587 F. Supp. 856 (D. Or. 1987), the defendant claimed that it was deprived of crucial evidence because crucial evidence was unavailable or excluded from the prior trial. Id. at 866. The Court concluded that defendant was not deprived of the evidence "without fault of its own." Id. at 867. The defendant admitted it had much of the evidence, in its possession, during the prior litigation but chose not to use it. Id. In addition, the evidence was not crucial because the evidence would likely not change the outcome in a new trial. Id. Lastly, the defendant argued that the prior court improperly excluded an administrative ruling based on relevance grounds. Id. at 866. On appeal, the Second Circuit found that trial court erred because such evidence was "arguable probative" but held that the exclusion was not prejudicial. Id. Despite the Second Circuit's ruling, the district court held that the exclusion of the administrative decision did not warrant retrying the issue. Id.

In Jones v. United States, 122 Fed. Cl. 490 (July 30, 2015), the plaintiff argued that he was deprived of crucial evidence due to the mass spoilation of critical evidence in the prior action. Id. at 528. In the prior action, the spoilation issue was extensively litigated with extensive discovery, briefing and evidentiary hearing, and the judge determined that there was no failure by defendants to preserve evidence. Id. at 529. The court concluded that the plaintiffs had a fair and full opportunity to litigate the spoilation issues. Id.

Here, the Pennsylvania district court denied Plaintiff's motion to supplement its opposition to summary judgment, and reopen discovery. A telephonic conference was held to consider both parties' arguments after the court had received letters from both counsel concerning Plaintiff's request. (Dkt. No. 278, RJN, Ex. K at 349.) The issue was raised on appeal, and the Third Circuit affirmed the district court's ruling. The issues Plaintiff raises in this Court are the same as the issues raised in the Pennsylvania courts. Plaintiff should not be given a third attempt at making its argument in another

[08CV1987-GPC(MDD)]

court.  The same discovery issues were briefed and litigated in the Pennsylvania Action.  Therefore, Plaintiff's argument that it was denied a full and fair opportunity to litigate fails.

Moreover, the evidence Plaintiff argues was "crucial" was not "newly discovered evidence" since the discovery was based on its own server logs and AcademyOne's digitized Apple server which were both in the possession of Plaintiff prior to the discovery deadline.  Moreover, the issue of the alleged "newly discovered evidence" was presented to the Pennsylvania courts, considered and rejected.  See Khandhar, 943 F.2d at 249.  Therefore, for purposes of claim preclusion, the evidence was not "newly discovered" and Plaintiff's argument that it was denied crucial evidence is without merit.

Furthermore, Plaintiff has not demonstrated it was "without fault of its own." As noted by the district court in Pennsylvania, Plaintiff presented no reason why it could not have discovered the evidence earlier.  (Dkt. No. 278, D's RJN, Ex. K at 350.) Again, as  noted by the Third Circuit, Plaintiff was unable to demonstrate good cause why it failed to discover the materials during discovery.  CollegeSource, Inc., 597 F. App'x at 125.  In this case, Plaintiff has not provided any additional reasons, not raised in the Pennsylvania courts, why the discovery was not discovered earlier.  Plaintiff failed to conduct a comprehensive analysis of the servers and failed to exhaust all possible search vehicles during discovery.  Therefore, Plaintiff was not "without fault of [its] own."  See Blonder-Tongue Labs., Inc., 402 U.S. at 333.  Lastly, while Plaintiff argues it was deprived of "crucial evidence," Plaintiff has not alleged that the "crucial evidence" could have led to a different result.

While Plaintiff disagrees with the Pennsylvania courts ruling, this Court's role is not to reconsider the merits of the Pennsylvania district court's discovery decision but to assess whether Plaintiff had a full and fair opportunity to litigate this issue in the Pennsylvania Action.  Based on a review of the record, the Court concludes that the discovery issues were fully and fairly litigated in the Pennsylvania Action, and Plaintiff

1    was not "deprived of crucial evidence" "without fault of [its] own."  See id.

2        As to the third issue, CollegeSource argues it was deprived of discovery of
3    AcademyOne's expert's copy of the Apple server that apparently contained some or all
4    of the 88,000 files.  CollegeSource argues that Lewis, AcademyOne's expert, had a
5    forensic copy of Defendant's Apple server different from the Apple server that Plaintiff
6    had that was produced in discovery.  Plaintiff reaches this conclusion based on
7    statements in Lewis' report that certain files mentioned in Stan Novak's report were not
8    on Lewis' Apple server. (Dkt. No. 215, Lewis' Rebuttal Expert Report at 39-40 (under
9    SEAL).)  It contends that the Apple server produced in discovery as ACA-PA-3502 is
10   allegedly different from ACA-01-01-014 which Lewis references in his report.
11   Plaintiff notes that the Lewis Report references a copy of Defendant's Apple Server,
12   "ACA-01-01-014 with directory structure intact", which was not produced in discovery
13   in this action or the Pennsylvania Action. (Dkt. No. 260 at 12.) According to Plaintiff,
14   it was presented with ACA-PA 3502 "jumbled Apple Server native files (with no
15   directory structure) with all files in the root directory."[8]  (Dkt. No. 260 at 12 n.7.)

16       In the instant case, on October 15, 2012, CollegeSource filed an amended motion
17   for partial summary judgment. (Dkt. No. 172.) The Lewis expert report was submitted
18   with Defendant's opposition to Plaintiff's motion for summary judgment filed on
19   March 8, 2013. (Dkt. Nos. 198, 215.) On March 29, 2013, Plaintiff submitted
20   objections to exclude portions of Lewis' export report based on the failure to disclose
21   materials he relied on pursuant to Rules 56(c)(1), and 56(c)(4). (Dkt. No. 219.) It did
22   not seek discovery at that time. CollegeSource knew, at least since March 8, 2013, that
23   Lewis' copy of Defendant's Apple Server was allegedly different from Plaintiff's.

24   _____

25   [8]Based on the Court's review, it appears that ACA-PA-3502 and ACA-01-01-
     014 are referencing the same Apple server.  One is T&M Protection Resources', the
26   company Lewis worked with, identification system and the other is the Bates stamp,
     ACA-PA-3502. (Dkt. No. 215 at 39, 63 (UNDER SEAL).)  Lewis' report states,
27   "Bates ACA-PA 3502 (Apple Server) (identified by T&M as ACA-01-01-014)."
     Plaintiff does not cite the portion of Lewis' report where ACA-01-01-014 is referenced
28   as "ACA-01-01-014 with directory structure intact" or that ACA-PA 3502 are "jumbled
     Apple Server native files (with no directory structure)."  In fact, Lewis' report does not
     reference ACA-01-01-014 and ACA-PA3502 with these descriptions.

After Plaintiff learned about the alleged discrepancy concerning the Apple server considered by Lewis, in March 2013, Plaintiff could have and should have raised this issue with the Pennsylvania court.   By March 2013, the district court in the Pennsylvania Action had already granted Defendant AcademyOne's motion for summary judgment, (Pennsylvania Action, 10cv3542-MAM, Dkt. No. 226), and CollegeSource had already filed a notice of appeal with the Third Circuit.  (Id., Dkt. No. 228.)  In March 2013, the case was pending before the Third Circuit.

While the case was pending before the Third Circuit, Plaintiff was still within the time period to file a Rule 60(b) motion in district court.  Rule 60(b) motions can be filed, without leave, in district court, while an appeal has been filed.  See Standard Oil Co. v. United States, 429 U.S. 17, 19 (1976) (appellate leave not required for District Court to rule on Rule 60(b) motion); Venan v. Sweet, 758 F.2d 117, 123 (3d Cir. 1985) (while appellant's appeal is still pending, the proper procedure is for the appellant to file his motion in the district court, and if that court indicates that it will grant the motion, the appellant should then make a motion in the appellate court for a remand of the case in order the that district court may grant the motion); Werner v. Werner, 267 F.3d 288, 302 (2001) (dissent) ("Rule 60(b) is the method for accommodating new concerns created by new evidence" and this should be used "when new evidence is discovered following a judgment in a district court.")  Plaintiff's failure to pursue the discovery in the Pennsylvania court demonstrates that Plaintiff was not "without fault of [its] own."  See Blonder-Tongue Labs., Inc., 402 U.S. at 333.

The Court further notes that Plaintiff alleges Lewis "**may** have a copy of defendant's Apple Server that contains some or all of the over 88,000 files plaintiff claims were deleted prior to its production."  (Dkt. No. 260 at 14.)  Similarly, in the joint motion for determination of discovery dispute, Plaintiff argues the materials considered by Lewis "**may** be highly relevant for plaintiff to present evidence in opposition to defendant's summary judgment motion . . . ."  (Dkt. No. 253 at 6.)  This demonstrates that a request for discovery may not result in relevant discovery, or that

any discovery, if relevant, would have altered the outcome of the prior proceeding. Plaintiff does not argue that discovery of these materials would produce a different result.  See Charter Oak Fire Ins. Co., 882 F. Supp. 2d at 405 ("Having carefully analyzed the new evidence, the Court concludes that there is a reasonable likelihood that the new evidence, had it been available data in the [prior] litigation, could have changed the result in favor of plaintiff."); Jones, 875 F. Supp. 2d at 1349 (new evidence cleared plaintiff of any wrongdoing concerning reasons why employer fired her).  Plaintiff's failure to raise this issue in the Pennsylvania Action, at the time it was first learned in March 2013, precludes it from asserting that it did not have a full and fair opportunity to litigate the prior action.[9]

The Court concludes that CollegeSource was not deprived of "crucial evidence" in the prior litigation "without fault of [its] own."  See Blonder-Tongue, 402 U.S. at 333.

### 2.     Pennsylvania Courts Failed to Grasp a Technical Subject Matter

CollegeSource contends that the Pennsylvania courts failed to grasp the technical subject matter because it excluded the declaration of Stan Novak by commenting on its "complexity" and being "incomprehensible."   AcademyOne argues that the Pennsylvania courts did not fail to grasp a technical subject matter but excluded the declaration of Stan Novak as an untimely expert report.

In Blonder-Tongue, the Court noted an exception for when "the prior case was one of those relatively *rare* instances where the courts *wholly* failed to grasp the technical subject matter and issues in suit."  Blonder-Tongue Labs., Inc., 402 U.S. at

---

[9]Defendant also argues that the issue of whether its production of its Apple server was sufficient or that it deleted data on the server has been the subject of multiple discovery motions in the Pennsylvania court.  Plaintiff asserts that the discovery rulings in the Pennsylvania action are not relevant because it did not seek production of any documents considered by defendant's expert Paul Lewis. (Dkt. No. 268 at 11-12.)  Because these discovery disputes pre-date the discovery by Mr. Novak in August 2012, and Paul Lewis' expert report, the Court does not find these past discovery issues relevant to determining whether Plaintiff failed to fully and fairly litigate these "newly discovered evidence" in the prior case.  While  the discovery issues raised in the Pennsylvania Action are not relevant to the documents considered by Lewis, they do demonstrate that Plaintiff was litigating the prior case with vigor.

333 (emphasis added).  The Court noted that, "[w]e are also aware that some courts have frankly stated that patent litigation can present issues so complex that legal minds, without appropriate grounding in science and technology, may have difficulty in reaching decision." Id. at 331.  The Court further noted that even "assuming a patent case so difficult as to provoke a frank admission of judicial uncertainty, one might ask what reason there is to expect that a second district judge or court of appeals would be able to decide the issue more accurately." Id. at 331-32.  The application of this exception is rare.  See Blonder-Tongue Labs., 402 U.S. at 333; DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc., 70 F. Supp. 3d 808, 815 (E.D. Texas 2014) (exception based on lack of understanding of the technology by a district court is a "narrow one that will rarely be encountered").  This exception does not apply if the prior court reached a wrong result, misread a couple of documents, or misconstrued a patent's application. Miller Brewing Co. v. Joseph Schlitz Brewing Co., 605 F.2d 990, 993 (7th Cir. 1979) (reaching a wrong result);  Technograph Printed Circuits, Ltd. v. Martin-Marietta Corp., 474 F.2d 798, 806 n.12 (4th Cir. 1973) (district court misread a couple of documents among numerous patent documents); Wallace, Inc. v. United States, 496 F.2d 535, 541 (Ct. Cl. 1974) (mere difference in the conclusions reached does not amount to a court "wholly failed to grasp the technical subject matter"). The exception applies when a court "is faced with esoteric and complex subject matter beyond its experience and comprehension, which the Supreme Court thought might occur in some patent cases." Miller Brewing Co., 605 F.2d at 993.

CollegeSource argues that both the district court in Pennsylvania and the Third Circuit expressed that they failed to grasp the technical subject matter and the issues set forth in the Novak declaration and attached spreadsheets.  CollegeSource points to the district court's description of the spreadsheets attached to Novak's declaration as "voluminous spreadsheets" that "are also to a large extent incomprehensible."  (Dkt. No. 278, D's RJN, Ex. O at 416-17.)  In addition, CollegeSource cites to the Third Circuit's reference to the "complexity of the proferred materials" concerning the Novak

declaration and attached spreadsheets.  (Id., Ex. P at 428.)  Based on these assertions by the district court and the Third Circuit, CollegeSource argues that both courts "wholly failed to grasp the technical subject matter and issues in suit."  AcademyOne argues that the Novak declaration was excluded because it was an untimely expert testimony.

In an order filed on November 7, 2012, the district court added a footnote to its order on summary judgment that excluded the declaration of Stan Novak and an expert report of Danny Sullivan.[10]  (Id., Ex. O at 416-17.)  The footnote provides,

> In opposition to AcademyOne's motion for summary judgment, CollegeSource submitted a declaration of Stan Novak and an expert report of Danny Sullivan. AcademyOne has moved to preclude both. The Court will grant the motion. Both of these reports represent expert reports filed beyond the deadline for such reports. A party cannot use the filing of a summary judgment motion by the opposing party to prepare and serve expert reports.  That gives no time for the movant to rebut the reports and/or to take discovery of the new expert.  Attached to the declaration of Stan Novak are voluminous spreadsheets with very little explanation of them. To the extent the Court can even understand some of these exhibits, they appear to represent expert opinion or analysis of Mr. Novak of a variety of different types of data. To the extent these represent expert analyses, it is too late for their admission. Nor are they simply summaries of data. They are at a minimum a distillation or a synthesis of a variety of different types of documents.  They are also to a large extent incomprehensible.

(Id.)

On appeal, the Third Circuit held that the district court did not abuse its discretion "by categorizing these documents as belated expert submissions and excluding them on that basis."  (Dkt. No. 278, D's RJN, Ex. P at 429.)

The district court's opinion excluded the declaration of Stan Novak and the accompanying documents as an untimely expert report.  Both courts used the language "to a large extent incomprehensible", "voluminous spreadsheets", and "complexity" merely to describe the documents.  They were not excluded because they were incomprehensible or complex.  CollegeSource misconstrues the applicability of this

---

[10]The Court notes that CollegeSource challenged the district court's filing of its order adding a footnote addressing the Novak Declaration.

factor, and the Court concludes its argument is without merit.

Second, CollegeSource asserts that the Pennsylvania courts were unable to distinguish, and misapprehended, the distinction between CollegeSource's catalogs in AcademyOne's possession available through Catalink[11] versus username/password login. According to Plaintiff, such misapprehension supports a finding that both courts "wholly failed to grasp the technical subject matter and issues in suit." Plaintiff argues that both courts improperly concluded that AcademyOne obtained all of Plaintiff's course catalogs through CataLink. AcademyOne does not specifically address this issue except to generally assert that CollegeSource makes improper direct attacks on decisions in the Pennsylvania Action.

The issue of whether AcademyOne obtained Plaintiff's catalogs through a username/password login was not discovered until August 2012, when Novak accidentally came upon it, and Plaintiff subsequently filed a motion for leave to supplement opposition to Defendant's motion for summary judgment and conduct additional discovery. Since the Pennsylvania district court denied Plaintiff's motion, the issue of the username/password was not at issue in the court's ruling on summary judgment. Plaintiff even acknowledges that the issue was not before the Pennsylvania district court. (Dkt. No. 280, Pl's Am. Objections and Response to SUMF ¶ 25) ("As a result, the Pennsylvania Court had no evidence of A1's use of third party usernames and passwords when it granted A1's motion for summary judgment.) Therefore, the Pennsylvania district court and Third Circuit were only presented with whether AcademyOne accessed Plaintiff's catalog through CataLink because that was the only admissible evidence.

---

[11] "CataLink is a hyperlink service developed to assist schools in distributing course catalogs efficiently. CollegeSource provides subscribing schools with a URL hyperlink to CollegeSource's archive of that school's digital course catalogs, which can then be inserted and displayed on the school's home page. When an interested user seeks to browse past catalog titles, he clicks on the CataLink and is brought to CollegeSource's domain." (Dkt. No. 278, D's RJN, Ex. L at 354-55.) CataLink is not a subscriber service so users are directed to CollegeSource's website with no notice that they are leaving the school's Internet domain. (Id. at 355.)

[08CV1987-GPC(MDD)]

Plaintiff argues that the Pennsylvania district court and the Third Circuit, through inferences, should have concluded that AcademyOne accessed CollegeSource's catalogs through unauthorized means. (Dkt. No. 274, Quinn Decl. ¶ 46.) Prior to its opinion, the Third Circuit requested a letter brief from CollegeSource that sets "forth a comprehensive account of references in the record that establish exactly how many of the institutions using CS had catalogs available through the CataLink service." (Dkt. No. 274, Quinn Decl. ¶ 44.) On October 31, 2014, CollegeSource filed its letter brief and accompanying documents in a 37 page submission. (Dkt. No. 274, Quinn Decl. ¶ 45; Ex. P.) In a comprehensive letter brief, CollegeSource explained that the number of institutions using Catalink varied between 64 and 73 institutions depending on the date. (Dkt. No. 274, Quinn Decl. ¶ 45.). CollegeSource alleges it presented evidence that 1,374 catalogs were accessed by AcademyOne and that 344 specific catalogs were accessed and available on CataLink. (Id.) Therefore, it was impossible for at least 1,030 (1,374-344) of the catalogs in dispute to have been accessed through CataLink because the schools, as to the 1,030 catalogs, never used CataLink to publish their catalogs. (Id.) Moreover, of the 783 catalogs that AcademyOne admitted it accessed, only 215 of these catalogs could potentially have been accessed through CataLink. (Id.) According to CollegeSource, this raises the inference that at least 568 of the 783 catalogs were obtained through unauthorized access to CollegeSource's computer, through means other than CataLink. (Id. ¶ 46.) The fact that the Pennsylvania courts failed to pick up on this inference demonstrates that they failed to grasp a technical subject matter.

This issue concerning inferences based on the evidence presented was raised with the Third Circuit and it noted that as to AcademyOne's use of CataLink, "CS further argues that the District Court failed to draw certain inferences in CS's favor based on the contents of Novak's April declaration and the attached exhibits. . . . Because we have affirmed the District Court's exclusion of that evidence, CS's arguments are unavailing insofar as they rely upon it." (Dkt. No. 278, D's RJN, Ex. P

at 441 n. 9.)  Since the Novak declaration and attached spreadsheets were excluded, no evidence concerning the username/passwords were at issue in the Pennsylvania Action. This issue was again raised in its petition for rehearing without success.  (Dkt. No. 274, Quinn Decl. ¶ 49.)

The Court finds no merit in Plaintiff's claim that the Pennsylvania courts' failure to infer that AcademyOne accessed, without authorization, through username/password login, constitutes a failure on the part of the courts to fully grasp technical subject matter is without merit.  The Court notes that the fact that the Third Circuit requested additional briefing on the specific issue of the CataLink Service demonstrates that the Third Circuit did not wholly fail to grasp a technical subject matter.  Moreover, a disagreement as to a ruling by the Third Circuit is not a basis for the exception to apply.  See Epstein, 179 F.3d at 649.  Thus, CollegeSource has not shown that the courts in the Pennsylvania Action "failed to wholly grasp a technical subject matter" based on the evidence properly before it.

**3.    Whether the Pennsylvania Court Purported to Apply the Applicable Legal Standards**

First, Plaintiff argues that the district court and the Third Circuit failed to apply the applicable legal standard when it failed to address the excusable neglect prong of Rule 6(b)(1)(B) articulated in Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership, 507 U.S. 380, 395 (1993) when both courts denied CollegeSource's motion for leave to supplement its opposition to AcademyOne's motion for summary judgment and reopen discovery.

In its order denying Plaintiff's motion to supplement its opposition and reopen discovery, the district court in Pennsylvania provided reasons for the denial but did not cite any legal authority.  It explained that the "newly discovered evidence" concerns Defendant's Apple Server and Plaintiff's server logs and that the evidence was mostly found on Plaintiff's own servers that were in its control throughout the lawsuit.  (Dkt. No. 278, Ex. K at 349-50.)  In addition, the search engine Plaintiff used to locate the

[08CV1987-GPC(MDD)]

"newly discovered evidence" was available free on the internet since 2000. (<u>Id.</u> at 350.)  The district court concluded that Plaintiff had not offered any reason "why it could not have done years ago all of the research it now relies on." (<u>Id.</u>)  When CollegeSource raised the issue with the Third Circuit issue, it rejected CollegeSource's argument that the district court should have analyzed its motion to reopen discovery under Rule 6(b)(1)(B) and concluded that since the primary relief sought was reopening of the discovery period, the motion must be addressed under Rule 16(b). <u>CollegeSource, Inc.</u>, 597 F. App'x at 124 n.5.  Plaintiff argues that the Third Circuit applied the wrong standard in order to avoid addressing the excusable neglect prong.

Rule 6(b) states that "[w]hen an act may or must be done within a specified time, the court may, for good cause extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(A) & (B).  In <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380 (1993), the Court considered the meaning of the term "excusable neglect" in the specific context of a bankruptcy rule permitting a late filing of a proof of claim by a creditor if the failure to comply with the deadline was the result of excusable neglect.  <u>Id.</u> at 382-83.  The Ninth Circuit has adopted this "excusable neglect" standard for purposes of Rule 6(b).  <u>Comm. for Idaho's High Desert, Inc. v. Yost</u>, 92 F.3d 814, 825 n. 4 (9th Cir. 1996).   Under <u>Pioneer</u>, a "determination of whether neglect is excusable is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith ." <u>Bateman v. U.S. Postal Serv.</u>, 231 F.3d 1220, 1223-24 (9th Cir.2000) (citing <u>Pioneer</u>, 507 U.S. at 395).

Rule 16's "good cause" standard applies before modifying a pretrial motion or schedule and "primarily considers the diligence of the party seeking the amendment." <u>Johnson v. Mammoth Recreations</u>, 975 F.2d 604, 609 (9th Cir.1992). Good cause

exists if the party can show that the schedule "cannot reasonably be met despite the diligence of the party seeking the extension." Id.  Additionally, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. . . .If that party was not diligent, the inquiry should end," and the motion to modify should not be granted. Id.; see also Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (no abuse of discretion in denying a motion to modify the scheduling order where the party did not demonstrate diligence in complying with the dates set by the district court).

The Third Circuit concluded that the Rule 16 "good cause" standard applied to Plaintiff's motion to supplement opposition and to reopen discovery because, in essence, it was seeking to reopen discovery.  First, a district court has discretion to determine whether to grant or deny relief under Rule 6(b) and Rule 16(b). See Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 897 n. 5 (1990) (as to Rule 6(b)); Johnson, 975 F.2d at 607 (as to Rule 16).  Second, this Court's role is not to revisit the discovery rulings, even if erroneous, of the district court in Pennsylvania and the Third Circuit. See Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398–99 (1981) ("[a] judgment merely voidable because based on an erroneous view of the law is not open to collateral attack" as such a proposition would create uncertainty and confusion and would undermine the conclusive nature of judgments); Epstein, 170 F.3d at 649. Even if the Court were to consider the issue, under either standard, Plaintiff failed to demonstrate "good cause" or "excusable neglect" to supplement its opposition to summary judgment motion and to reopen discovery.  At the hearing, when the Pennsylvania district court asked why Plaintiff did not use Agent Ransack "months and months ago", counsel for Plaintiff stated, "Well I wish we had" and lamented that the files were enormous and lacked structure. (Pennsylvania Action, 10cv3542, Dkt. No. 219 at 8-9.)  After providing the parties an opportunity to present their arguments, the district judge later stated "I haven't heard any reason why all of this couldn't have been uncovered during the discovery period." (Id. at 13.)  These comments were part of the

[08CV1987-GPC(MDD)]

district court's reasoning in its decision.  (Dkt. No. 278, D's RJN, Ex. K at350.)  The decision also noted how the motion was brought after summary judgment had been fully briefed and oral arguments had been heard.  (Id.)  While the court did not cite to any legal standard, it provided reasons sufficient to deny Plaintiff's motion under both Rule 6(b) and Rule 16(b).

Plaintiff's argument is an attack on the alleged correctness of the decision by the Pennsylvania courts, and does not support its assertion that the Pennsylvania courts did not apply the applicable legal standard.  See Studiengesellschaft Kohle, mbH v. USX Corp., 675 F. Supp. 182, 187 (D. Del. 1987) (Even if the "Fifth Circuit's determination [in prior action] was in error, collateral estoppel is no less appropriate.").

CollegeSource also complains of the district court's ruling on its motion to supplement six days later "without any opposition by A1 or a hearing." (Dkt. No. 273 at 17.)  Plaintiff's argument is disingenuous.

In a letter dated August 30, 2012, defense counsel wrote a letter to the district judge in the Pennsylvania action concerning Plaintiff's allegation that it discovered newly discovered evidence. (Pennsylvania Action, Case No. 10cv3542, Dkt. No. 216.)  On September 7, 2012, Plaintiff's counsel wrote a letter in response explaining the alleged newly discovered evidence.  (Id., Dkt. No. 217.)  A hearing on this issue was held on September 11, 2012.  (Dkt. No. 219.)  At the hearing, the district judge heard the position of both parties and stated that based on what was before the Court, which were the two letters and arguments by both counsel, it was inclined to deny a motion if filed by Plaintiff but that Plaintiff was free to file a motion.  (Id.)  Based on arguments by defense counsel concerning costs of motion practice after the motion for summary judgment had been fully briefed and argued, the Court stated that if Plaintiff filed a motion for leave to supplement its opposition and conduct discovery, Defendant does not need to file an opposition unless ordered by the Court after its review.  (Id. at 18-19.)  Prior to the filing of Plaintiff's motion, the Court heard argument by the parties concerning the "newly discovered evidence."  On September 21, 2012, CollegeSource

[08CV1987-GPC(MDD)]

filed a motion for leave to supplement opposition to Defendant's motion for summary judgment and conduct additional discovery. (Id., Dkt. No. 222.)  With the Court's approval and direction, AcademyOne did not file an opposition.  Six days later, on September 27, 2012, the district court denied Plaintiff's motion for leave to supplement opposition. (Id., Dkt. No. 225.)  Plaintiff's argument that the district court in Pennsylvania ruled on Plaintiff's motion for leave to supplement, without an opposition, is akin to the court not applying the applicable legal standard is without merit.

Plaintiff also claims it received disparate and unfair treatment by the Pennsylvania courts.  Specifically, Plaintiff complains that the district court denied its motion for leave to supplement after the motion for summary judgment was fully briefed while, on the other hand, the district court granted Defendant's motion for leave to amend its answer in a similar procedural posture.  Defendant filed its motion for leave to amend its answer to add the affirmative defense of preemption after discovery had ended, after the motions cutoff deadline had passed, and after it filed its motion for summary judgment and Plaintiff had filed its opposition.  First, the Court's role is not to determine whether the Pennsylvania courts' judicial determinations are correct.  In addition, the Court notes that the legal standard to allow an affirmative defense of preemption is liberal.  Under Rule 12(h), the affirmative defense of preemption may be raised in any pleading allowed under Rule 7(a), by motion under Rule 12(c) or at trial.  Fed. R. Civ. P. 12(h)(2).  See Yumul v. Smart Balance, Inc., No. CV 10-927 MMM(AJWx), 2011 WL 1045555, at *5 (C.D. Cal. Mar. 14, 2011) (if a claim is preempted, it falls under 12(b)(6)).  Plaintiff's argument does not support its proposition that the district court in Pennsylvania did not apply the applicable legal standard.

Lastly, CollegeSource, without any legal authority, argues it was denied a full and fair opportunity to litigate because of "Procedures As Applied by the Third Circuit Briefing." (Dkt. No. 273 at 18.) CollegeSource complains of the Third Circuit's ruling

denying Plaintiff's request for advance approval to exceed the word limitations.  (Dkt. No. 274, Quinn Decl. ¶¶ 39, 40.)  Because of the Third Circuit's denial of its request, CollegeSource argues that its arguments regarding five claims at issue were dramatically and prejudicially reduced on appeal.  In addition, CollegeSource argues that it filed a petition for rehearing with the Third Circuit requesting correction of a typo in its opinion and a rehearing on certain key matters overlooked or misapprehended by it but the Third Circuit denied its petition for rehearing.

On May 18, 2012, CollegeSource filed a request for advance approval to exceed the word limitations of 14,000 as required under the Federal Rule of Appellate Procedure 32(a)(7).  (Dkt. No. 274, Quinn Decl. ¶ 39.)  On May 21, 2012, CollegeSource filed a supplemental request to exceed word limitations with its Opening Brief.  (Id.)  On June 11, 2014, the Third Circuit denied CollegeSource's motion as presented but granted CollegeSource to file an amended brief not to exceed 15,500 words.  (Id. ¶ 40.)

Plaintiff, as well as all other litigants, in the appellate courts are bound by the Federal Rules of Appellate Procedure and the Third Circuit has discretion whether to grant a request to exceed word limitations.  The Court will not revisit an issue already decided by the Third Circuit.  Plaintiff has not demonstrated that the Third Circuit did not apply the applicable legal standard as to word limitations.

The arguments raised by CollegeSource are, as AcademyOne argues, direct attacks on the decisions of the district court in Pennsylvania and the Third Circuit. The Court agrees and declines to reconsider the rulings of the Pennsylvania courts. Based on the above, the Court concludes that Plaintiff had a full and fair opportunity to litigate all issues in the prior litigation in Pennsylvania. The case was vigorously litigated by both parties, and the district court and the Third Circuit provided a comprehensive analysis on all the issues presented by the parties. Since Plaintiff had a full and fair opportunity to litigate the issues in the prior case, the Court GRANTS Defendant's motion for summary judgment on the seven claims where judgment was

entered in favor of AcademyOne for violation of the U.S. Computer Fraud and Abuse Act, breach of contract, unjust enrichment, trademark infringement under the Lanham Act, unfair competition under the Lanham Act, false advertising under the Lanham Act, and declaration of trademark invalidity. The remaining causes of action under California state law not raised in the Pennsylvania Action are violation of the California's computer crimes act pursuant to CCDAFA, misappropriation and California Business & Professions Code section 17200 *et seq.*

**E.    Claim Preclusion as to Three Remaining California Claims**

Next, AcademyOne argues that claim preclusion applies to the three remaining California causes of action filed in this action for violation of CCDAFA, misappropriation, and violation of the unfair business practices under California Business & Professions Code section 17200 *et seq.*, but not presented in the Pennsylvania Action. CollegeSource opposes arguing a triable issue of fact exist as to the identity of claims.

Claim preclusion applies where there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." Turtle Island Restoration Network, 673 F.3d at 917 (citation omitted). Claim preclusion bars "all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of action . . . ." McClain v. Apodaca, 793 F.2d 1031, 1033 (9th Cir. 1986).

In the motion, the parties only dispute whether there is an identity of claims. The Ninth Circuit considers four factors in determining "identity of claims" which are:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

Turtle Island Restoration Network, 673 F.3d at 917-18 (quoting Costantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir. 1982)). "The last of these criteria is the most important." Id. at 918. In Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985

[08CV1987-GPC(MDD)]

(9th Cir. 2005), the Ninth Circuit held that the identity of claims factor was met based solely on the question of "whether the two suits arise out of the same transactional nucleus of facts." Id. at 987-88. The court concluded that the other three factors were not conclusive. Id.; see also C.D. Anderson & Co. v. Lemos, 832 F.2d 1097, 1100 (9th Cir. 1987) (without reaching the other Costantini factors, the court held second claim barred by res judicata solely on the ground that it arose out of the "same transactional nucleus of facts" as the original suit).

### 1.    Whether the Two Suits Arise Out of the Same Transactional Nucleus of Facts

"Whether two suits arise out of the same transactional nucleus depends upon whether they are related to the same set of facts and whether they could conveniently be tried together." Turtle Island Restoration Network, 673 F.3d at 918 (quoting ProShipLine Inc. v. Aspen Infrastructures Ltd., 609 F.3d 960, 968 (9th Cir. 2010)); Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005) (citation omitted) (same). The inquiry into the "same transactional nucleus of facts" is essentially the same as whether the claim could have been brought in the first action." United States v. Liquidators of European Fed. Credit Bank, 630 F.3d 1139, 1151 (9th Cir. 2011). "[W]here claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding." Turtle Island Restoration Network, 673 F.3d at 918.

AcademyOne argues that the three California state claims arise from the same facts and allegations, and form a "convenient trial unit" with the claims in the Pennsylvania Action. See Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension, Welfare and Training Trust Funds v. Karr, 994 F.2d 1426, 1420 (9th Cir. 1993). CollegeSource does not dispute that the claims arise from the same facts but argues the claims could not be conveniently tried together in the Pennsylvania Action due to conflict of law principles. First, Plaintiff contends that it would have been barred from bringing the misappropriation claim in the Pennsylvania Action because

of the statute of limitations.  Without legal authority, CollegeSource asserts that the two year statute of limitations under Pennsylvania law, 42 Pa. Cons. Stat. §§ 5524(3), (7) applies to the misappropriation claim under California law.  (Dkt. No. 273 at 23.)  Since the Pennsylvania Action was filed in July 2010, it alleges that CollegeSource's claim is "more than 4 years after A1's unauthorized taking of CS's Digitized Information and almost forty (40) months after CS's April 2007 discovery." (Dkt. No. 273 at 23.)

Plaintiff cites to an exception to the general rule of claim preclusion where "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of limitations on the subject matter jurisdiction of the courts."  Restatement (Second) of Judgments § 26(1)(c).  For instance, a state court judgment "will not have preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts."  Id. Feminist Women's Health Ctr. v. Codispoti, 63 F.3d 863, 869 (9th Cir. 1995) (quoting Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 382 (1985)).  In Codispoti, the Court held that while it was unclear at the time of the prior state court trial whether the states had concurrent jurisdiction over federal civil RICO claims, the court noted that, "a litigant must at least test the matter through the state courts, and possibly to the United States Supreme Court, before it can assert that it is foreclosed from bringing such action in state court."  Id. at 869.  In Harris v. County of Orange, 682 F.3d 1126 (9th Cir. 2012), a case cited by Plaintiff, in relying on the language of Section 26(1)(c) of the Restatement, the Ninth Circuit held that claim preclusion did not bar the action for damages since a damages remedy was unavailable in the first action.  Id. at 1133.

In this case, the statute of limitations does not limit the court's subject matter jurisdiction over the case.  Statute of limitations is an affirmative defense and subject to waiver, and is not a jurisdictional bar.  United States v. DeTar, 832 F.2d 1110, 1114 (9th Cir. 1987); see also Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (in an EEOC case, filing a timely charge is not a jurisdictional prerequisite but an

affirmative defense, similar to a statute of limitations defense).  While unclear, as CollegeSource and AcademyOne have not conducted a full analysis on which statute of limitations apply, whether the two year bar in Pennsylvania or three year bar in California on the misappropriation claim applies, in either case, the claim of misappropriation would be barred by the statute of limitations.  However, since the statute of limitation is not a jurisdictional bar, the misappropriation claim could have been brought in the Pennsylvania Action.

In addition, under the conflict of law principles, Plaintiff argues it could not have brought its California claims in the Pennsylvania Action.  AcademyOne disagrees.  To determine which state's substantive law governs choice of law, the court looks to the jurisdiction in which the district court sits, which is Pennsylvania.  Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Melville v. American Home Assur. Co., 584 F.2d 1306, 1308 (3d Cir. 1978). Under Pennsylvania law, courts begin with an "interest analysis" of the policies of all interested states and then "based on the result of that analysis" characterize the case as a "true conflict, false conflict, or unprovided-for case." Budget Rent-A-Car Sys., Inc. v. Chappell, 407 F.3d 166, 169-70 (3d Cir. 2005) (citing LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996); and Lacey v. Cessna Aircraft Co., 932 F.2d 170, 187 & n. 15 (3d Cir. 1991)).

> A true conflict exists "when the governmental interests of [multiple] jurisdictions would be impaired if their law were not applied." Lacey, 932 F.2d at 187 n. 15. If a case presents a true conflict, Pennsylvania choice-of-law rules "call for the application of the law of the state having the most significant contacts or relationships with the particular issue." In re Estate of Agostini, 311 Pa.Super. 233, 457 A.2d 861, 871 (1983). . .
>
> "A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." Lacey, 932 F.2d at 187. If there is a false conflict, we must apply the law of the only interested jurisdiction. See, e.g., Kuchinic v. McCrory, 422 Pa. 620, 222 A.2d 897, 899–900 (1966); Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796, 807 (1964).
>
> Finally, an unprovided-for case arises when no jurisdiction's interests would be impaired if its laws were not applied. Lex loci delicti (the law of the place of the wrong—here Pennsylvania) continues to govern unprovided-for cases. See, e.g., Miller v. Gay, 323 Pa. Super. 466, 470 A.2d 1353, 1355–56 (1983).

[08CV1987-GPC(MDD)]

Id. at 170.

Plaintiff argues that the computer crime laws are different in California and Pennsylvania because California's CCDAFA provides for civil remedies while Pennsylvania does not. According to Plaintiff, since the laws are in conflict then the district court in Pennsylvania would apply Pennsylvania law. However, CollegeSource prematurely ends its analysis and does not address each state's governmental interests. See Chappell, 407 F.3d at 170.

In support, Plaintiff cites to Farmer Ins. Exchange v. Auto Club Group, 823 F. Supp. 2d 847, 858 (N.D. Ill. 2011) where the district court applied Illinois' Computer Crime Prevention Law which allowed a private right of action, and not California's. Id. at 859. After conducting an analysis of the "most significant contacts", the court applied Illinois law. However, this case is distinguishable because, unlike Illinois, there is no private right of action in Pennsylvania. Moreover, Plaintiff did not conduct an analysis of the governmental interests.

Here, California's governmental interest, in protecting the rights of private "owner or lessee" of the computer or data, see Cal. Penal Code § 502(e)(1), would be impaired if the Pennsylvania court applied Pennsylvania law, which does not allow a private right of action. On the other hand, Pennsylvania's governmental interest would not be impaired since Pennsylvania does not allow for a private right of action. This difference is a "false conflict" and the Court must "apply the law of the only interested jurisdiction." Chappell, 407 F.3d at 170. In this case, California is the only state with a governmental interest; therefore, the Pennsylvania court would have applied California law.

CollegeSource also argues that the statutory unfair competition laws in California and Pennsylvania differ. California's unfair competition law allows a cause of action to be brought by businesses while Pennsylvania's Unfair Trade Practices Consumer Protection Law (the "UTPCPL") only allows a civil cause of action for

"goods and services primarily for personal, family or household purposes."  Pa. Stat. Ann. tit. 73, § 201-9.2(a).

In Fresh Start, a district court in Pennsylvania applied New Jersey's Consumer Fraud Act ("NJCFA") instead of the Pennsylvania's UTPCPL.  Fresh Start Indus., Inc. v. ATX Telecomms. Servs., 295 F. Supp. 2d 521, 527 (E.D. Pa. 2003).  The court compared the class of persons protected by the NJCFA and UTPCPL.  While NJCFA allowed corporations to bring suit, the UTPCPL excluded corporations and only applied to goods or services used "primarily for personal, family or household purposes."  Id. at 527. The court concluded that New Jersey had an interest in protecting commercial entities as well as consumers and such interest would be impaired if the Pennsylvania statute was applied.  Id.  On the other hand, the court concluded that Pennsylvania had no interest in the dispute since business entities are outside the scope of its statute.  Id.  The Court also noted that broadening the protection to include commercial entitles would not impair the UTPCPL whose purpose is "to prevent unfair or deceptive business practices and fraud."  Id.

Similarly, in this case, California's unfair competition statute provides broader protection than Pennsylvania's statute by allowing corporations to seek relief. Therefore, California's interest in protecting corporations would be impaired if the Pennsylvania district court applied Pennsylvania law.  Therefore, the Pennsylvania district court would have applied California's unfair competition statute.

The Court concludes that the three California causes of action could have been conveniently tried together in the prior Pennsylvania Action.  See Turtle Island Restoration Network, 673 F.3d at 917-18.  In addition, the parties do not dispute that the case arises from the same facts as the prior case.  Therefore, this case and the prior Pennsylvania Action arise out of the same transactional nucleus of facts.  The Ninth Circuit has held that meeting this factor, alone, can be dispositve of the "identity of claims" issue.  See Mpoyo, 430 F.3d at 987-88.  However, the Court will consider the other remaining factors as they support the "identity of claims" factor.

**2.      Whether Rights or Interests Established in the Prior Judgment Would be Destroyed or Impaired by Prosecution of the Second Action**

AcademyOne argues that the Pennsylvania judgment established its "freedom from liability" on these claims. (Dkt No. 251-1 at 18.)   Therefore, the right to repose that it won "would be destroyed or impaired by prosecution of [this] action." (Id.) CollegeSource argues that no right or interests in the Pennsylvania case can be "destroyed or impaired" because the district court in Pennsylvania invited "conflicting judgments." (Dkt. No. 273 at 19-20.)  CollegeSource provides no legal authority for its proposition.  AcademyOne opposes contending that CollegeSource misleadingly quotes the Pennsylvania court out of context.   The Court disagrees with CollegeSource's interpretation of the Pennsylvania district court's ruling as inviting conflicting judgments.  The Court concludes that the rights or interests established in the prior judgment in favor of AcademyOne would be destroyed or impaired by prosecution of similar issues in this case.

**3.      Whether Substantially the Same Evidence is Presented in the Two Actions**

CollegeSource asserts that crucial evidence is different in the Pennsylvania action and this case.  Because the Pennsylvania court denied CollegeSource's motion to supplement its summary judgment opposition with newly discovered evidence, the Pennsylvania court did not have this crucial evidence.  CollegeSource also discovered that AcademyOne's expert Paul Lewis had a copy of a computer server never produced to CollegeSource in discovery and claim preclusion cannot bar claims that concern events that took place after the Pennsylvania Judgment.  AcademyOne disagrees.

As discussed above, the Court concluded that CollegeSource had a full and fair opportunity to litigate the discovery issues in the prior litigation, including the allegation that Paul Lewis had a copy of Defendant's computer server that was different than the one produced to Plaintiff in discovery.  Besides the denial of discovery in the Pennsylvania Action and the lack of diligence in raising the Paul

Lewis issue with the Pennsylvania courts, Plaintiff does not dispute that the same evidence as in the prior action would be presented on these three remaining causes of action.

**4.      Whether the Two Suits Involve Infringement of the Same Right**

CollegeSource asserts that the three California causes of action not asserted in the Pennsylvania Action involve unique and broad rights not available under Pennsylvania law or federal law. AcademyOne contends that CCDAFA, misappropriation and unfair competition claims are similar to the rights alleged in the claim for breach of contract, unjust enrichment and violation of the CFAA in the Pennsylvania Action.  It also disputes CollegeSource's attempt to demonstrate this factor by showing that the elements of the Pennsylvania and related California causes of action are different.

The Ninth Circuit has stated that an "'identity of claims' does not mean that an imaginative attorney may avoid preclusion by attaching a different legal label to an issue that has, or could have, been litigated. . . . Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action."  Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077-78 (9th Cir. 2003).  Therefore, the Ninth Circuit did not contemplate requiring the same elements on a cause of action in the prior action and the instant action to satisfy this factor.

The rights alleged in the CCDAFA and misappropriation claims are based on the unauthorized access by AcademyOne of Plaintiff's course catalogs, that were created with substantial time and money, and unauthorized use whereby AcademyOne reproduced and redistributed these course catalogs at little or no cost.  (See Dkt. No. 115, SAC  ¶¶ 104-107; 121-124.)  These rights are the same as the ones alleged in the Pennsylvania Action for breach of contract, unjust enrichment and violation of the CFAA.  (Dkt. No. 278, Ex. B, FAC ¶¶ 176-191; 197-202; 205-207.)

As to the cause of action under California Business & Professions Code section

17200, AcademyOne argues that this claim is derivative of its other claims and CollegeSource relies entirely on the allegations supporting its other claims and alleges no fact unique to this claim.  The Court agrees that the unfair competition claim under section 17200 is derivative of its other claims.  (Dkt. No. 115, SAC ¶¶ 244-246.)  The second amended complaint ("SAC") provides no facts to support its unfair competition claims except to incorporate by reference the previous paragraphs in the SAC.  (Id.)  Thus, the Court looks to Plaintiff's motion for summary judgment to determine the allegations Plaintiff asserts on its claim under section 17200.  (Dkt. No. 255 at 29-30.)  As to the "unlawful" prong, Plaintiff's claim borrows from California's CCDAFA.  (Id. at 29.)  As to the "unfair" prong, Plaintiff argues that Defendant's conduct, by taking for free the "fruits of another's labor," harms competition.   (Id. at 29-30.)  CollegeSource asserts that it invested over $10 million and countless hours to create and compile its database, and was harmed by AcademyOne when it took Plaintiff's catalogs for free.  (Id. at 30.)  Both prongs concern the same rights alleged in the Pennsylvania Action which are AcademyOne's alleged unauthorized access to and use of CollegeSource's catalogs for reproduction and distribution.  Lastly, as to the "fraudulent" prong, Plaintiff alleges that Defendant's use of the username/passwords of CollegeSource's subscribers was intended to and likely to deceive.  The Court concludes the fraudulent prong is based on the alleged "newly discovered evidence" that the Pennsylvania court rejected.  This issue concerns the same right to discovery as alleged in the Pennsylvania Action.  After a review of the three California state law claims, the Court concludes that these claims involve the same rights as the claims in the Pennsylvania Action.

In sum, Defendant has demonstrated that there are no triable issues of fact as to whether there is an "identity of claim," and the Court concludes claim preclusion bars Plaintiff's three California state law causes of action.  Thus, the Court GRANTS Defendant's motion for summary judgment on the claims for violation of CCDAFA, misappropriation, and unfair business practices under California Business &

Professions Code 17200 *et seq.*

**F.      Issue Preclusion**

AcademyOne also argues that issue preclusion bars the three California causes of action in this case.  Due to the Court granting the motion for summary judgment on claim preclusion, the Court need not address AcademyOne's argument on issue preclusion.

**Conclusion**

Based on the above, the Court GRANTS Defendant's motion for summary judgment.  The Clerk of Court shall issue judgment in favor of Defendant and against Plaintiff.

IT IS SO ORDERED.


DATED:  September 24, 2015

HON. GONZALO P. CURIEL
United States District Judge